# EXHIBIT D

# REDEVELOPMENT AGENCY OF THE CITY OF SAN JOSE

## ASSET TRANSFER REVIEW

Review Report

*January 1, 2011, through January 31, 2012*



# JOHN CHIANG
California State Controller

March 2013



# JOHN CHIANG
## California State Controller

March 21, 2013

Debra Figone, Executive Officer
City of San Jose/Successor Agency
200 E. Santa Clara, 17th floor
San Jose, CA  95113

Dear Ms. Figone:

Pursuant to Health and Safety (H&S) Code section 34167.5, the State Controller's Office (SCO) reviewed all asset transfers made by the Redevelopment Agency of the City of San Jose (RDA) to the City of San Jose (City) or any other public agency after January 1, 2011. This statutory provision states, "The Legislature hereby finds that a transfer of assets by a redevelopment agency during the period covered in this section is deemed not to be in furtherance of the Community Redevelopment Law and is thereby unauthorized." Therefore, our review included an assessment of whether each asset transfer was allowable and whether it should be turned over to the Successor Agency.

Our review applied to all assets including, but not limited to, real and personal property, cash funds, accounts receivable, deeds of trust and mortgages, contract rights, and rights to payment of any kind. We also reviewed and determined whether any unallowable transfers of assets to the City or any other public agencies have been reversed.

Our review found that the RDA transferred assets of $492,652,200, which includes unallowable transfers totaling $148,090,481, or 30.06%, that must be turned over to the Successor Agency.

However, in January of 2013 and in October of 2012, the City approved and returned cash to the Successor Agency for reported unallowable transfers in the amounts of $10,155,043 and $726,214, respectively, as described in Findings 3 and 4 of the Findings and Order of the Controller section of this report. The City need not make any further transfers of these amounts.

Debra Figone, Executive Officer                -2-                March 21, 2013


If you have any questions, please contact Steven Mar, Bureau Chief, Local Government Audits Bureau, at (916) 324-7226.

Sincerely,


*Original signed by*

JEFFREY V. BROWNFIELD, CPA
Chief, Division of Audits

JVB/bf

cc: Vinod Sharma, Director of Finance
      County of Santa Clara
    Irene Lui, Controller-Treasurer
      County of Santa Clara
    Steven Szalay, Local Government Consultant
      California Department of Finance
    Richard J. Chivaro, Chief Counsel
      State Controller's Office
    Moises Laurel, Audit Manager
      Division of Audits, State Controller's Office
    Daniela Anechitoaie, Auditor-in-Charge
      Division of Audits, State Controller's Office

# Contents

**Review Report**

    **Summary** ................................................................................................... 1

    **Background** ............................................................................................... 1

    **Objectives, Scope, and Methodology** .................................................. 2

    **Conclusion** ............................................................................................... 2

    **Views of Responsible Officials** ............................................................. 3

    **Restricted Use** ......................................................................................... 3

**Findings and Orders of the Controller** ...................................................... 4

**Schedule 1—Unallowable Asset Transfers to the City of San Jose** .................................... 10

**Schedule 2—Unallowable Asset Transfers to San Jose Diridon Authority** ...................... 11

**Attachment—City's Response to Draft Review Report**

# Asset Transfer Review Report

**Summary**

The State Controller's Office (SCO) reviewed the asset transfers made by the Redevelopment Agency of the City of San Jose (RDA) for the period of January 1, 2011, through January 31, 2012. Our review included, but was not limited to, real and personal property, cash funds, accounts receivable, deeds of trust and mortgages, contract rights, and any rights to payments of any kind from any source.

Our review found that the RDA transferred assets of $492,652,200, which includes unallowable transfers totaling $148,090,481, or 30.06%, that must be turned over to the Successor Agency.

However, in January of 2013 and in October of 2012, the City of San Jose (City) approved and returned cash to the Successor Agency for reported unallowable transfers in the amounts of $10,155,043 and $726,214, respectively, as described in Findings 3 and 4 of the Findings and Orders of the Controller section of this report. The City need not make any further transfers of these amounts.

