JOSEPH W. COTCHETT (SBN 36324; jcotchett@cpmlegal.com)
PHILIP L. GREGORY (SBN 95217; pgregory@cpmlegal.com)
FRANK C. DAMRELL, JR (SBN 37126; fdamrell@cpmlegal.com)
STEVEN N. WILLIAMS (SBN 175489; swilliams@cpmlegal.com)
ANNE MARIE MURPHY (SBN 202540; amurphy@cpmlegal.com)
CAMILO ARTIGA-PURCELL (SBN 273229; cartigapurcell@cpmlegal.com)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:    (650) 697-6000
Facsimile:    (650) 692-3606

RICHARD DOYLE (SBN 88625; cao.main@sanjoseca.gov)
NORA FRIMANN (SBN 93249; cao.main@sanjoseca.gov)
**OFFICE OF THE CITY ATTORNEY**
200 East Santa Clara Street, 16th Floor
San José, California 95113
Telephone:    (408) 535-1900
Facsimile:    (408) 998-3131
*Attorneys for Plaintiffs the City of San José; the City of San José,*
*as successor agency to the Redevelopment Agency of the City of*
*San José; and the San José Diridon Development Authority*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **CITY OF SAN JOSÉ; CITY OF SAN JOSÉ AS SUCCESSOR AGENCY TO THE REDEVELOPMENT AGENCY OF THE CITY OF SAN JOSÉ; and THE SAN JOSÉ DIRIDON DEVELOPMENT AUTHORITY**,<br><br>        **Plaintiffs,**<br><br>        v.<br><br>**OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as Major League Baseball; and ALLAN HUBER "BUD" SELIG,**<br><br>        **Defendants.** | **Case No. 13-CV-02787-RMW**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>**Hearing Date:**   **October 4, 2013**<br>**Time:**          **9:00 a.m.**<br>**Judge:**         **Hon. Ronald M. Whyte**<br>**Date Filed:**    **June 18, 2013**<br>**Trial Date:**    **None Set** |

Law Offices
COTCHETT,
PITRE &
MCCARTHY, LLP

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1

II.    STANDARD OF REVIEW ........................................................................2

III.   LEGAL ARGUMENT ...............................................................................3

    A.  INTRODUCTION ...............................................................................3

    B.  THE JUDICIALLY CREATED "BASEBALL EXEMPTION" IS LIMITED TO PLAYER/LABOR ISSUES ...............................................4

    C.  ANY ANTITRUST EXEMPTION DOES NOT EXTEND TO FRANCHISE RELOCATION ...................................................................6

    D.  PLAINTIFFS' STATE LAW CLAIMS ARE *NOT* PREEMPTED ........9

    E.  PLAINTIFFS' UNFAIR COMPETITION LAW AND TORT CLAIMS ARE SUFFICIENTLY PLED ...............................................12

        1.  Plaintiffs Adequately Plead Unfair Competition ...............................12

        2.  Plaintiffs Adequately Plead Tortious Interference Claims ...............15

            a.  The Tortious Interference with Prospective Economic Advantage Claim Arises from Defendants' Independent "Wrongful" Acts ...............................................15

            b.  Defendants Need Not Be "Strangers" to the Relationship to be Liable for Tortious Interference ...............................................15

        3.  Plaintiffs Properly Plead "Interference with Plaintiffs' Performance" of the Option Agreement ...............................................18

    F.  PLAINTIFFS HAVE STANDING UNDER THE CLAYTON ACT ........19

        1.  Plaintiffs Have Standing Under Section 4 of the Clayton Act ...............19

        2.  Plaintiffs Have Standing Under Section 16 of the Clayton Act ...............20

    G.  PLAINTIFFS HAVE ANTITRUST STANDING ...............................22

        1.  Plaintiffs Properly Allege Antitrust Injury ...............................22

        2.  Plaintiffs' Injuries Arise from Harm to Competition in the Relevant Market ....24

        3.  Plaintiffs' Injuries Are Direct and Certain ...............................25

IV.    CONCLUSION ........................................................................................25

Law Offices
COTCHETT,
PITRE &
MCCARTHY, LLP

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alaska Airlines, Inc. v. United Airlines, Inc.,*
948 F.2d 536 (9th. Cir. 1991) ...................................................................3

*American Ad Mgmt., Inc. v. General Tel. Co.,*
190 F.3d 1051 (9th Cir. 1999) ...................................................22, 23, 24

*Andrade v. Phoenix,*
692 F.2d 557 (9th Cir. 1982) ...........................................................17, 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................3

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
472 U.S. 585 (1985) ..................................................................................3

*Associated General Contractors v. Cal. State Council of Carpenters,*
459 U.S. 519 (1983) ...........................................................................22, 23

*Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club, LLC,*
113 F.Supp.2d 1164 (S.D. Ohio 1999) ...................................................24

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .............................................................................2, 3

*Blue Shield of Va. v. McCready,*
457 U.S. 465 (1982) ...........................................................................22, 24

*California v. ARC America Corp.,*
490 U.S. 93 (1989) ....................................................................................9

*Cascade Health Solutions v. PeaceHealth,*
515 F.3d 883 (9th Cir. 2008) ...................................................................3

*Catlin v. Wash. Engergy Co.,*
791 F.2d 1343 (9th Cir. 1986) .................................................................3

*City of Lafayette v. Louisiana Power & Light Co.,*
435 U.S. 389 (1977).................................................................................10

*City of Rohnert Park v. Lynn,*
601 F.2d 1040 (9th Cir. 1979) .....................................................20, 21, 22

*County of Santa Clara v. Astra United States, Inc.,*
428 F.Supp.2d 1029 (N.D. Cal. 2006) ....................................................14

*Doe v. United States,*
58 F.3d 494 (9th Cir. 1995) ......................................................................3

*Federal Baseball Club of Baltimore, Inc. v. National League,*
259 U.S. 200 (1922).........................................................................passim

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

ii

Law Offices
COTCHETT,
PITRE&
MCCARTHY, LLP

*Fishman v. Estate of Wirtz,*
   807 F.2d 520 (7th Cir. 1986) ................................................................ 24

*Flood v. Kuhn,*
   407 U.S. 258 (1972) ................................................................*passim*

*Fresno Motors, LLC v. Mercedes-Benz USA, LLC,*
   852 F.Supp.2d 1280 (E.D. Cal. 2012) .................................................. 18

*FTC v. Actavis, Inc.,*
   133 S. Ct. 2223 (2013) ...................................................................... 22

*G&C Auto Body Inc. v. GEICO Gen. Ins. Co.,*
   552 F.Supp.2d 1015 (N.D. Cal. 2008) ............................................ 16, 17

*George Haug Co. v. Rolls Royce Motor Cars,*
   148 F.3d 136 (2d Cir. 1998) .............................................................. 24

*Hawaii v. Standard Oil Co.,*
   405 U.S. 251 (1972) ..................................................................... 19, 20

*Henderson Broadcasting Corp. v. Houston Sports Ass'n, Inc.,*
   541 F. Supp. 263 (S.D. Tex. 1982) ................................................. 6, 11

*In re Brand Name Prescription Drugs Antitrust Litig.,*
   123 F.3d 599 (7th Cir. 1997) ............................................................. 10

*In re Multidistrict Vehicle Air Pollution,*
   481 F.2d 122 (9th Cir. 1973) ......................................................... 19, 21

*Iselin v. United States,*
   270 U.S. 245 (1926) .......................................................................... 9

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
   232 F.3d 979 (9th Cir. 2000) ............................................................. 18

*Leisure Corp. v. Prochnow (In re Leisure Corp.),*
   2007 U.S. Dist. LEXIS 16231 (N.D. Cal. Feb. 22, 2007) ..................... 17

*Los Angeles Memorial Coliseum Comm'n v. National Football League,*
   726 F.2d 1381 (9th Cir. 1984) ........................................................ 5, 20

*Lucas v. Department of Corrections,*
   66 F.3d 245 (9th Cir. 1995) .............................................................. 25

*Major League Baseball v. Crist,*
   331 F.3d 1177 (11th Cir. 2003) ........................................................... 9

*Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,*
   334 U.S. 219 (1948) ......................................................................... 23

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.,*
   271 F.3d 825 (9th Cir. 2001) ............................................................. 17

*McCoy v. Major League Baseball,*
   911 F.Supp. 454 (W.D. Wash. 1995) ................................................. 25

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

*McGary v. City of Portland,*
   386 F.3d 1259 (9th Cir. 2004) ...................................................................3

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
   521 F.3d 1097 (9th Cir. 2008) ...................................................................3

*Mid-South Grizzlies v. National Football League,*
   720 F.2d 772 (3d Cir. 1983) ....................................................................24

*Nat'l Credit Reporting Ass'n v. Experian Info. Solutions, Inc.,*
   2004 U.S. Dist. LEXIS 17303 (N.D. Cal. July 21, 2004).......................12

*Parker v. Brown*
   317 U.S. 341 (1942)....................................................................................3

*Piazza v. Major League Baseball,*
   831 F. Supp. 420 (E.D. Pa 1993) .....................................................4, 6, 7, 8

*Piazza v. Major League Baseball,*
   836 F. Supp. 269 (E.D. Pa 1993) ..............................................................7

*Postema v. National League of Professional Baseball Clubs,*
   799 F. Supp. 1475 (S.D.N.Y. 1992) ..........................................................6

*Radovich v. National Football League,*
   352 U.S. 445 (1957)....................................................................................5

*Robertson v. National Basketball Asso.,*
   389 F. Supp. 867 (S.D.N.Y. 1975) ..........................................................10

*San Francisco Bay Area Rapid Transit Dist. v. Spencer,*
   2005 U.S. Dist. LEXIS 42096 (N.D. Cal. Sept. 2, 2005) ........................14