**Background**

In January of 2011, the Governor of the State of California proposed statewide elimination of redevelopment agencies (RDAs) beginning with the fiscal year (FY) 2011-12 State budget. The Governor's proposal was incorporated into Assembly Bill 26 (ABX1 26, Chapter 5, Statutes of 2011, First Extraordinary Session), which was passed by the Legislature, and signed into law by the Governor on June 28, 2011.

ABX1 26 prohibited RDAs from engaging in new business, established mechanisms and timelines for dissolution of the RDAs, and created RDA Successor Agencies to oversee dissolution of the RDAs and redistribution of RDA assets.

A California Supreme Court decision on December 28, 2011 (California Redevelopment Association et al. v. Matosantos), upheld ABX1 26 and the Legislature's constitutional authority to dissolve the RDAs.

ABX1 26 was codified in the Health and Safety (H&S) Code beginning with section 34161.

In accordance with the requirements of H&S Code section 34167.5, the State Controller is required to review the activities of RDAs, "to determine whether an asset transfer has occurred after January 1, 2011, between the city or county, or city and county that created a redevelopment agency, or any other public agency, and the redevelopment agency," and the date at which the RDA ceases to operate, or January 31, 2012, whichever is earlier.

The SCO has identified transfers of assets that occurred during that period between the RDA, the City, and/or other public agencies. By law, the SCO is required to order that such assets, except those that already had been committed to a third party prior to June 28, 2011, the effective date of ABX1 26, be turned over to the Successor Agency. In addition, the SCO may file a legal order to ensure compliance with this order.

## Objectives, Scope, and Methodology

Our review objective was to determine whether asset transfers that occurred after January 1, 2011, and the date upon which the RDA ceased to operate, or January 31, 2012, whichever was earlier, between the city or county, or city and county that created an RDA, or any other public agency, and the RDA, were appropriate.

We performed the following procedures:

- Interviewed Successor Agency personnel to gain an understanding of the Successor Agency operations and procedures.

- Reviewed meeting minutes, resolutions, and ordinances of the RDA and the City.

- Reviewed accounting records relating to the recording of assets.

- Verified the accuracy of the Asset Transfer Assessment Form. This form was sent to all former RDAs to provide a list of all assets transferred between January 1, 2011, and January 31, 2012.

- Reviewed applicable financial reports to verify assets (capital, cash, property, etc.).

## Conclusion

Our review found that the RDA transferred assets of $492,652,200, which includes unallowable transfers totaling $148,090,481, or 30.06%, that must be turned over to the Successor Agency.

However, in January of 2013 and in October of 2012, the City approved and returned cash to the Successor Agency for reported unallowable transfers in the amounts of $10,155,043 and $726,214, respectively, as described in Findings 3 and 4 of the Findings and Orders of the Controller section of this report. The City need not make any further transfers of these amounts.

Unallowable Assets Transferred:

| | | |
|---|---|---:|
| Unallowable assets transferred to City of San Jose | $ | 118,952,754 |
| Unallowable assets transferred to San Jose Diridon Development Authority | | 29,137,727 |
| Total Unallowable Transfers | $ | 148,090,481 |

Details of our findings and orders are in the Findings and Orders of the Controller section of this report. We also have included a detailed schedule of assets to be turned over to, or transferred to, the Successor Agency.

The agencies named above, as recipients of the unallowable asset transfers, are ordered to immediately reverse the transfers and to turn over the assets identified in this report to the Successor Agency (see Schedules 1 and 2).

**Views of Responsible Officials**

We issued a draft review report on November 6, 2012. Ms. Debra Figone, Executive Officer, responded by letter dated November 15, 2012. The City's response is included in this final review report as an attachment.

**Restricted Use**

This report is solely for the information and use of the City of San Jose, the San Jose Diridon Development Authority, City of San Jose/Successor Agency, the Successor Agency Oversight Board, and the SCO; it is not intended to be and should not be used by anyone other than these specified parties. This restriction is not intended to limit distribution of this report, which is a matter of public record when issued final.