*Seattle Totems Hockey Club, Inc. v. National Hockey League,*
   783 F.2d 1347 (9th Cir. 1986) .................................................................24

*Silvas v. E*Trade Mortg. Corp.,*
   514 F.3d 1001 (9th Cir. 2008) .................................................................18

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC,*
   634 F.Supp.2d 1009 (N.D. Cal. 2007) ......................................................13

*Spectrum Sports, Inc. v. McQuilan,*
   506 U.S. 447 (1993)....................................................................................3

*St. Louis Convention & Visitors Comm'n v. NFL,*
   154 F.3d 851 (8th Cir. 1998) ....................................................................24

*Toolson v. New York Yankees,*
   346 U.S. 356 (1953)............................................................................5, 7, 8

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.,*
   676 F.2d 1291 (9th Cir.),
   cert. denied, 459 U.S. 1009 (1982) ..........................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

*Union Labor v. Pireno,*
458 U.S. 119 (1982)..........................................................................................3

*United States v. Sealy, Inc.,*
388 U.S. 350 (1967)........................................................................................11

*United States v. Shubert,*
348 U.S. 222 (1955)..........................................................................................5

*William O. Gilley Enters., Inc., v. Alt. Richfield Co.,*
588 F.3d 659 (9th Cir. 2009) ...........................................................................2

**State Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
7 Cal.4th 503 (1994) .......................................................................................16

*Blue Cross of California, Inc. v. Superior Court,*
180 Cal.App.4th 138 (2009) ...........................................................................14

*Bradstreet v. Wong,*
161 Cal.App.4th 1440 (2008) .........................................................................15

*Butterworth v. Nat'l League of Prof'l Baseball Clubs,*
644 So.2d 1021 (Fla. 1994) ..........................................................................7, 8

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
20 Cal.4th 163 (1999) ................................................................................13, 14

*Della Penna v. Toyota Motor Sales, U.S.A.,*
11 Cal.4th 376 (1995) .....................................................................................15

*Exxon Corp. v. Superior Court,*
51 Cal.App.4th 1672 (1997) ...........................................................................17

*Farm Raised Salmon Cases,*
42 Cal.4th 1077 (2008) ...................................................................................10

*Hebert v. Los Angeles Raiders, Ltd.,*
23 Cal.App.4th 414 (1991) .............................................................................10

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal.4th 1134 (2003) ...................................................................................15

*Morsani v. Major League Baseball,*
663 So.2d 653 (Fla. App. 2 Dist. 1995)............................................................8

*Pacific Gas & Electric Co. v. Bear Stearns & Co.,*
50 Cal.3d 1118 (1990)......................................................................................18

*Partee v. San Diego Chargers Football Co.,*
34 Cal.3d 378 (1983).......................................................................................10

*Podolsky v. First Healthcare Corp.,*
50 Cal.App.4th 632 (1996)................................................................................2

*R. E. Spriggs Co. v. Adolph Coors Co.*,
   37 Cal.App.3d 653 (1974) ........................................................................................ 9

*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*,
   41 Cal.4th 929 (2007) ......................................................................................... 9, 10

*Woods v. Fox Broadcasting Sub., Inc.*,
   129 Cal.App.4th 344 (2005) ......................................................................... 15, 16, 17

### Statutes

15 U.S.C. § 15 ........................................................................................................ 19

15 U.S.C. § 26 ........................................................................................................ 20

15 U.S.C. § 26b(a) ................................................................................................. 8, 9

Cal. Civ. Code § 3530 .............................................................................................. 9

Cal. Code Civ. Proc. § 1858 ..................................................................................... 9

### California Business and Professions Code

§ 17200 .................................................................................................................... 13

§ 17204 .................................................................................................................... 14

### Other Authorities

Restat. 2d of Torts, § 767 ........................................................................................ 15

Study of Monopoly Power of the House Committee on the Judiciary,
   H.R. Rep. No. 2002, 82d Cong., 2d Sess. (1952) ........................................... 8, 9, 11

### Rules

BAJI, California Jury Instructions, Civil, Spring 2013 Ed., No. 7.82, 7.86.1 ................. 15

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

## I.      **INTRODUCTION**

Defendants' conduct has prevented relocation of the Athletics Baseball Club to San José. As the Complaint alleges, Defendants' illegal and collusive actions thwarted Plaintiffs' diligent efforts to procure a major league baseball team for Silicon Valley.  Major League Baseball as a sport emphasizes competition.  Yet Major League Baseball as a business refuses to believe it is subject to the same antitrust rules that apply to all other sports.  Defendants ground their entire defense in an outdated construction of baseball's reserve clause "exemption" – one that relies on the now defunct proposition that the business of baseball is an "intrastate" affair exempt from federal regulation.  However, Plaintiffs' claims flow from three distinct violations of federal and California state law that have nothing to do with the reserve clause exemption – the only exemption from the federal antitrust laws that MLB ever had.

**First**, Plaintiffs allege claims under the Sherman Antitrust Act and California's Cartwright Act on the basis that Defendants inhibit competition in the market for major league baseball contests, including the sale of land for the construction of professional baseball stadiums.  *See* Complaint, ¶ 32.  Specifically, *after* competing with Oakland and Fremont to host the Athletics Baseball Club, Plaintiffs prevailed and entered into an Option Agreement with the Athletics.  The only impediment to this free and open competition is Defendants' refusal to allow the Athletics' relocation to San José.  Aware that their conspiracy violates federal and state antitrust laws, Defendants reserve this analysis to the end of their motion, choosing instead to oppose Plaintiffs' antitrust claims under the purported baseball "exemption," the antiquated and oft-criticized doctrine coined in **1922** by *Federal Baseball Club of Baltimore, Inc. v. National League*, 259 U.S. 200 (1922).  As discussed in detail below, the holding of *Federal Baseball* only applies to **player/labor matters**.  Indeed, the judicially created baseball "exemption" is limited to the reserve clause and does *not* apply to the relocation of MLB Clubs.  Thus, Plaintiffs are entitled to injunctive relief and treble damages for Defendants' unabashed violations of antitrust laws.

**Second**, Plaintiffs allege claims for unlawful and unfair competition under California's Unfair Competition Law.  Defendants premise their argument against Plaintiffs' claim for unfair competition on the assumption that the claim relies solely on alleged federal antitrust violations.

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**       1

1   Even if true, Plaintiffs adequately plead antitrust claims.  Plaintiffs' Cartwright Act claim clearly

2   alleges "an agreement or conspiracy to act among defendants."  Complaint, ¶¶ 1, 85, 134, 139,

3   148, 188.  In addition to and independent of their antitrust claims, Plaintiffs' unfair competition

4   claim arises from Defendants' intentional delay tactics to prevent a final decision on relocation of

5   the Athletics to San José under the guise of the MLB Relocation Committee.  By pleading both

6   "unlawful" and "unfair" business practices, Plaintiffs have met and exceeded the pleading

7   requirements of California's Unfair Competition Law.

8        **Third**, Plaintiffs allege claims for interference with economic and contractual advantage,

9   respectively.  Again citing defunct law, Defendants argue (without evidentiary support) they are

10   insulated from interference claims because they have a vested economic interest in the Athletics.

11   However, only parties to a contract are insulated from tortious interference liability.  Nonparties,

12   even those with a direct interest, may be liable for interference torts.  Defendants here are not

13   parties to the Option Agreement.  Having based their entire argument on an obsolete exception,

14   Defendants concede Plaintiffs have sufficiently pled interference torts.

15        At every turn, Defendants attempt to convince this Court they are exempt from laws

16   applicable to all other professional sports, businesses, and individuals of the United States and

17   California, respectively.  Their argument misapprehends the nature of U.S. Supreme Court

18   precedent such as *Flood v. Kuhn* and misreads the breadth of the *Flood* decision.  Defendants are

19   not exempt, neither as to Plaintiffs' federal antitrust claims nor as to their state law claims.

20   Plaintiffs have adequately pled all claims.  The instant motion should be **denied**.

21   **II.    STANDARD OF REVIEW**

22        On a motion to dismiss under Rule 12(b)(6), all allegations of material fact are taken as

23   true and are construed in the light most favorable to Plaintiffs.  *William O. Gilley Enters., Inc., v.*

24   *Alt. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (*per curiam*).  "On a motion to dismiss in an

25   antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic

26   economic principles."  *Id.,* citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Plaintiffs

27   must only plead "enough facts to state a claim to relief that is plausible on its face" *Twombly*, 550

28   U.S. at 570.  Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a

Law Offices
COTCHETT,
PITRE&
MCCARTHY, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**          2

1  cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.

2  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  However,

3  motions to dismiss are "especially disfavored" where the complaint sets forth a novel legal theory.

4  *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004).  "To survive a motion to

5  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

6  relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting

7  *Twombly*, 550 U.S. at 570.