*Original signed by*

JEFFREY V. BROWNFIELD, CPA
Chief, Division of Audits

March 21, 2013

# Findings and Orders of the Controller

**FINDING 1—
Unallowable asset
transfers to the
City of San Jose**

The Redevelopment Agency of the City of San Jose (RDA) made unallowable asset transfers of $108,071,497 to the City of San Jose (City). All of the property transfers occurred during the period January 1, 2011, through January 31, 2012, and the assets were not contractually committed to a third party prior to June 28, 2011. These assets consisted of capital assets and a business interest in an Owners Operating Participating Agreement (OOPA).

Unallowable asset transfers were as follows:

- In March 2011, the RDA transferred capital assets of $97,071,497 in land and improvements to the City. To accomplish those transfers, a Cooperation Agreement was entered into on March 8, 2011, between the City and the RDA.

  The Cooperation Agreement states:

  > It was always the intent of the parties that upon completion of the public facilities, the Agency would transfer title to such properties to the City." However, a staff memorandum of Board Agenda Item 8.2 dated March 4, 2011, states, "given the current uncertainties surrounding state legislation related to the Agency, it is prudent that the Agency transfer to the City certain properties that were acquired and developed, or are to be developed as public facilities for the benefit of the community. . . .

- In March 2011, the RDA entered into an Assignment Agreement with the City to transfer all of the RDA's right, title, and interest in an OOPA to the City.

  The purpose of the transfer was to compensate the City for its funding commitments for real improvements to the Montague Expressway pursuant to the North San Jose settlement agreement entered into on November 16, 2006. In that agreement, the City agreed to provide funding to Santa Clara County up to an amount not to exceed $11 million. The settlement agreement was a result of the City of Santa Clara, County of Santa Clara, and the Santa Clara Redevelopment Agency filing a petition for a writ of mandate challenging the City of San Jose and RDA's approval of the North San Jose Project.

Pursuant to Health & Safety (H&S) Code section 34167.5, a redevelopment agency may not transfer assets to a city, county, city and county, or any other public agency after January 1, 2011. Those assets should be turned over to the Successor Agency for disposition in accordance with H&S Code section 34177(d) and (e). However, it appears that some of those assets may be subject to the provisions of H&S Code section 34181(a). H&S Code section 34181(a) states:

> The oversight board shall direct the successor Agency to do all of the following:

a) Dispose of all assets and properties of the former redevelopment agency; provided however, that the oversight board may instead direct the successor agency to transfer ownership of those assets that were constructed and used for a governmental purpose, such as roads, school buildings, parks, police and fire stations, libraries, and local agency administrative buildings to the appropriate public jurisdiction pursuant to any existing agreements relating to the construction or use of such an asset. . . .

Successor Agency's Response

As noted in the Asset Transfer Review, in March, 2011, the RDA transferred to the City pursuant to the Cooperation Agreement referenced above various properties that were acquired and developed, or to be developed, as public facilities for the benefit of the community pursuant to Health and Safety Code Section 33445. These government purpose properties consist of parcels required for a read extension, a public theater, convention center expansion and parking, and a public plaza.

Although title to these properties was initially held by the former redevelopment agency, these properties were always public facilities that were intended to be transferred to and owned by the City. Furthermore, as mentioned above, at the time the transfer to the City occurred, there was no legal prohibition on the transfer of these properties to the City. Furthermore, Health and Safety Code Section 34181 (a) provides that the Oversight Board may direct the Successor Agency to transfer governmental purpose assets to the appropriate public entity. Ordering the City to return the assets to the Successor Agency only to have the Oversight Board direct that they be returned to the City is simply form over substance and wastes valuable time, energy and resources to arrive at the same result.

As pointed out in the Asset Transfer Review, the purpose of this assignment was to compensate the City for its funding commitments of $11 million for public improvements to the Montague Expressway pursuant to a settlement agreement among the City, the RDA, the County of Santa Clara, the City of Santa Clara and the City of Milpitas. The RDA and the City always intended that the RDA would pay for such public improvements under the provisions of Health and Safety Code Section 33445. The City relied on the RDA's funding commitment and would not have entered into the Settlement Agreement on the terms set forth therein without that commitment.