8      A district court should grant the plaintiff leave to amend if the complaint can possibly be

9  cured by additional factual allegations.  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

10  **III.**  **LEGAL ARGUMENT**

11      **A.**      **INTRODUCTION**

12      ***"[E]xemptions from the antitrust laws must be construed narrowly."***  *Union Labor v.*

13  *Pireno*, 458 U.S. 119, 126 (1982).  Liability under Section 1 of the Sherman Act, 15 U.S.C. § 1,

14  requires a "contract, combination. . ., or conspiracy, in restraint of trade or commerce."  *Twombly,*

15  *supra,* 550 U.S. at 548. For a Section 1 claim, Plaintiffs must plead:  (1) a contract, combination

16  or conspiracy among two or more persons or business entities; (2) by which the persons or entities

17  intended to harm or restrain trade or commerce; (3) which actually injures competition.  *Id.*

18      Section 2 claims may be premised upon predatory conduct aimed at achieving or

19  maintaining a monopoly in a given market.  A claim for monopolization of trade has two

20  elements:  "the possession of monopoly power in the relevant market and . . . the acquisition or

21  perpetuation of this power by illegitimate 'predatory' practices."  *Alaska Airlines, Inc. v. United*

22  *Airlines, Inc.*, 948 F.2d 536, 541 (9th. Cir. 1991), citing *Aspen Skiing Co. v. Aspen Highlands*

23  *Skiing Corp.*, 472 U.S. 585, 596 n.19 (1985); *Catlin v. Wash. Engergy Co*., 791 F.2d 1343, 1348

24  (9th Cir. 1986).  Similarly, to state a claim for attempted monopolization, the plaintiff must allege

25  facts that, if true, will prove:  "(1) that the defendant has engaged in predatory or anticompetitive

26  conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving

27  monopoly power."  *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir. 2008),

28  quoting *Spectrum Sports, Inc. v. McQuilan*, 506 U.S. 447, 456 (1993).

1    At issue in this case is the scope of MLB's exemption from antitrust laws.  Defendants

2  claim an ironclad, all-encompassing exemption from both state and federal antitrust legislation.[1]

3  The most recent district court analysis of the "exemption," *Piazza v. Major League Baseball*, 831

4  F. Supp. 420, 438 (E.D. Pa 1993), held the "[a]ntitrust exemption created by *Federal Baseball* is

5  limited to baseball's reserve system," and does not apply to the relocation of baseball clubs.  The

6  court determined that, because the *Flood* opinion found MLB to be a business engaged in

7  interstate commerce, it had stripped *Federal Baseball* of "any precedential value . . . beyond the

8  particular facts there involved, *i.e.*, the reserve clause." *Id*. at 436.  As in *Piazza*, there are

9  compelling reasons for this Court to narrowly construe baseball's "exemption": (1) MLB's

10  exemption is judicially created and thus should be narrowly construed; (2) MLB's exemption

11  stems from a decision which focused on whether or not baseball (in 1922) involved interstate

12  commerce and concluded "[t]he business is giving exhibitions of base ball [*sic*], which are purely

13  state affairs" – this reasoning has been overruled; (3) the U.S. Supreme Court's consideration of

14  the issue has been limited to labor issues, and the Court has called MLB's exemption an

15  "aberration," stating if it were operating with a clean slate it would decide the issue differently;

16  and (4) every other professional sport is subject to the antitrust laws.

17    **B.**    **THE JUDICIALLY CREATED "BASEBALL EXEMPTION" IS LIMITED**
18         **TO PLAYER/LABOR ISSUES**

19    Baseball's so-called "exemption" refers to a line of decisions that began with *Federal*

20  *Baseball.*  The facts of *Federal Baseball* involved whether the two major baseball leagues (the

21  American and the National) had utilized a player reserve clause to prevent the rival Federal

22  League from securing enough qualified players to produce baseball exhibitions.  In that case, the

23  plaintiff was a baseball club based in Baltimore, which, along with seven other teams, made up

24  the Federal League of Professional Baseball.  The plaintiff alleged the defendants were guilty of

25  an illegal conspiracy in restraint of trade when they purchased some of the constituent clubs of the

26

27  _____

[1]   Plaintiffs refer to Defendant "The Office of the Commissioner of Baseball d/b/a Major League Baseball" as "MLB."  MLB "is an unincorporated association whose members are the thirty Major League Baseball Clubs." Complaint, ¶ 27.

28

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**            4

Federal League and induced all of the clubs except for the plaintiff to leave their league and join the National League.  The U.S. Supreme Court held the "business [of] giving exhibitions of base ball [*sic*]" was a local business not involved in interstate commerce and, therefore, not governed by antitrust laws.

The Supreme Court next considered application of antitrust law to baseball in *Toolson v. New York Yankees*, 346 U.S. 356 (1953).  The players in *Toolson* alleged they had been harmed by the reserve clauses in their contracts.  *Id.* at 362.  In a one paragraph opinion, the Court re-affirmed *Federal Baseball*:  "so far as that decision determines that Congress had no intention of including the business of baseball within the scope of the federal antitrust laws." *Id.* at 357.  Justice Burton's well-reasoned dissent pointed out that, whatever the situation in 1922, by 1953 baseball was decidedly operating in interstate commerce.  *Id.* at 358.

In 1972, the U.S. Supreme Court addressed application of antitrust laws to baseball for the third time and for the third time – as in the prior cases – the holding was limited to the reserve clause.  *Flood v. Kuhn*, 407 U.S. 258 (1972).  In keeping with *Federal Baseball* and *Toolson*, the Court found baseball's **reserve system** exempt from the antitrust laws, very specifically stating:

> **With its reserve system enjoying exemption from the federal antitrust laws**, baseball is, in a very distinct sense, an exception and an anomaly.  *Federal Baseball* and *Toolson* have become an aberration confined to baseball.

*Id.* at 282, emphasis added.

All other sports are governed by the Rule of Reason analysis regarding efforts to restrict franchise moves.[2]  In *Los Angeles Memorial Coliseum Commission v. National Football League*, 726 F.2d 1381 (9th Cir. 1984), the Ninth Circuit held that relocation impairments in the NFL Constitution could be an unreasonable restraint on trade, and it was up to a jury to decide the question based on the particular facts of the case.  *Id.* at 1397-98.

---

[2]  Defendants argue *United States v. Shubert*, 348 U.S. 222 (1955) (applying antitrust law to theatrical performances), further entrenched MLB's exemption. However, in *Shubert*, Justice Warren, writing for the Court, confirmed that *Federal Baseball* is limited to the reserve clause: "For over 30 years there has stood a decision of this Court specifically fixing the status of the baseball business under the anti-trust laws **and more particularly the validity of the so-called 'reserve clause.'**" *Id.* at 229, emphasis added. *Radovich v. National Football League*, 352 U.S. 445 (1957), decided two years after *Shubert*, declined to apply *Federal Baseball* and *Toolson* to professional football. *Radovich* involved a claim by a professional football player that he had been "blackballed" after breaking a contract with a club. The Supreme Court again alluded to the specific nature of the issue in *Federal Baseball* and *Toolson*, *i.e.*, the reserve clause.  *Id.* at 449-450.

In *Henderson Broadcasting Corp. v. Houston Sports Ass'n, Inc.*, 541 F. Supp. 263, 265-72 (S.D. Tex. 1982), Judge McDonald stated the baseball exemption has a "narrow scope," does not apply to radio broadcasting of baseball, and does not apply to agreements between baseball teams and non-baseball business enterprises.  This opinion clarifies that the exemption is limited to conduct or agreements "central enough to the 'unique characteristics and needs' of baseball," or a "part of the sport in the way in which players, umpires, the league structure and the reserve systems are."  *Id*. at 268-69.

The scope of the exemption was also at issue in *Postema v. National League of Professional Baseball Clubs*, 799 F. Supp. 1475, 1489 (S.D.N.Y. 1992), which held the baseball exemption did not apply to antitrust claims about employment relations with umpires.  Following *Henderson,* the court assessed whether the challenged conduct was "central enough to baseball to be encompassed in the baseball exemption."  *Id*. at 1489.  *Postema* treated *Flood* as an opinion limiting the scope of the exemption to baseball's "unique characteristics and needs" and applied that narrow scope to *Postema*'s claims:

> Unlike the league structure or the reserve system, baseball's relations with non-players are not a unique characteristic or need of the game.  Anti-competitive conduct toward umpires is not an essential part of baseball and in no way enhances its vitality or visibility.

*Id*. at 1489.  Likewise, anti-competitive conduct towards cities competing to relocate struggling MLB Clubs is not an essential part of baseball and in no way enhances its vitality or visibility.  In fact, it does the opposite.  *See* Complaint, ¶ 71(e).  *See also* Declaration of Roger G. Noll ("Noll Decl."), filed concurrently herewith, ¶¶ 12, 14.

## C.   ANY ANTITRUST EXEMPTION DOES NOT EXTEND TO FRANCHISE RELOCATION

In 1993, a District Court decided the judicially created baseball exemption **is limited to the reserve clause and does not apply to the relocation of baseball clubs**.  *Piazza,* 831 F. Supp. at 438 ("Antitrust exemption created by *Federal Baseball* is limited to baseball's reserve system").  A group of investors had attempted to purchase the San Francisco Giants and relocate the team to Tampa Bay, Florida.  MLB refused to approve the sale.  The court denied MLB's

Law Offices
Cotchett,
Pitre&
McCarthy, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

6

1   motion to dismiss, finding baseball's exemption limited to the reserve clause.  The court

2   determined that, because *Flood* found MLB to be a business engaged in interstate commerce, it

3   had stripped *Federal Baseball* of "any precedential value . . . beyond the particular facts there

4   involved, *i.e.*, the reserve clause."  *Id*. at 436.

5           *Piazza* is strikingly similar to the case at bar. There the plaintiffs brought suit asserting the

6   defendants violated sections 1 and 2 of the Sherman Act because MLB "monopolized the market

7   for Major League Baseball teams and that [it] has placed direct and indirect restraints on the

8   purchase, sale, transfer, relocation of, and competition for such teams."  *Id*. at 436.  The plaintiffs

9   claimed these actions unlawfully restrained their business opportunities with MLB.  The *Piazza*

10  court analyzed the value of *stare decisis* when it determined MLB's antitrust exemption post-

11  *Flood*.  *Piazza* recognized that, although lower courts are bound by Supreme Court decisions, the

12  Supreme Court may change the standard or result established in an earlier case if it is "unsound in

13  principle or unworkable in practice."  *Id*. at 436.  *Piazza* concluded that *Flood* effectively

14  removed the "rule of *stare decisis*" as to *Federal Baseball* and *Toolson* since baseball qualifies as

15  interstate commerce.  *Id*. at 436.  *Piazza* also determined the Supreme Court established that the

16  exemption applies only to the reserve clause.  *Id*. at 436.  Thus, *Piazza* concluded lower courts

17  should not and must not follow the broad rule in *Toolson* and *Federal Baseball*.  *Id*. at 435-6.