SCO's Comment

The City feels that this finding is "simply form over substance and wastes valuable time, energy and resources to arrive at the same result;" however, the legislation is clear that the oversight board shall have the authority to dispose of all assets and properties of the former redevelopment agency (Health and Safety Code Section 34181 (a)). Any attempt to deny the oversight board its rights would be thwarting the intent of the legislation.

The City may have always intended that the RDA would fund the improvement for the Montague Expressway, but the settlement agreement states that the City will pay for the improvements. In other sections of the settlement agreement where the RDA was the presumed party, the term "Agency" is used. Any attempt to revise this agreement and transfer the funds to the City is unallowable under H&S 34167.5.

The finding remains as written.

Order of the Controller

Based on H&S Code section 34167.5, the City is ordered to reverse the transfer of assets, described in Schedule 1, in the amount of $108,071,497, and return the assets to the Successor Agency. The Successor Agency is directed to properly dispose of those assets in accordance with H&S Code sections 34177(d) and (e) and 34181(a).

**FINDING 2—Unallowable asset transfer to the San Jose Diridon Development Authority**

The RDA made unallowable asset transfers of $29,137,727 to the San Jose Diridon Development Authority (Authority), a joint powers authority made up of the City and the RDA. All of the property transfers occurred during the period of January 1, 2011, through January 31, 2012 and the assets were not contractually committed to a third party prior to June 28, 2011.

In March 2011, the RDA transferred seven properties in the Diridon Area to the Authority. To accomplish those transfers, a Joint Powers Agreement was entered into on March 8, 2011, between the City and the RDA, creating the Authority. The seven properties were subsequently transferred by quit claim deed on March 8, 2011.

Pursuant to H&S Code section 34167.5, a redevelopment agency may not transfer assets to a city, county, city and county, or any other public agency after January 1, 2011. Those assets should be turned over to the Successor Agency for disposition in accordance with H&S Code section 34177(d) and (e). However, it appears that some of those assets may be subject to the provisions of H&S Code section 34181(a). H&S Code section 34181(a) states:

The oversight board shall direct the successor agency to do all of the following:

a)   Dispose of all assets and properties of the former redevelopment agency; provided, however, that the oversight board may instead direct the successor agency to transfer ownership of those assets that were construed and used for a governmental purpose, such as roads, school buildings, parks, police and fire stations, libraries, and local agency administrative buildings to the appropriate public jurisdiction pursuant to any existing agreements relating to the construction or use of such an asset. . . .

### Successor Agency's Response

The draft Asset Transfer Review states that "All of the property transfers [to the JPA] occurred during the period of January 1, 2011 through January 31, 2012". However, there is no statutory or other legal support for the State Controller's Office to use a June 28, 2011 cutoff date for assets contractually committed to third parties.

In fact, Health and Safety Code Section 34167.5 states, in relevant part:

"If such an asset transfer did occur during that period *and the government agency that received the assets is not contractually committed to a third party for the expenditure or encumbrance of those assets*, to the extent not prohibited by state and federal law, the Controller shall order the available assets to be returned…" Italics added.

Therefore, since certain properties transferred to the JPA were contractually committed by the Option Agreement with AIG prior to the State Controller's review, such properties are not subject to an order to return. The relevant provision of Section 34167.5, that "the asset **is not contractually committed"**, is not ambiguous nor does it make reference to the effective date of the legislation. Under the plain and ordinary meaning of the statute, "is" means "is". The only logical reading of this provision is that the commitment must have been made any time prior to the date of the Controller's order. Therefore, the State Controller's use of June 28, 2011, as the cut-off date for contractual commitments by third parties is inconsistent with the legislation and the Controller has no authority to order the return of an asset that is contractually committed to a third party.

In addition, any order to that effect would constitute an impairment of AIG's rights under the option Agreement which would be prohibited under both state and federal law. The Diridon Authority would be in breach of contract without recognizing the Option Agreement. Therefore, we request that those assets contractually committed to AIG under the Option Agreement be deleted from the final Asset Transfer Review report.