18          But the opinion did not stop there – the court went on to assess the scope of the exemption

19  if it was wrong and the exemption was not limited to the reserve clause.  In making this

20  alternative assessment, *Piazza* reviewed prior precedents concerning the exemption and generated

21  a list of activities within the exemption if it were more broadly construed.  *Id*. at 440.  Judge

22  Padova stated that determining which aspects of league structure are "central . . . to the unique

23  characteristics of baseball exhibitions" or which types of league and team decisions or agreements

24  are part of baseball's league structure are factual questions that could only be decided on the basis

25  of a factual record.  *Id*. at 441; s*ee also* 836 F. Supp. 269, 271-73 (E.D. Pa. 1993).

26          One year after *Piazza*, in *Butterworth v. Nat'l League of Prof'l Baseball Clubs,* 644 So.2d

27  1021 (Fla. 1994), the Supreme Court of Florida came to the same conclusion as Judge Padova in

28

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**   7

1   *Piazza*.[3]  In *Butterworth*, the Florida Supreme Court held **the baseball exemption does not apply**

2   **to franchise relocation – it only applies to the reserve system**.  *Id*. at 1030.  After MLB owners

3   voted against the sale of the Giants to a Tampa Bay investment group, then-Florida Attorney

4   General Robert Butterworth issued antitrust civil investigation demands ("CIDs") to the National

5   League Clubs.  The circuit court quashed the CID's: "decisions concerning ownership and

6   location of baseball franchises clearly fall within the ambit of baseball's antitrust exemption." *Id*.

7   at 1026 (McDonald, S.J., dissenting), quoting trial judge's order. The Florida Supreme Court

8   overruled, citing *Piazza*.  The *Butterworth* court determined the precedential value of *Federal*

9   *Baseball* and *Toolson* are limited to their facts.  Again it concluded MLB's antitrust exemption

10  applies only to the reserve clause.

11       In 1998, Congress passed the Curt Flood Act (15 U.S.C. § 26b(a)), which overturned the

12  *Federal Baseball* line of cases and subjected MLB's player/labor decisions to antitrust laws.

13  Defendants claim the Curt Flood Act "preserved the rest of baseball's exemption."  MP&A ISO

14  Mtn Dismiss, 7:21-22.  However, the Flood Act merely specifies that it does not apply to aspects

15  of baseball other than the employment of major league players, including matters relating to

16  broadcasting, the minor leagues, relationships between teams, location and ownership of

17  franchises, and employment of umpires.  15 U.S.C. § 26b(a).  Thus, the language regarding

18  relocation simply states the Flood Act does not apply to the issue.  Also, Congress would have

19  been aware of *Piazza* and *Butterworth* as much as it was aware of the cases Defendants favor.

20  There is no evidence of congressional support for immunizing franchise relocation decisions from

21  antitrust scrutiny.  The *Flood* opinion itself refers to congressional intent *vis-a-vis* "baseball's

22  reserve system." 407 U.S. at 283.  Indeed, the principle evidence of congressional endorsement

23  of the reserve clause in *Flood* was the Report of the Subcommittee on Study of Monopoly Power

24  of the House Committee on the Judiciary, H.R. Rep. No. 2002, 82d Cong., 2d Sess. (1952)

25  [hereafter "1952 Report"].  *See Flood*, 407 U.S. at 272.  That report, in addition to endorsing

26  "some sort of reserve clause," 1952 Report at 229, rejected completely immunizing baseball from

27

28

---

[3]   *See also Morsani v. Major League Baseball*, 663 So.2d 653, 655 (Fla. App. 2 Dist. 1995) ("the antitrust exemption for baseball is limited to the reserve clause").

Law Offices
COTCHETT,
PITRE&
MCCARTHY, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL**
**RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

8

1  the Sherman Act, citing restrictions on the relocation of baseball franchises as one area where

2  immunity would be inappropriate. *Id.* at 230.

3       **D.**     **PLAINTIFFS' STATE LAW CLAIMS ARE *NOT* PREEMPTED**

4       Federal antitrust laws do not expressly preempt the Cartwright Act. *See California v.*

5  *ARC America Corp.*, 490 U.S. 93, 105-106 (1989). There is no preemption even when a

6  Cartwright Act claim targets interstate commerce and not solely intrastate California commerce.

7  *See R. E. Spriggs Co. v. Adolph Coors Co.*, 37 Cal.App.3d 653, 664 (1974). Plaintiffs

8  acknowledge that under certain circumstances not applicable here, federal law may preempt

9  application of the Cartwright Act. *Viva! Internat. Voice for Animals v. Adidas Promotional Retail*

10  *Operations, Inc.*, 41 Cal.4th 929, 935-936 (2007) (defining four types of preemption: express,

11  conflict, obstacle, and field).

12       Defendants here fail to identify which form of preemption they assert. The Curt Flood

13  Act overturned the *Federal Baseball* line of cases and provided MLB's labor decisions are subject

14  to the antitrust laws. 15 U.S.C. § 26b(a). As discussed at length at section II(C), above, the Curt

15  Flood Act merely specifies that it does not apply to aspects of baseball other than the employment

16  of major league players; **it does not exempt matters of team relocation from federal or state**

17  **antitrust laws.** 15 U.S.C. § 26b(a). Accordingly, to the extent MLB's exemption applies at all –

18  Plaintiffs assert it does not – it is strictly limited to the reserve clause, *i.e.*, labor matters.[4]

19       Not surprisingly then, all but one[5] "preemption" case cited by Defendants involves labor

20  matters. *See Flood*, 407 U.S. 258 (antitrust claim challenging MLB's reserve system barred); *In*

21  *re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 611 (7th Cir. 1997) (inapposite

22
23  [4]  *See* Cal. Code Civ. Proc. § 1858 ("In the construction of a statute or instrument, the office of the Judge is simply to
ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to
omit what has been inserted . . ."); Cal. Civ. Code § 3530; *see also Iselin v. United States*, 270 U.S. 245, 251 (1926)
24  ("To supply omissions transcends the judicial function").

25  [5]  *Major League Baseball v. Crist*, 331 F.3d 1177, 1186 (11th Cir. 2003), the only case cited by Defendants that
postdates the Curt Flood Act, dealt with league contraction, not team relocation, and ignored the Curt Flood Act in its
26  entirety. Instead it is grounded in the questioned *Flood* decision. After admitting its "holding is in considerable
tension with the usual standard for preemption," the Eleventh Circuit found "federal law establishes a universal
27  exemption in the name of uniformity." *Id.* at 1185. To the extent this Court considers *Crist*, it should strictly limit
*Crist* to MLB contraction of Clubs because (a) *Crist* relies on *Flood* instead of the ensuing Curt Flood Act, and (b)
28  the Eleventh Circuit admits it is departing from accepted preemption analysis.

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**     9

price fixing case with passing reference to *Flood*); *Robertson v. National Basketball Asso.*, 389 F. Supp. 867 (S.D.N.Y. 1975) (basketball players alleged sports clubs restrained competition through a reserve clause in mandatory contracts); *Partee v. San Diego Chargers Football Co.*, 34 Cal.3d 378, 381 (1983) (football player alleged antitrust violations for blocking employment contract with team in competing league); *Hebert v. Los Angeles Raiders, Ltd.*, 23 Cal.App.4th 414, 419 (1991) (football player sued team for preventing him from bargaining as a free agent). Defendants' focus on these cases is a red herring because Congress has not:  (1) expressly addressed team relocation, (2) enacted law that would produce conflicting results under state antitrust laws, or (3) preempted all matters related to team relocation for professional sports. Indeed, under Defendants' construction, there is no limit to the "baseball exemption," granting MLB *carte blanche* to violate California law.  This expansive interpretation of preemption flies in the face of the precept that courts are reluctant to infer preemption and a party claiming that a state law is preempted has the burden of proving it.  *Viva! Internat. Voice for Animals*, 41 Cal.4th at 936; *see also Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1088 (2008) (consumer protection laws, such as the Unfair Competition Law, are not preempted by the Federal Food, Drug and Cosmetic Act).  Defendants do not carry their burden of proving preemption.  Plaintiffs' Cartwright Act claims are **not** preempted.

The U.S. Supreme Court has consistently dictated narrow construction of antitrust exemptions.  As explained in *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 398-99 (1977), antitrust laws establish an "overarching and fundamental" policy that "a regime of competition" is the "fundamental principle governing commerce in this country."[6]  Accordingly, there is a presumption against any exclusion from the antitrust laws.   One need only compare the antitrust reserve clause issues challenged in *Flood* and the antitrust relocation at issue in this case. Generally, a non-compete agreement among employers would violate the Sherman Act. Although baseball owners, no doubt, wanted the reserve clause to exploit their collective bargaining power *vis-a-vis* players, they had a plausible business justification for their conduct.

---

[6]   *Lafayette*, like the instant case, involved a judicially created exemption (whether the exemption for state-directed restraints created by *Parker v. Brown*, 317 U.S. 341 (1942), extended to city-directed restraints).

Law Offices
COTCHETT,
PITRE&
MCCARTHY, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**          10

1    As *Flood* recognized, the unique interdependence of sports leagues requires some restriction on

2    free competition to maintain overall quality.  In contrast, the relocation restrictions at issue here –

3    the agreement between MLB Clubs to preserve San José as an "operating territory" for the San

4    Francisco Giants – are no different from any attempt by rivals to preserve existing territories and

5    prevent entry into their market.  *See United States v. Sealy, Inc.,* 388 U.S. 350 (1967) (restrictions

6    on entry into established "territories" imposed by joint venture of mattress manufacturers).