### SCO's Comment

Pursuant to H&S Code section 34167.5, if an asset transfer occurred after January 1, 2011, between the city that created the redevelopment agency and the redevelopment agency, and the asset was not contractually committed to a third party by the effective date of the law, which is June 28, 2011, the available asset must be returned to the Successor Agency. Furthermore, the Authority is considered under the control of the City pursuant to H&S Code section 34167.10 because:

- The Authority is a component unit of the city

- The City and the Authority share common or overlapping boards

- The City provides administrative and related business support

The RDA transferred the properties to the Authority in March 2011. On November 8, 2011, the Authority committed those assets by entering into an agreement with a third party, Athletics Investment Group, LLC, after the effective date of the act.

Because the Authority is under the control of the City and the asset was not contractually committed to a third party prior to June 28, 2011, the asset transfer is unallowable under H&S Code section 34167.5.

The finding remains as written.

<u>Order of the Controller</u>

Based on H&S Code section 34167.5, the City is ordered to reverse the transfer of assets described in Schedule 2, in the amount of $29,137,727 and return them to the Successor Agency. The Successor Agency is directed to properly dispose of those assets in accordance with H&S Code sections 34177(d) and (e) and 34181(a).

**FINDING 3—**
**Unallowable Cash**
**Transfer to City**
**Housing Fund**

The County of Santa Clara's Agreed-Upon Procedures report, conducted pursuant to H&S Code section 34182 and dated October 5, 2012, disclosed an unallowed transfer of $10,155,043 (unrestricted cash) from the RDA's Low and Moderate Income Housing Fund (Fund No. 443) to the City's Affordable Housing Investment Fund (Fund No. 346).

The County reported that, pursuant to H&S Code section 34176, Low and Moderate Income Housing Funds were to be excluded from assets available for transfer to the City of San Jose Housing Agency. However, the Housing Agency retained the funds on the premise the funds were eligible for housing use through interpretation of AB 1484.

<u>Order of the Controller</u>

Pursuant to H&S Code section 34167.5, the City is ordered to transfer cash of $10,155,043 to the Successor Agency. The Successor Agency is directed to properly dispose of those assets in accordance with H&S Code sections 34177(d) and (e).

In a conference of the SCO and City officials held on December 18, 2012, the City communicated that it would not contest the finding and would return the $10,155,043 to the Successor Agency. On January 29, 2013, the City Council approved the return, and subsequently transmitted copies of documentation in support of the transfer to the SCO.

**FINDING 4—Unallowable Pension Payment from Low and Moderate Income Housing Fund**

The County of Santa Clara's Agreed-Upon Procedures report, conducted pursuant to H&S Code section 34182 and dated October 5, 2012, disclosed an unallowed transfer of cash from the RDA's Low and Moderate Income Housing Fund, in the amount of $726,214, as a prepayment to the pension plan representing an estimate of the employer's annual contribution. The unamortized balance of $726,214 represents 5/12ths of that payment and is included on the trial balance of January 31, 2012 as a prepaid expense.

As further described in the report, the City's Housing (Department) benefitted by shifting a portion of its future pension costs to resources in the Low and Moderate Income Housing Fund, which is not permitted by H&S Code section 34176. Because the transfer is not allowed, the resources would have been available as unrestricted (unencumbered) housing cash and should have been appropriately transferred to the Successor Agency. Unrestricted Low and Moderate Income Housing assets are to be turned over to the County Auditor-Controller for distribution to taxing entities.

<u>Order of the Controller</u>

Based on H&S Code section 34167.5, the City is ordered to return cash in the amount of $726,214 to the Successor Agency. The Successor Agency is directed to properly dispose of those assets in accordance with H&S Code sections 34177(d) and (e).

On January 16, 2013, the City transmitted copies of documentation in support of a transfer, made in October 2012, returning $726,214 to the Successor Agency.