7         In this, Defendants' conspiracy impacts the specific market for location of baseball

8    stadiums; therefore state law applies.  The "business of baseball" does not involve harming actual

9    competitors for relocation of MLB Clubs.  For example, inhibiting competition between and

10   among the cities of San Jose, Fremont, and Oakland, on the one hand, and cities that would vie

11   for relocation of an MLB Club under competitive circumstances, on the other hand, is not a part

12   of the "business of baseball."   Indeed, the anticompetitive conduct here is akin to the separate

13   concession market in *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291

14   (9th Cir.), *cert. denied*, 459 U.S. 1009 (1982), or the separate radio market in *Henderson*

15   *Broadcasting Corp. v. Houston Sports Ass'n, Inc.*, 541 F. Supp. 263 (S. D. Tex. 1952), both of

16   which fell outside the *Flood*'s exemption.[7]

17        Consistent with the federal courts' practice to narrowly construe antitrust exemptions,

18   *Flood* does not extend to collusion among MLB owners resulting in artificial restriction of

19   franchise relocation.  Such decisions do not fall within the scope of MLB's exemption.  *Flood*

20   limited the exemption to "business activities which are directly related to the unique needs and

21   characteristics of professional baseball."  407 U.S. at 282.  The U.S. Supreme Court declined to

22   extend MLB's exemption to other professional sports, and lower federal courts properly declined

23   to extend MLB's exemption to activity not solely related to competition on the playing field.

24   Likewise, this Court should decline to read *Flood* as sanctioning Defendants' continued

25   conspiracy to impede the relocation of the Athletics to San José.

---

[7]   As *Henderson* noted, 541 F.Supp. at 269, the House subcommittee report relied on in *Flood* distinguished the "sale of radio and television rights, *management of stadia*, purchase and sale of advertising, the concession industry, and many other business activities" from "the aspects of baseball which are solely related to the promotion of competition on the playing field."  1952 Report, *supra*, at 230, emphasis added.

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

**E.**      **PLAINTIFFS' UNFAIR COMPETITION LAW AND TORT CLAIMS ARE SUFFICIENTLY PLED**

In addition to antitrust violations, Plaintiffs allege state law claims for unfair competition, tortious interference with prospective economic advantage, and tortious interference with contractual advantage.  These claims arise in conjunction with and independently of Plaintiffs' antitrust claims.  Using Plaintiffs' Unfair Competition Law claim as a proxy for all of Plaintiffs' state law claims, Defendants argue "Plaintiff's claim is merely a naked attempt to enforce the Sherman Act in the guise of a Section 17200 claim."  MP&A ISO Mtn Dismiss, 12:9-13, citing *Nat'l Credit Reporting Ass'n v. Experian Info. Solutions, Inc.*, 2004 U.S. Dist. LEXIS 17303 (N.D. Cal. July 21, 2004).  *National Credit* is inapposite for at least three reasons:

**First**, whereas *National Credit* "did not assert a cause of action under any specific antitrust law," Plaintiffs have specifically sued under provisions of the Cartwright Act and the Sherman Act.  *Id.* at * 3; *see also* Complaint, Counts Four-Six.

**Second**, whereas *National Credit* attempted to block removal to federal court, Plaintiffs here have filed in federal court.

**Third**, *National Credit* alleged claims for monopolization and attempted monopolization, claims only addressed under Section 2 of the Sherman Act.  *Nat'l Credit*, * 9-10.  Here, Plaintiffs allege "an agreement or conspiracy to act among defendants," among other claims clearly under the Cartwright Act.  *Id.*, *see also* Complaint, ¶¶ 1, 85, 134, 139, 148, 188.

As discussed in detail *infra*, Plaintiffs have adequately pled unfair competition, tortious interference with prospective economic advantage, and tortious interference with contractual advantage independent of their federal and state antitrust claims.  Defendants' motion to dismiss Plaintiffs' unfair competition and tort claims should be denied.

**1.**      **Plaintiffs Adequately Plead Unfair Competition**

Defendants' attack on Plaintiffs' claim for unfair competition hinges on the assumption that the claim relies solely on alleged antitrust violations.  *See* MP&A ISO Mtn Dismiss, 12:16-19.  Even if true, as discussed in detail above, Plaintiffs have adequately pled antitrust claims.  In addition to and independent of these claims, however, Plaintiffs' unfair competition claim arises

Law Offices
COTCHETT,
PITRE&
MCCARTHY, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**      12

1  from Defendants' intentional delay tactics to prevent a final decision on relocation of the

2  Athletics to San José.  *See* Complaint, ¶¶ 73, 83, 120, 162.  By pleading both "unlawful" and

3  "unfair" business practices, Plaintiffs have met and exceeded the pleading requirements of

4  California Business and Professions Code section 17200 *et seq.*

5      Plaintiffs and Defendants agree California's Unfair Competition Law requires a plaintiff

6  to prove an "unlawful, unfair **or** fraudulent business act **or** practice."  MP&A ISO Mtn Dismiss,

7  12:17-19, citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20

8  Cal.4th 163, 180 (1999), emphasis added.  "Because Business and Professions Code section

9  17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or

10 practices which are **unlawful**, or **unfair**, or fraudulent."  *Podolsky v. First Healthcare Corp.*, 50

11 Cal.App.4th 632, 647 (1996), emphasis added.

12     **"Unlawful" Competition:**  "[T]he plaintiff bringing a claim based on the unlawful prong

13 must identify the particular section of the statute that was allegedly violated, and must describe

14 with reasonable particularity the facts supporting the violation."  *Sonoma Foods, Inc. v. Sonoma*

15 *Cheese Factory, LLC*, 634 F.Supp.2d 1009, 1022 (N.D. Cal. 2007).  Plaintiffs here allege

16 violations under the Cartwright Act, California Business and Professions Code section 16722.

17 *See* Complaint, ¶¶ 170, 185.  Defendants do not challenge Plaintiffs' Unfair Competition Law

18 claim on particularity grounds, rather, they base their entire argument on the premise that the

19 "business of baseball" is exempt from federal and state antitrust laws.  MP&A ISO Mtn Dismiss,

20 12:21-23.  As detailed above, this argument is unavailing.

21     **"Unfair" Competition:**  "Unfair" competition means "conduct that threatens an incipient

22 violation of an antitrust law, **or** violates the policy or spirit of one of those laws because its effects

23 are comparable to or the same as a violation of the law, **or** otherwise significantly threatens or

24 harms competition."  *Cel-Tech*, 20 Cal.4th at 187, emphasis added.  Again, Defendants rely

25 entirely on the purported baseball exemption to the antitrust laws.  MP&A ISO Mtn Dismiss,

26 13:2-3.  In so doing, Defendants completely ignore both the second and third definitions of

27 "unfair" <u>and</u> Plaintiffs' allegations of Defendants' threat to competition by intentionally engaging

28 in tactics to delay any decision of the MLB Relocation Committee for over four years.  *Cel-Tech*,

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**      13

20 Cal.4th at 187; *see also* Complaint, ¶¶ 73, 83, 120, 162.  To determine whether Plaintiffs have adequately pled a violation of the "policy or spirit" of the antitrust laws **or** a significant threat or harm to competition, this Court must determine (1) whether Defendants' conduct is protected under a safe harbor and, if not, (2) whether that conduct is "unfair." *Id.*

**First**. Defendants are not protected by a safe harbor because they cannot point to a single provision that expressly sanctions team relocation restrictions or unreasonable delay in deciding team relocation requests.  The Unfair Competition Law "was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive." *Cel-Tech*, 20 Cal.4th at 181. Accordingly, "[t]o forestall an action under the unfair competition law, another provision must **actually 'bar'** the action or **clearly permit** the conduct." *Id.* at 183, emphasis added.  No such provision exists here.

**Second**, whether Defendants' conduct is "unfair" should not be determined on a motion to dismiss. *Id.* at 188-189.  In *Cel-Tech*, after a bench trial, the California Supreme Court remanded the question of unfairness to the Superior Court for adjudication based on the relevant evidence. *Id*. Here, the Parties have yet to commence discovery.  Further, whether Defendants intentionally engaged in tactics to delay any decision of the MLB Relocation Committee for over four years and whether that conduct "significantly threatens or harms competition" is a disputed question of fact only a jury may decide.[8]

---

[8]  Defendants' standing argument is belied by the terms of California Business and Professions Code section 17204: "Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by . . . **a city attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county** . . ., **or** by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." *See also Blue Cross of California, Inc. v. Superior Court*, 180 Cal.App.4th 138, 149 (2009) ("The city attorney has express statutory authority to file suit on behalf of the People under the UCL").  This action is brought by the San José City Attorney, where San José has a population well in excess of 750,000.  *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 2005 U.S. Dist. LEXIS 42096 (N.D. Cal. Sept. 2, 2005) and *County of Santa Clara v. Astra United States, Inc.*, 428 F.Supp.2d 1029 (N.D. Cal. 2006) are both inapposite because plaintiffs there asserted standing as "persons," not as city attorneys.  Likewise, *Bradstreet v. Wong*, 161 Cal.App.4th 1440 (2008), decided **after** a bench trial, is inapposite as it dealt with a claim for restitution of private wages allegedly due from defendant executives, not the company that actually owed the wages.