# Schedule 1—
# Unallowable Asset Transfers to the City of San Jose
# January 1, 2011, through January 31, 2012

| | | |
|---|---|---:|
| Autumn 456 Street Extension | $ | 377,068 |
| Autumn 456 Street Extension (Akatiff Properties) | | 4,669,614 |
| Autumn 456 Street Extension (435 W. Julian) | | 400,753 |
| California Theater | | 67,675,958 |
| Balback Parking Lot (Convention Center Expansion Site) | | 14,557,943 |
| Block 1 Fairmont Hotel Plaza (Circle of Palms) | | 2,240,965 |
| Convention Center Expansion | | 7,149,196 |
| Transfer of Agency's Business Interest in Owners Operating Participating Agreement for the Fairmont Hotel (Montague Settlement) | | 11,000,000 |
| Total Property & Business Interest Transfer | | 108,071,497 [1,2] |
| | | |
| Pension Prepayment for Low and Moderate Income Housing Fund | | 726,214 |
| Cash Transfer from Low and Moderate Income Housing Fund | | 10,155,043 |
| Total Cash Transfer From Low and Moderate IHF | | 10,881,257 |
| Total Asset Transfer to City of San Jose | $ | 118,952,754 |

---

[1] See the Findings and Orders of the Controller section

[2] These amounts are reported as book value.

**Schedule 2—**
# Unallowable Asset Transfers to San Jose Diridon Authority
## January 1, 2011, through January 31, 2012

| | | |
|---|---|---:|
| Downtown Mixed Use – 1050 South Montgomery Street | $ | 6,356,158 |
| Downtown Mixed Use – 115 South Autumn Street (510 W. San Fernando Street) | | 6,345,391 |
| Downtown Mixed Use – 150 South Montgomery Street | | 6,250,860 |
| Area Parking Lot – 8 South Montgomery Street | | 1,588,087 |
| Downtown Mixed Use – 102 South Montgomery Street | | 1,234,923 |
| Downtown Mixed Use – 92 South Montgomery Street | | 1,362,308 |
| Downtown Mixed Use – 645 Park Avenue | | 6,000,000 |
| Total | | 29,137,727 [1,2] |

_____

[1] See the Findings and Orders of the Controller section.

[2] These amounts are reported as book value.

# Attachment—
# City's Response to
# Draft Review Report



*Successor Agency to the Redevelopment Agency*

November 15, 2012

California State Controller's Office
Division of Audits
Post Office Box 942850
Sacramento, CA 94250-5874
Attn:   Steven Mar, Chief
          Local Government Audits Bureau


SUBJECT:    San Jose Redevelopment Agency – Asset Transfer Review

Dear Mr. Mar:

This letter is in response to correspondence we received from Jeffrey V.
Brownfield, Chief, Division of Audits, State Controller's Office, dated November 6,
2012 containing a draft Asset Transfer Review for the former San Jose
Redevelopment Agency prepared pursuant to Health and Safety Code Section
34167.5.  We have reviewed the draft Asset Transfer Review and, pursuant to
the instructions contained in the November 6 letter, are transmitting our
comments to you.

We would like to point out generally that the asset transfers referenced in the
draft Asset Transfer Review as "unallowable asset transfers" were actually
transferred more than three months before ABX1 26 was enacted, and almost a
year before oversight boards came into existence.  Furthermore, at the time of
such transfers, the transfers were expressly permitted under California
redevelopment law pursuant to various provisions of the California Health and
Safety Code.

Specifically, we would respectfully request that you consider the following comments in preparing the final Asset Transfer Review report:

### Finding 1   Unallowable asset transfers to the City of San Jose

1. **Governmental Purpose Properties**

- In March 2011, the RDA transferred capital assets of $97,071,497 in land and improvements to the City.  To accomplish those transfers, a Cooperation Agreement was entered into on March 8, 2011, between the City and the RDA.

As noted in the Asset Transfer Review, in March, 2011, the RDA transferred to the City pursuant to the Cooperation Agreement referenced above various properties that were acquired and developed, or to be developed, as public facilities for the benefit of the community pursuant to Health and Safety Code Section 33445. These government purpose properties consist of parcels required for a road extension, a public theater, convention center expansion and parking, and a public plaza.