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

14

### 2.   Plaintiffs Adequately Plead Tortious Interference Claims

#### a.   The Interference with Prospective Economic Advantage Claim Arises from Defendants' Independent "Wrongful" Acts

Defendants cite *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003), asserting a plaintiff must plead 'the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" Yet this discussion in *Korea Supply* cites to *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal.4th 376, 393 (1995). Defendants fail to reference *Della Penna*; that failure is telling. While Defendants attempt to impose a narrow definition of "wrongful," limited to statutory antitrust violations, the California Supreme Court was clear: "We do not in this case . . . go beyond approving the requirement of a showing of wrongfulness as part of the plaintiff's case." *Della Penna*, 11 Cal.4th at 378.[9]

As with Plaintiffs' Unfair Competition claim, in addition to and independent of Defendants' antitrust violations, Plaintiffs' tortious interference with prospective economic relations claim arises from Defendants' intentional delay tactics to prevent a final decision on relocation of the Athletics to San José. *See* Complaint, ¶¶ 73, 83, 120, 162. The latter implicates disputed facts as to whether Defendants applied "wrongful" economic pressure or violated business ethics and customs. *See* Restat. 2d of Torts, § 767. Disposition of this claim is therefore improper on the instant motion as Plaintiffs require discovery on the extent and mode of economic pressure and expert opinion as to business ethics and customs in the relevant market.

#### b.   Defendants Need Not Be "Strangers" to the Relationship to be Liable for Tortious Interference

Only parties to a contract are insulated from tortious interference liability. *Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal.App.4th 344, 352-353 (2005). Nonparties, including those with a direct economic interest, may be liable for tortious interference liability. *Id*. at 355; *see also G&C Auto Body Inc. v. GEICO Gen. Ins. Co.*, 552 F.Supp.2d 1015, 1019-1021 (N.D. Cal. 2008). Defendants are not parties to the Option Agreement. Any economic relationship between

---

[9]   *BAJI No. 7.82* reflects the "wrongful" element of tortious interference with prospective economic advantage. *See BAJI*, California Jury Instructions, Civil, Spring 2013 Ed., No. 7.82, 7.86.1 and Comments. The *BAJI* definition of "wrongful" was derived from the Second Restatement of Torts, and includes "economic pressure" and "business ethics and customs." Restat. 2d of Torts, § 767.

Law Offices
COTCHETT,
PITRE&
MCCARTHY, LLP

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW                                    15

1   Defendants and the Athletics is irrelevant to determine Defendants' liability for either of the

2   interference claims.

3        Defendants argue they are not strangers to the Option Agreement: "MLB has both a vested

4   economic interest in the Athletics and a contractual right to approve or disapprove any proposed

5   franchise relocation.  As such, it cannot be liable for tortious interference."  MP&A ISO Mtn

6   Dismiss, 14:8-11.  Two preliminary points: MLB is named as a Defendant as "an unincorporated

7   association whose members are the thirty Major League Baseball Clubs."  Complaint, ¶ 27.  Thus,

8   MLB is not a separate entity and there is no allegation MLB has any vested economic interest in

9   the Athletics.  Also, Defendants' "contractual right" argument is unripe because the previous

10  MLB Constitution was to remain in effect through <u>December 31, 2012</u> and "[n]o new

11  Constitution has been posted by MLB."  Complaint, ¶ 103.  As such, Defendants' "contractual

12  right" argument lacks evidentiary support.

13       Like defendant Fox Broadcasting in *Woods*, Defendants cite *Applied Equipment Corp. v.*

14  *Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994), for the proposition that interference torts can be

15  brought only against "*outsiders* who have no legitimate social or economic interest in the

16  contractual relationship."  *Id.* at 514, *see also* MP&A ISO Mtn Dismiss, 14:11-14.  In *Woods*, the

17  Court of Appeal **rejected** this argument: "This quoted language from *Applied Equipment* meant

18  that not only were contracting parties immune from interference claims, so too were another class

19  of defendants who, although not parties to a contract, were not true 'strangers' to the contract

20  because they had some general interest in the contractual relationship."  *Woods*, 129 Cal.App.4th

21  at 352.  Instead, the Court of Appeal concluded "any language in *Applied Equipment* that might

22  be construed as Fox contends is dicta at best."  *Id.*[10]

23  _____

24  [10]   At issue in *Applied Equipment* was the applicability of conspiracy law to hold a contracting party liable for
conspiring with a third party seeking to disrupt the contractual relationship.  The plaintiff contracted to supply Litton

25  with equipment.  Litton, unhappy with the price, went directly to the plaintiff's supplier for a better deal,
consequently reducing the plaintiff's commission.  The plaintiff sued Litton for conspiring with the supplier to induce
a breach of the contract.  **There was no dispute that Litton was a party to the contract**.  *Id.* at 352.  Likewise, here,

26  there is no dispute Defendants are not parties to the Option Agreement.  As such, this Court should follow *Woods*,
finding it "highly unlikely that *Applied Equipment* intended to hold, or should be construed as holding, that persons
or entities with an ownership interest in a corporation are automatically immune from liability for interfering with

27  their corporation's contractual obligations." *Id.* at 353.  The fact that Defendants assert, without evidentiary support,
that they have an economic interest in the Athletics does not immunize them from liability for interfering with the

28  Athletics' economic and contractual obligations to Plaintiffs.

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

Defendants further cite to *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825 (9th Cir. 2001) and *Exxon Corp. v. Superior Court*, 51 Cal.App.4th 1672 (1997) for the proposition that interference is not tortious unless it is committed by a "stranger." MP&A ISO Mtn Dismiss, 14:15-22. Both cases are inapposite, however, because they dealt primarily with the "wrongfulness" element of the tort of interference with prospective economic advantage. *See Woods*, 129 Cal.App.4th at 354-355. In distinguishing *Marin Tug*, the *Woods* Court found:

> There is no mention of *Applied Equipment* and . . . the three decisions cited by *Marin Tug* for the immunity of those with a direct interest in someone else's contractual relationship[, including *Exxon*,] in fact have no bearing on that issue. As a result, we conclude that *Marin Tug* did no more than evaluate the wrongfulness of Shell's conduct in the context of its relationships with Marin Tug and the tug company's customers and was not extending immunity from contract interference claims to an even broader, more attenuated class of persons.

*Id.* at 355.

To the extent this Court finds *Woods*, a California appellate decision, and *Marin Tug*, a District Court decision, are at odds, it should defer to the *Woods* Court. *See Andrade v. Phoenix*, 692 F.2d 557, 559 (9th Cir. 1982) (absent a ruling by a state's highest court, federal courts must follow decisions of intermediate appellate courts of the state unless convincing evidence indicates the state's highest court would decide differently), internal citations omitted. Following this precept, one District Court found "the 2005 *Woods* decision provides a strong indication that the pronouncement by the Ninth Circuit in the 2001 *Marin Tug* opinion regarding the scope of the California intentional interference tort would not be adopted by California's highest court. Under such circumstances, this Court is not bound by the interpretation of state law set forth in *Marin Tug*." *G&C*, 552 F.Supp.2d at 1021.[11] Likewise, *Fresno Motors, LLC v. Mercedes-Benz USA, LLC*, 852 F.Supp.2d 1280 (E.D. Cal. 2012), an opinion which expressly disagrees with the *Woods*

---

[11]  Defendants' citation to *Leisure Corp. v. Prochnow (In re Leisure Corp.)*, 2007 U.S. Dist. LEXIS 16231 (N.D. Cal. Feb. 22, 2007) is also unavailing. In *Leisure Corp.*, defendant Prochnow was a signatory to the contract at issue. Here, Defendants are not signatories to the Option Agreement. Further, like *Marin Tug*, this Court's decision was based on Prochnow's purported "wrongful" conduct, not his economic relationship to plaintiffs or the operative contract. Finally, Plaintiffs respectfully note that the court in *G&C*, citing *Woods*, questioned the reasoning of *In re Leisure Corp.* to the extent it upheld the "third-party stranger" analysis of *Marin Tug*. *G&C*, 552 F.Supp.2d at 1019.

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**   17

Court (see pages 1295-1299), must be disregarded in favor of the California appellate court's

analysis and holding.  *Andrade*, 692 F.2d at 559.[12]

### 3.   Plaintiffs Properly Plead "Interference with Plaintiffs' Performance" of the Option Agreement

Defendants argue "Plaintiffs' claim for interference with contract also fails because they

have not (and cannot) plead the elements of breach, disruption, or resulting damages."  MP&A

ISO Mtn Dismiss, 16:14-15.  Not only is this statement false, it misstates pleading requirements

of interference with contractual advantage.  In *Pacific Gas & Electric Co. v. Bear Stearns & Co.*,

50 Cal.3d 1118 (1990), mischaracterized by Defendants (*see* MP&A ISO Mtn Dismiss, 17:2-6),

the California Supreme Court found:

> Plaintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations.  We have recognized that interference with the plaintiff's performance may give rise to a claim for interference with contractual relations if **plaintiff's performance is made more costly or more burdensome** . . .  Other cases have pointed out that while the tort of inducing breach of contract requires proof of a breach, the cause of action for interference with contractual relations is distinct and requires only proof of interference.

*Pacific Gas & Electric Co*, 50 Cal.3d at 1129, internal citations omitted, emphasis added.

Here, Plaintiffs allege Defendants intentionally delayed any decision of the MLB

Relocation Committee for four years.  *See* Complaint, ¶ 162.  As a direct result, Plaintiffs allege

performance of the Option Agreement and negotiation of the Purchase Agreement were disrupted.

*Id*. at ¶ 163.  Defendants' interference has made performance under the Option Agreement more

burdensome and more costly.  *Id*. at ¶ 164.  Defendants' argument that "the Athletics have already

performed their obligations in full" is belied by the Option Agreement:  "AUTHORITY and

OPTIONEE **shall** negotiate, in good faith, a purchase and sale agreement for the Property

consistent with the terms of this Agreement."  *Id*. at **Exhibit 3**, Section 4(B), emphasis added.