Although title to these properties was initially held by the former redevelopment agency, these properties were always public facilities that were intended to be transferred to and owned by the City.  Furthermore, as mentioned above, at the time the transfer to the City occurred, there was no legal prohibition on the transfer of these properties to the City.  Furthermore, Health and Safety Code Section 34181 (a) provides that the Oversight Board may direct the Successor Agency to transfer governmental purpose assets to the appropriate public entity.  Ordering the City to return the assets to the Successor Agency only to have the Oversight Board direct that they be returned to the City is simply form over substance and wastes valuable time, energy and resources to arrive at the same result.

2. **Operation, Ownership and Participation Agreement (Fairmont Hotel)**

- In March 2011, the RDA entered into an Assignment Agreement with the City to transfer all of the RDA's right, title and interest in an Operation, Ownership and Participation Agreement for the Fairmont Hotel ("OOPA") to the City.

As pointed out in the Asset Transfer Review, the purpose of this assignment was to compensate the City for its funding commitments of $11 million for public improvements to the Montague Expressway pursuant to a settlement agreement among the City, the RDA, the County of Santa Clara, the City of Santa Clara and the City of Milpitas. The RDA and the City always intended that the RDA would pay for such public improvements under the provisions of

Health and Safety Code Section 33445.  The City relied on the RDA's funding commitment and would not have entered into the Settlement Agreement on the terms set forth therein without that commitment.

## Finding 2   Unallowable asset transfer to the San Jose Diridon Development Authority

- In March 2011, the RDA transferred seven properties in the Diridon Area to the San Jose Diridon Joint Powers Authority, a joint powers authority made up of the City and the RDA ("JPA").  The JPA subsequently entered into an Option Agreement dated November 8, 2011 with the Athletics Investment Group, LLC ("AIG") to sell five of such properties. A list of those properties contractual committed to AIG under the Option Agreement is attached hereto as Attachment No. 1.

The draft Asset Transfer Review states that "All of the property transfers [to the JPA] occurred during the period of January 1, 2011 through January 31, 2012 and the assets were not contractually committed to a third party prior to June 28, 2012".  However, there is no statutory or other legal support for the State Controller's Office to use a June 28, 2011 cutoff date for assets contractually committed to third parties.

In fact, Health and Safety Code Section 34167.5 states, in relevant part:

> "If such an asset transfer did occur during that period *and the government agency that received the assets is not contractually committed to a third party for the expenditure or encumbrance of those assets*, to the extent not prohibited by state and federal law, the Controller shall order the available assets to be returned…"  Italics added.

Therefore, since certain properties transferred to the JPA were contractually committed by the Option Agreement with AIG prior to the State Controller's review, such properties are not subject to an order to return.  The relevant provision of Section 34167.5, that "the asset **is not contractually committed**", is not ambiguous nor does it make reference to the effective date of the legislation.  Under the plain and ordinary meaning of the statute, "is" means "is". The only logical reading of this provision is that the commitment must have been made any time prior to the date of the Controller's order.  Therefore, the State Controller's use of June 28, 2011, as the cut-off date for contractual commitments by third parties is inconsistent with the legislation and the Controller has no authority to order the return of an asset that is contractually committed to a third party.

In addition, any order to that effect would constitute an impairment of AIG's rights under the Option Agreement which would be prohibited under both state and federal law.  The Diridon Authority would be in breach of contract with AIG if it were to return the encumbered parcels to the Successor Agency without recognizing the Option Agreement.  Therefore, we request that those assets contractually committed to AIG under the Option Agreement be deleted from the final Asset Transfer Review report.

Thank you in advance for taking the time to review and consider our comments to the draft Asset Transfer Review.

Sincerely,

Debra Figone
Executive Officer

921056_2.doc

## ATTACHMENT NO. 1

Downtown Mixed Use – 1050 South Montgomery Street

Downtown Mixed Use – 115 South Autumn Street
                                      (510 W. San Fernando Street)

Downtown Mixed Use – 150 South Montgomery Street

Downtown Mixed Use – 102 South Montgomery Street

Downtown Mixed Use – 645 Park AVenue

**State Controller's Office**
**Division of Audits**
**Post Office Box 942850**
**Sacramento, CA  94250-5874**

**http://www.sco.ca.gov**

S13-RDA-900