Plaintiffs have properly pled Defendants' interference with contractual advantage.

---

[12]   Defendants further argue Plaintiffs' tortious interference claims fail because the Option Agreement is void. MP&A ISO Mtn Dismiss, 16:18-28.  Not only is this argument factually incorrect, it is similarly improper at the motion to dismiss stage because "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008).  This Court must consider the Complaint as it has been alleged; Defendants may not ignore or recast Plaintiffs' allegations. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989-990 (9th Cir. 2000).

Law Offices
Cotchett,
Pitre&
McCarthy, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

18

### F.   PLAINTIFFS HAVE STANDING UNDER THE CLAYTON ACT

Plaintiffs have Clayton Act standing, both under Section 4 for treble damages and Section 16 for injunctive relief.[13]

#### 1.   Plaintiffs Have Standing Under Section 4 of the Clayton Act

Plaintiffs ground their claim for treble damages on Section 4 of the Clayton Act: [A]ny person who shall be injured in his **business or property by reason of** anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15, emphasis added.  Plaintiffs have standing since they allege (1) injury to their "business or property," and (2) the injury suffered was occasioned "by reason of" an antitrust violation.  *See In re Multidistrict Vehicle Air Pollution*, 481 F.2d 122, 126 (9th Cir. 1973), citing *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263-264 (1972).

**Injury to business or property:**  Where plaintiff seeks "damages for injuries to its commercial interests, it may sue under § 4." *Hawaii*, 405 U.S. at 264.  Plaintiffs seek damages for injuries to their commercial interests in the Diridon Redevelopment Project Area, owned by Plaintiff the City of San José as Successor Agency, and alienable by Plaintiffs, collectively.  *See* Complaint, **Exhibit 3**, Recitals and Exhibit A thereto.  Defendants have prevented Plaintiffs from entering into a purchase and sale agreement with the Athletics pursuant to the Option Agreement.[14]  *Id*. at Section 4(B); *see also* Complaint, ¶¶ 21, 76, 77, 129, 130, 132, 136, 148, 203.

Citing *Hawaii*, Defendants argue Plaintiffs' claim for treble damages arises from alleged "general harm to the local economy" that does not constitute "business or property" under the Clayton Act.  MP&A ISO Mtn Dismiss, 18:17-20.  Whereas *Hawaii* sued in *parens patriae* for alleged overcharges paid by the citizens of the State, Plaintiffs here sue in their proprietary

---

[13]   Defendants challenge Plaintiffs' standing under the Cartwright Act in MP&A ISO Mtn Dismiss, fn 22.  For the same reasons articulated under the Clayton Act, Defendants' standing arguments under the Cartwright Act fail.

[14]   Defendants' incorrectly and prematurely contend Plaintiffs would lose money upon execution of the Option Agreement.  Valuation for this type of real property is determined by experts and is wholly improper at the motion to dismiss stage. *See Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1109 (9th Cir. 2010) (reasonably equivalent value is a question of fact that should consider all of the specific circumstances affecting the value of the asset).

Law Offices
COTCHETT,
PITRE &
MCCARTHY, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**   19

1    capacity for direct injury to their property, *i.e.*, the Diridon Redevelopment Project Area.

2    Plaintiffs have satisfied prong one for Clayton Act, Section 4 standing.

3        **Antitrust violation:** Defendants do not challenge Plaintiffs on prong two.  Defendants'

4    conspiracy to prevent the Athletics' relocation to San José is a clear cut antitrust violation.  *See*

5    *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 726 F.2d 1381 (9th Cir.

6    1984) (antitrust violation to restrict entry of one NFL team into another team's market).

7            2.    <u>**Plaintiffs Have Standing Under Section 16 of the Clayton Act**</u>

8        Plaintiffs ground their claim for injunctive relief on Section 16 of the Clayton Act:

9        Any person, firm, corporation, or association shall be entitled to sue for and have
         injunctive relief, in any court of the United States having jurisdiction over the
10       parties, against threatened loss or damage by a violation of the antitrust laws,
         including sections two, three, seven and eight of this Act, when and under the same
11       conditions and principles as injunctive relief against threatened conduct that will
         cause loss or damage is granted by courts of equity, . . .
12

13   15 U.S.C. § 26.  The standing requirements under Section 16 of the Clayton Act are "far broader"

14   than those under Section 4.  *Hawaii v. Standard Oil Co.*, 431 F.2d 1282, 1284 (9th Cir. 1970).

15   "To have standing under § 16, a plaintiff must show (1) a **threatened** loss or injury cognizable in

16   equity (2) proximately resulting from the alleged antitrust violation."  *City of Rohnert Park v.*

17   *Lynn*, 601 F.2d 1040, 1044 (9th Cir. 1979), emphasis added.

18       **Threatened loss or injury cognizable in equity:**  Plaintiffs seek damages for real and

19   threatened injuries to their commercial interests in the Diridon Redevelopment Project Area.  *See*

20   Complaint, <u>**Exhibit 3**</u>.  Defendants' actions directly prevent Plaintiffs from entering into a

21   purchase and sale agreement with the Athletics pursuant to the Option Agreement.  Further,

22   Plaintiffs may be estopped entirely from reaching a purchase and sale agreement unless

23   Defendants are enjoined from committing further antitrust violations.  *Id.* at Section 4(B); *see also*

24   Complaint, ¶¶ 21, 76, 77, 129, 130, 132, 136, 148, 203.

25       Defendants argue Plaintiffs lack standing because San José's interest in "improving a local

26   commercial zone, and its ownership of the property in the commercial zone" do not give rise to a

27   threatened loss or injury cognizable in equity.  MP&A ISO Mtn Dismiss, 19:17-21.  Defendants

28   cite *City of Rohnert Park*, where Rohnert Park alleged construction of a regional shopping center

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

20

in Santa Rosa would discourage development of a similar center in Rohnert Park.  *City of Rohnert Park*, 601 F.2d at 1044.  Here, Plaintiffs do not allege a hypothetical negative impact based on competition with a sister city; Plaintiffs allege an existing threat to their ability to compete for relocation of the Athletics to San José, where Plaintiffs have authority to sell, lease, or otherwise dispose of land to the Athletics.  *See* Complaint, **Exhibit 3**, Recitals and Exhibit A thereto.[15]

        **Proximately resulting from the alleged antitrust violation:** Plaintiffs' harm is not just proximate; it is a direct result of Defendants' actions to block relocation of the Athletics to San José.  *See* Complaint, ¶¶ 197, 203.  Ticking off a list of hypotheticals, Defendants argue Plaintiffs' harm is "entirely speculative."  MP&A ISO Mtn Dismiss, 19:22-20:5.  Discerning minds are always capable of injecting uncertainty into facts; were that the standard, no grievance, even one rooted in contract, would survive Section 16 scrutiny.  Here, Defendants' hypotheticals are belied by the facts pled in the Complaint alleging real and threatened harm to Plaintiffs:

- The Diridon Development Authority and the Athletics are parties to an Option Agreement which requires the parties to negotiate, in good faith, a purchase and sale agreement for the Diridon Redevelopment Project Area.  *See* Complaint, **Exhibit 3**, Section 4(B).
- A 2009 Economic Impact Analysis detailed the economic benefits of the proposed Athletics' stadium in San José.  *Id*. at ¶ 70, **Exhibit 1**.
- The San José City Council reviewed and unanimously approved an environmental impact study.  *Id*. at ¶ 73.
- Drawings for the new ballpark have been completed.  *Id*. ¶ 68.
- In 2010, San José Mayor Chuck Reed called for a public vote on if the Athletics could purchase the Diridon Redevelopment Project Area and build a new stadium.  *Id*. at ¶ 73.
- At Commissioner Selig's request, Mayor Reed delayed the vote pending the MLB Relocation Committee's determination of the Athletics-Giants territorial dispute.  *Id*.
- The Athletics have indicated their continued desire to relocate to San José.  *Id*. at ¶ 71.

        In *City of Rohnert Park*, Rohnert Park could not show that, absent the alleged antitrust violation, it would have been chosen for the urban renewal project.  *City of Rohnert Park*, 601 F.2d 1044.  In short, Rohnert Park competed and lost to Santa Rosa.  Here, despite competition

---

[15]  Plaintiffs also have standing to vindicate the interests of their constituents, the citizens of San José, including local consumers of Major League Baseball and the businesses that will benefit from relocation of the Athletics to San José. *City of Rohnert Park*, 601 F.2d at 1044, citing *In re Multidistrict Vehicle Air Pollution*, 481 F.2d 122, 131 (9th Cir. 1973) ("political subdivisions such as cities and counties . . . [may] sue to vindicate such of their own proprietary interests as might be congruent with the interests of their inhabitants").

Law Offices
COTCHETT,
PITRE&
MCCARTHY, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

21

1    from Oakland and Fremont before it, San José has successfully competed to relocate the Athletics

2    to San José.  The only impediment is Defendants' refusal to allow the Athletics' relocation.

3    Plaintiffs have Clayton Act, Section 16 standing.

4        **G.**    **PLAINTIFFS HAVE ANTITRUST STANDING**

5          Dissatisfied with their original Clayton Act, Section 4 analysis, Defendants take a second

6    bite at the apple to avoid the threat of treble damages.  Defendants coin their final standing

7    arguments as supplemental requirements for all federal antitrust claims.  However, the cases they

8    cite deal solely with Section 4 of the Clayton Act regarding claims for treble damages, and do not

9    implicate Defendants' standing under Section 16 of the Clayton Act.  *See Blue Shield of Va. v.*

10   *McCready,* 457 U.S. 465 (1982) (plaintiff insurance plan subscriber brought suit under Section 4

11   alleging unlawful conspiracy to exclude clinical psychologists from receiving compensation

12   under insurance plan); *Associated General Contractors v. Cal. State Council of Carpenters*, 459

13   U.S. 519 (1983) (unions sought treble damages under Section 4 alleging multiemployer

14   association coerced third parties to enter business relationships with nonunion firms).[16]

15         In determining standing under Section 4 of the Clayton Act, courts weigh: (1) the nature

16   of the plaintiff's alleged injury – whether it was the type the antitrust laws intended to forestall;

17   (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative

18   recovery; and (5) the complexity in apportioning damages.  *Associated General Contractors v.*

19   *Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983); *see also American Ad Mgmt., Inc. v.*

20   *General Tel. Co.*, 190 F.3d 1051, 1054 (9th Cir. 1999).  "To conclude that there is antitrust

21   standing, a court need not find in favor of the plaintiff on each factor.  Generally no single factor

22   is decisive.  Instead, we balance the factors."  *American Ad*, 190 F.3d at 1055.

23       **1.**    **Plaintiffs Properly Allege Antitrust Injury**

24         To state a claim for antitrust injury, Plaintiffs must allege: "(1) unlawful conduct, (2)

25   causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and

26   (4) that is of the type the antitrust laws were intended to prevent."  *Id*. at 1055.  Defendants do not

---

[16]  Defendants' citation to dicta in the dissent in *FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013) is unavailing – that case dealt with alleged patent infringement.  *Id*. at 2247 ("Patent litigation is costly, time consuming, and uncertain").

Law Offices
COTCHETT,
PITRE&
MCCARTHY, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

22

1   even attempt to challenge Plaintiffs on prongs 1-3.  Misapprehending *AGC* and its progeny,

2   Defendants take issue with prong 4, arguing Plaintiffs have not pled the type of injury antitrust

3   laws prevent because they were "neither a consumer nor a competitor in the market in which trade

4   was restrained."  MP&A ISO Mtn Dismiss, 21:6-9.  Here, the relevant market is "the provision of

5   major league men's professional baseball contests," including the sale of land for the construction

6   of a major league men's professional baseball stadium.  *See* Complaint, ¶ 32.  Construing

7   "consumers" and "competitors" narrowly, Defendants limit standing to the Commissioner and the

8   MLB Clubs.  MP&A ISO Mtn Dismiss, 21:13-21.  Section 4 of the Clayton Act is not so limited:

9
> The statute does not confine its protection to consumers, or to purchasers, or to
10  > competitors, or to sellers. Nor does it immunize the outlawed acts because they are
    > done by any of these. The Act is comprehensive in its terms and coverage,
11  > protecting all who are made victims of the forbidden practices by whomever they
    > may be perpetrated.
12

13  *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948); *see also*

14  *American Ad*, 190 F.3d at 1055-1058.  "[I]t is not the status as a consumer or competitor that

15  confers antitrust standing, but the relationship between the defendant's alleged unlawful conduct

16  and the resulting harm to the plaintiff."  *American Ad*, 190 F.3d at 1058.

17          Here, Plaintiffs negotiated the Option Agreement with the Athletics baseball club.  *See*

18  Complaint, ¶ 76, **Exhibit 3**.  Plaintiffs and the Athletics agreed to "negotiate, in good faith, a

19  purchase and sale agreement" for the sale of land to build a major league men's professional

20  baseball stadium.  *Id*.  Defendants' alleged unlawful conduct – blocking relocation of the

21  Athletics to San José – is the only obstacle to the Athletics' relocation, harming Plaintiffs.  *See*

22  Complaint, ¶ 135.  Assuming *arguendo* that Defendants' narrow construction of "consumer" or

23  "competitor" has merit – **it does not** – Plaintiffs' injuries are "inextricably intertwined" with

24  injuries sustained by the Athletics, as a party to the Option Agreement.  *See American Ad*, 190

25  F.3d at 1057, fn 5 ("We recognize that the Supreme Court has carved a narrow exception to the

26  market participant requirement for parties whose injuries are 'inextricably intertwined' with the

27  injuries of market participants"), citing *Blue Shield*, 457 U.S. at 483-484.  Independently and

28  through their contractual relationship with the Athletics, Plaintiffs allege antitrust injury.

Law Offices
COTCHETT,
PITRE&
MCCARTHY, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**

23

2.    **Plaintiffs' Injuries Arise from Harm to Competition in the Relevant Market**

The antitrust injury requirement means Plaintiffs must allege Defendants actions resulted in an adverse effect on competition as a whole in the relevant market.  *George Haug Co. v. Rolls Royce Motor Cars*, 148 F.3d 136, 139 (2d Cir. 1998), internal citations omitted.  Here, San José competed with Oakland and Fremont to house the Athletics.  *See* Complaint, ¶¶ 53, 67, 73, 117, 118.  Ultimately, San José prevailed, resulting in the Option Agreement.  *See* Complaint, ¶ 76, **Exhibit 3**.  The only impediment is Defendants' refusal to allow the Athletics to relocate.  *Id.* at ¶ 101.  Thus, each Plaintiff is damaged by Defendants' stranglehold on competition in the market for major league baseball, including competition to sell land for constructing a baseball stadium.  *Id.* at ¶ 32.  Defendants prevent relocation of any Club by withholding their authorization.[17]

Grasping at straws, Defendants cite *Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club, LLC*, 113 F.Supp.2d 1164, 1174 (S.D. Ohio 1999), quoting the **dissent** in *Fishman v. Estate of Wirtz*, 807 F.2d 520, 563 (7th Cir. 1986), to argue "Plaintiffs do not allege a reduction in competition in the relevant market."  MP&A ISO Mtn Dismiss, 22:28-23:6.  Similar to Rohnert Park, the *Trotwood* plaintiffs lost to another group vying for a minor league team in Dayton.  Here, Plaintiffs successfully competed to relocate the Athletics to San José.  The sole impediment to consummating the deal is Defendants' veto in restraint of competition.[18]

_____

[17]    Not only do Defendants harm competition for relocation of the Athletics, according to Roger G. Noll, Professor Emeritus of Economics at Stanford University, "preventing the Oakland Athletics baseball team from moving to San Jose causes harm to competition because relocating to San Jose would substantially increase the potential fan base and attendance of the team."  Noll Decl., ¶ 8.  "Given that San Jose is substantially more economically attractive than Oakland as a home location for the Athletics, the only plausible reason for preventing relocation of the Athletics to San Jose is to protect the Giants from more intense competition from the Athletics."  *Id.* at ¶ 15.

[18]    Defendants' citation to *St. Louis Convention & Visitors Comm'n v. NFL*, 154 F.3d 851 (8th Cir. 1998), *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 783 F.2d 1347 (9th Cir. 1986), and *Mid-South Grizzlies v. National Football League*, 720 F.2d 772 (3d Cir. 1983), are similarly inapposite.  In *St. Louis*, the City obtained an NFL team, and there was no evidence *at trial* that any other willing and able bidder was in the market for a stadium.  *St. Louis*, 154 F.3d at 861, 864.  Here, San Jose has not obtained an MLB Club and there have been multiple bidders for the Athletics, including Oakland and Fremont.  *See* Complaint, ¶¶ 53, 67, 73, 117, 118.  In *Seattle Totems*, the Totems hockey club was granted a conditional NHL franchise but failed to fulfill the conditions precedent to obtain a final franchise.  *Seattle Totems*, 783 F.2d at 1350.  Here, Defendants refuse to give San Jose any rights to consummate its deal to relocate the Athletics.  Further, in *Seattle Totems*, there was "no contention or showing that the denial was to protect any other major league team in the Seattle market."  *Id.* at 1350.  Here, Defendants' denial of the Athletics' move to San Jose is to protect the San Francisco Giants.  *See* Complaint, ¶¶ 80, 81, 85, 88, 90, 94, 95, 98.  Finally, *Mid-South Grizzlies* is inapposite as it dealt with the NFL's denial of a request to add a football franchise, not relocate an existing franchise.

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**    24

1

### 3.    Plaintiffs' Injuries Are Direct and Certain

As discussed in detail *supra* at page 20, Plaintiffs allege direct harm.  Plaintiffs here seek damages for injuries to their commercial interests in the Diridon Redevelopment Project Area, owned by Plaintiff the City of San José as Successor Agency to the Redevelopment Agency for the City of San José, and alienable by Plaintiffs, collectively.  *See* Complaint, **Exhibit 3**, Recitals and Exhibit A thereto.  This is not a case of "indirect ripple effect" because only Plaintiffs can alienate the Diridon Redevelopment Project Area.  *See* MP&A ISO Mtn Dismiss, 24:13-24, citing *McCoy v. Major League Baseball*, 911 F.Supp. 454, 458 (W.D. Wash. 1995).  Instead, as a direct result of Defendants' actions, Plaintiffs have been prevented from entering into a purchase and sale agreement with the Athletics pursuant to the Option Agreement.  *Id*. at Section 4(B); *see also* Complaint, ¶¶ 21, 76, 77, 129, 130, 132, 136, 148, 203.

### IV.    CONCLUSION

Plaintiffs have properly pled claims for interference with prospective economic advantage, interference with contractual advantage, and unfair competition, as well as violations of the Sherman Act and the Cartwright Act.  If this Court finds that any element of a claim has not been sufficiently pled, leave to amend should be granted unless it is clear that amendment is futile. *Lucas v. Department of Corrections*, 66 F.3d 245 (9th Cir. 1995).

Dated:  September 6, 2013              **COTCHETT, PITRE & McCARTHY, LLP**


By: */s/ Joseph W. Cotchett*
     **JOSEPH W. COTCHETT**

     *Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); Case No. 13-CV-02787-RMW**     25