KEKER & VAN NEST LLP
JOHN KEKER - # 49092
    jkeker@kvn.com
PAULA L. BLIZZARD - # 207920
    pblizzard@kvn.com
THOMAS E. GORMAN - # 279409
    tgorman@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

PROSKAUER ROSE LLP
BRADLEY I. RUSKIN (*pro hac vice*)
    bruskin@proskauer.com
Eleven Times Square
New York, NY 10036
Telephone:    212-969-3000
Facsimile:    212-969-2900

PROSKAUER ROSE LLP
SCOTT P. COOPER (SBN 96905)
    scooper@proskauer.com
SARAH KROLL-ROSENBAUM (SBN 272358)
    skroll-rosenbaum@proskauer.com
JENNIFER L. ROCHE (SBN 254538)
    jroche@proskauer.com
SHAWN S. LEDINGHAM, JR. (SBN 275268)
    sledingham@proskauer.com
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:    310-557-2900
Facsimile:    310-557-2193

Attorneys for Defendants
OFFICE OF THE COMMISSIONER OF BASEBALL,
an unincorporated association doing business as Major League
Baseball; and ALLAN HUBER "BUD" SELIG

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA  /  SAN JOSÉ DIVISION

| | |
|---|---|
| CITY OF SAN JOSÉ; CITY OF SAN JOSÉ AS SUCCESSOR AGENCY TO THE REDEVELOPMENT AGENCY OF THE CITY OF SAN JOSÉ; and THE SAN JOSÉ DIRIDON DEVELOPMENT AUTHORITY,<br><br>                    Plaintiffs,<br><br>          v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as Major League Baseball; and ALLAN HUBER "BUD" SELIG,<br><br>                    Defendants. | Case No. 13-CV-02787-RMW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)**<br><br>Hearing Date:    October 4, 2013<br>Judge:            Hon. Ronald M. Whyte<br>Date Filed:       June 18, 2013<br>Trial Date:       None set |

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787-RMW

781693

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I.     BASEBALL'S ANTITRUST EXEMPTION BARS PLAINTIFFS' CLAIMS..................1

    A.     The Supreme Court and the circuit courts have repeatedly held that the antitrust exemption applies to the "business of baseball".......................................1

    B.     Plaintiffs ask this Court to reject established Supreme Court and circuit law and follow a solitary, and widely criticized, federal district court opinion ............4

    C.     Congress expressly preserved the antitrust exemption when it enacted the Curt Flood Act ...............................................................................................5

    D.     Plaintiffs' state law claims are preempted by the Supremacy Clause and precluded by the Commerce Clause ..................................................................6

II.    PLAINTIFFS' UNFAIR COMPETITION AND TORTIOUS INTERFERENCE CLAIMS MUST BE DISMISSED ...................................................................................7

    A.     Plaintiffs' Unfair Competition claim fails because "delay" is not "unfair" under § 17200 .............................................................................................8

    B.     Plaintiffs' tortious interference claims fail as a matter of law ...............................9

        1.     Plaintiffs have pled no independently wrongful act to support their claim for tortious interference with prospective economic advantage ........9

        2.     Defendants are not strangers to the economic relationship between the Athletics and Plaintiffs and thus cannot be liable for interference .................................................................................................10

        3.     Plaintiffs claim for interference with contract fails because the Option Agreement was not breached or disrupted....................................12

III.   PLAINTIFFS DO NOT HAVE CLAYTON ACT OR ANTITRUST STANDING.........13

CONCLUSION....................................................................................................................15

i

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787 RMW

781693

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Am. Ad. Mgmt., Inc., v . Gen. Tel. Co. of Cal.*
    190 F.3d 1051 (9th Cir. 1999) ................................................................. 14

*Atl. Richfield Co. v. USA Petroleum Co.*
    495 U.S. 328 (1990)................................................................................ 14

*Blue Shield of Va. v. McCready*
    457 U.S. 465 (1982)................................................................................ 15

*California v. Steelcase, Inc.*
    792 F. Supp. 84 (C.D. Cal. 1992) ............................................................. 9

*Charles O. Finley & Co. v. Kuhn*
    569 F.2d 527 (7th Cir. 1978) ............................................................. 1, 3, 4

*City of Rohnert Park v. Harris*
    601 F.2d 1040 (9th Cir. 1979) ................................................................ 13

*Coscarart v. Major League Baseball*
    No. C 96-1426 FMS, 1996 WL 400988 (N.D. Cal. July 11, 1996)........................ 11

*DocMagic, Inc. v. Ellie Mae, Inc.*
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) .................................................... 9

*Federal Baseball Club v. Nat'l League*
    259 U.S. 200 (1922)......................................................................... 2, 3, 4, 5

*Flood v. Kuhn*
    407 U.S. 258 (1972).......................................................................... *passim*

*Flood v. Kuhn*
    316 F. Supp. 271, 280 (S.D.N.Y. 1970) ................................................... 6

*Fresno Motors, LLC v. Mercedes-Benz USA, LLC*
    852 F. Supp. 2d 1280 (E.D. Cal. 2012)................................................... 11, 12

*Hemlani v. Guerrero*
    902 F.2d 1412 (9th Cir. 1990) ............................................................... 10

*Henderson Broadcasting Corp. v. Houston Sports Ass'n, Inc.*
    541 F. Supp. 263 (S.D. Tex. 1982) .......................................................... 5

*Hutto v. Davis*
    454 U.S. 370 (1982)................................................................................. 7

*Jackson v. City of Inglewood*
    No. CV 07-05311 TJH(AJW), 2009 WL 699948 (C.D. Cal. Mar. 12, 2009) .......................... 12

*LiveUniverse, Inc. v. MySpace, Inc.*
    304 Fed. Appx. 554 (9th Cir. 2008)......................................................... 9

ii

781693

*Major League Baseball v. Butterworth*
   181 F. Supp. 2d 1316 (N.D. Fla. 2001)...................................................................... 4

*Major League Baseball v. Crist*
   331 F.3d 1177 (11th Cir. 2003) ........................................................... 3, 4, 6, 7

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*
   271 F.3d 825 (9th Cir. 2001) ........................................................... 10, 11, 12

*McCoy v. Major League Baseball*
   911 F. Supp. 454 (W.D. Wash. 1995)...................................................................... 4

*Morsani v. Major League Baseball*
   79 F. Supp. 2d 1331 (M.D. Fla. 1999) ........................................................... 4, 6

*Nat'l Credit Reporting Ass'n v. Experian Info Solutions, Inc.*
   No. C 04–01661 WHA, 2004 WL 1888769 (N.D. Cal. July 21, 2004)........................ 8

*New Orleans Pelicans Baseball, Inc. v. Nat'l Ass'n of Prof'l Baseball Leagues, Inc.*
   No. 93-253, 1994 WL 631144 (E.D. La. Mar. 1, 1994) ............................................. 4

*Newcal Indus. v. Ikon Office Solution*
   513 F.3d 1038 (9th Cir. 2008) .................................................................. 15

*Piazza v. Major League Baseball*
   831 F. Supp. 420 (E.D. Pa. 1993) ........................................................... 4, 5

*Portland Baseball Club, Inc. v. Kuhn*
   368 F. Supp. 1004 (D. Or. 1971), *aff'd* 491 F.2d 1101 (9th Cir. 1974).................. 3

*Postema v. Nat'l League of Prof'l Baseball Clubs*
   799 F. Supp. 1475 (S.D.N.Y. 1992)......................................................................... 5

*Prof'l Baseball Sch. & Clubs, Inc. v. Kuhn*
   693 F.2d 1085 (11th Cir. 1982) ......................................................................... 3

*Richards v. Lloyd's of London*
   135 F.3d 1289 (9th Cir. 1998) ......................................................................... 10

*Salerno v. Am. League of Prof'l Baseball Clubs*
   429 F.2d 1003 (2d Cir. 1970)........................................................................... 3

*Seminole Tribe v. Florida*
   517 U.S. 44 (1996)............................................................................................ 5

*State Oil Co. v. Khan*
   522 U.S. 3 (1997)............................................................................................... 2

*Toolson v. N.Y. Yankees*
   346 U.S. 356 (1953)................................................................................. *passim*

*Triple-A Baseball Club Assocs. v. Ne. Baseball, Inc.*
   832 F.2d 214 (1st Cir. 1987)............................................................................. 3

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*
   No. C 12-2582 CW, 2013 WL 368365 (N.D. Cal. Jan. 29, 2013)............................ 12

iii

781693

*United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp.*
  No. O7CV2172 AJB, 2012 WL 3861695 (S.D. Cal. Sept. 5, 2012) ...................................... 12

*United States v. Ritchie*
  342 F.3d 903 (9th Cir. 2003) ........................................................................................ 12

*Warwick v. Univ. of the Pac.*
  No. C 08-03904 CV, 2010 WL 2680817 (N.D. Cal. July 6, 2010) ........................................ 12

**State Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
  7 Cal. 4th 503 (1994) ............................................................................................ 10, 12

*Butterworth v. Nat'l League of Prof'l Baseball Clubs*
  644 So. 2d 1021 (Fla. 1994) ......................................................................................... 4

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
  20 Cal. 4th 163 (1999) ................................................................................................ 8

*Dunkin v. Boskey*
  82 Cal. App. 4th 171 (2000) ....................................................................................... 10

*Exxon Corp. v. Sup. Ct.*
  51 Cal. App. 4th 1672 (1997) ..................................................................................... 11

*Gemini Aluminum Corp. v. Cal. Custom Shapes*
  95 Cal. App. 4th 1249 (2002) ..................................................................................... 10

*Jackson v. Rogers & Wells*
  210 Cal. App. 3d 336 (1989) ...................................................................................... 10

*Korea Supply Co. v. Lockheed Martin Corp.*
  29 Cal 4th 1134 (2003) ........................................................................................... 9, 10

*Partee v. San Diego Chargers Football Co.*
  34 Cal. 3d 378 (1983) ................................................................................................. 7

*White v. Cox*
  17 Cal. App. 3d 824 (1971) ........................................................................................ 11

*Wisconsin v. Milwaukee Braves, Inc.*
  31 Wis. 2d 699 (1966) ................................................................................................ 7

*Woods v. Fox Broadcasting Sub., Inc.*
  129 Cal. App. 4th 344 (2005) ..................................................................................... 12

**Federal Statutes**

15 U.S.C. § 15(a) ...................................................................................................... 14

15 U.S.C. § 26 ........................................................................................................... 14

15 U.S.C. § 26b(b)(3) .................................................................................................. 6

iv

781693

**State Statutes**

Cal. Bus. & Prof. Code § 17204 ................................................................................. 9

**Treatises**

Restatement (Second) of Torts § 767............................................................................ 10

**Other Authorities**

Nathaniel Grow, "Defining the 'Business of Baseball,'" 44 U.C. Davis L. Rev. 557 (2010)......... 4

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787 RMW

781693

**INTRODUCTION**

Plaintiffs' Opposition brief has one main objective: to tell this Court to ignore binding Supreme Court and Ninth Circuit precedent. The Court should not do so. The Supreme Court has repeatedly held that it is "business of baseball" that is exempt from antitrust scrutiny, not just the reserve clause, and those holdings bar this lawsuit. Plaintiffs also distance themselves from their own Complaint. While Plaintiffs' Complaint bases their state law claims on antitrust violations, they now rely on a "delay" theory that was barely hinted at in the Complaint. But MLB owed no duty to Plaintiffs to move quickly or indeed to act at all. MLB has both a contractual and an economic right to carefully evaluate team relocation proposals, for the benefit of all of its member Clubs. Plaintiffs cannot support a legal claim for "unfair," "wrongful," or "disruptive" conduct merely by alleging that MLB moved more slowly than San José would have preferred. Finally, to establish their antitrust standing, Plaintiffs ask this Court to ignore the Complaint's damages theory in favor of an unpleaded theory that is premised upon an alleged diminution in the value of the land that they offered to the Athletics. Plaintiffs cannot show an antitrust injury since the "market" that Plaintiffs alleged in their Complaint was not "real estate development," but "the provision of men's major league baseball contests." In short, Plaintiffs have not asserted a single viable cause of action, and this Court should dismiss Plaintiffs' Complaint in its entirety, with prejudice.

**ARGUMENT**

**I.    BASEBALL'S ANTITRUST EXEMPTION BARS PLAINTIFFS' CLAIMS**

**A.    The Supreme Court and the circuit courts have repeatedly held that the antitrust exemption applies to the "business of baseball"**

"The Supreme Court has held three times that 'the business of baseball' is exempt from the federal antitrust laws." *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527, 541 (7th Cir. 1978) (citing *Flood v. Kuhn*, 407 U.S. 258, 284 (1972); *Toolson v. N.Y. Yankees*, 346 U.S. 356, 356–57 (1953); *Federal Baseball Club v. Nat'l League*, 259 U.S. 200, 208–09 (1922)). Plaintiffs nonetheless ask the Court to ignore these precedents and limit the exemption to a single aspect of the business of baseball—the reserve clause system. Accepting this invitation would constitute

1

legal error, because "it is [the Supreme] Court's prerogative alone to overrule one of its

precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).

Ignoring the Supreme Court's repeated holdings, Plaintiffs have mischaracterized

controlling cases to make it seem as though the Court has dismissed only reserve clause claims.

But the Supreme Court has repeatedly dismissed much broader antitrust claims.[1]  *Federal

Baseball* involved allegations that the American and National Leagues had "conspired to

monopolize the base ball business" and had "destroyed the Federal League by buying up some of

the constituent clubs and in one way or another inducing all those clubs except the plaintiff to

leave their League."  259 U.S. at 207.  Likewise, the plaintiff in *Toolson* explicitly alleged

violations of Sections 1 and 2 of the Sherman Act based not only on the reserve system, but also

on numerous aspects of league governance, including restrictions on franchise location.  *See*

Petitioner's Opening Brief, *Toolson*, 346 U.S. 356, 1953 WL 78316, at *5–10 (Sept. 16, 1953).[2]

Thus, despite the fact that Plaintiffs use the phrase "reserve clause" 23 times in their Opposition,

they are wrong when they assert that the Supreme Court has decided only "labor issues."  Opp. at

4:14.  In reality, the Supreme Court has consistently upheld the dismissal of whole complaints—

including non-labor claims—ruling that the "business of baseball" is not subject to antitrust

regulation.  *Toolson*, 346 U.S. at 357.

*Flood* reaffirms the broad scope of the exemption.  There, unlike in *Federal Baseball* or

*Toolson*, the plaintiffs raised claims involving only the reserve system.  Not surprisingly, the

Supreme Court thus mentioned the reserve system in certain passages of its opinion.  But the

*Flood* Court's holding was ***not*** limited to the reserve clause.  Instead, the Supreme Court decided

to preserve the full antitrust exemption based on principles of *stare decisis*, Congress's "positive

---

[1] Plaintiffs concede as much with regard to *Federal Baseball*.  In describing that case (although with some inaccuracies), Plaintiffs acknowledge that the complaint concerned more than a challenge to the reserve system and included issues related to league structure.  Opp. at 4:22–5:4.

[2] The plaintiff in *Toolson* claimed a litany of alleged restrictions that had nothing to do with the reserve clause, including restrictions on: territories for major and minor league clubs, i.e., "circuits"; changes to circuits (which required a majority vote of clubs); broadcast and telecast rights by geographic territory; club debt; competition near a club's home city; processes for adding expansion clubs; and club association with other leagues. Petitioner's Opening Brief, *supra*, 1953 WL 78316, at *5–10; *see also* Respondents' Brief, 1953 WL 78318, at *3–5 (Oct. 2, 1953); *Toolson*, 346 U.S. at 364 n.10 (Burton, J., dissenting).

781693

inaction," and baseball's fifty-years of reliance on the exemption.  *Flood*, 407 U.S. at 283–84.

Thus, the Supreme Court's reasoning and its ruling expressly applied to the "business of

baseball," just as *Federal Baseball* and *Toolson* did.  Given the rationale for the Court's

decision—that it must adhere to *Federal Baseball* and *Toolson*—it makes no sense to interpret the

*Flood* opinion as also implicitly narrowing those holdings.  In fact, the *Flood* Court adopted

**verbatim** the holding from *Toolson* that the "business of baseball" is not subject to antitrust

scrutiny.[3]

Every Circuit Court to address the scope of the exemption has held that it extends beyond

the reserve clause.  For example, the Seventh Circuit held that "[d]espite the two references in the

*Flood* case to the reserve system, it appears clear from the entire opinions in [*Federal Baseball*,

*Toolson*, and *Flood*], as well as from *Radovich*, that the Supreme Court intended to exempt the

business of baseball, not any particular facet of that business, from the federal antitrust laws."

*Finley*, 569 F.2d at 541.  Similarly, the Eleventh Circuit agreed with "the vast majority of lower

courts [that] have held that the exemption created by the U.S. Supreme Court extends more

broadly to the 'business of baseball.'"  *Major League Baseball v. Crist*, 331 F.3d 1177, 1181 n.10

(11th Cir. 2003).  Other circuit courts—including the Ninth Circuit—have similarly applied the

exemption to block antitrust claims that were either broader than, or had nothing to do with, the

reserve clause.[4]  In short, Plaintiffs ask this Court to reject not only the Supreme Court's clear

holdings, but also binding circuit law.

---

[3] "Accordingly, we adhere once again to *Federal Baseball* and *Toolson* and to their application to professional baseball. . . .  We repeat for this case what was said in *Toolson*: 'Without re-examination of the underlying issues, the (judgment) below (is) affirmed on the authority of [*Federal Baseball*], so far as that decision determines that Congress had no intention of including the business of baseball within the scope of the federal antitrust laws.'"  *Flood*, 407 U.S. at 284–85.

[4] *See Portland Baseball Club, Inc. v. Kuhn*, 368 F. Supp. 1004, 1008 (D. Or. 1971), *aff'd*, 491 F.2d 1101 (9th Cir. 1974) (exempting dispute related to club location); *Prof'l Baseball Sch. & Clubs, Inc. v. Kuhn*, 693 F.2d 1085, 1085-86 (11th Cir. 1982) (exempting claims related to minor league rules); *Salerno v. Am. League of Prof'l Baseball Clubs*, 429 F.2d 1003, 1005 (2d Cir. 1970) (exempting employment claims brought by MLB umpires because "professional baseball is not subject to the antitrust laws"); *cf. Triple-A Baseball Club Assocs. v. Ne. Baseball, Inc.*, 832 F.2d 214, 216 n.1 (1st Cir. 1987) (noting that "professional baseball has had a long-standing exemption from the antitrust laws" that applies to the expansion of clubs into new territories).

3

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787 RMW

781693

**B.      Plaintiffs ask this Court to reject established Supreme Court and circuit law and follow a solitary, and widely criticized, federal district court opinion**

Plaintiffs would like this Court to ignore these precedents—including binding authority from the Ninth Circuit and the Supreme Court—and instead follow a much-criticized federal district court opinion.  *See* Opp. at 4, 6–7 (citing *Piazza v. Major League Baseball*, 831 F. Supp. 420, 435-36 (E.D. Pa. 1993)).  Plaintiffs argue that *Piazza* reflects the "most recent district court analysis of the 'exemption.'"  Opp. at 4:3.  *Not true*.  Multiple district courts have considered *Piazza*'s reasoning, and all have rejected it.[5]  And, as noted above, circuit courts, both before and after *Piazza*, have rejected the same arguments.  *Finley*, 569 F.2d at 541; *Crist*, 331 F.3d at 1181 n.10.[6]

These courts have rejected the *Piazza* opinion because it ignores the Supreme Court's consistent holding that the "business of baseball" is exempt from antitrust scrutiny.  Fundamentally, the *Piazza* court erred because it inappropriately believed that the Supreme Court's straightforward holdings were somehow undermined by the Court's shift in reasoning.  In 1922, in *Federal Baseball*, the Supreme Court held that the business of baseball was exempt from federal antitrust scrutiny because it was not engaged in interstate commerce.  259 U.S. at 208–09.  Thirty years later, in *Toolson*, the Court reaffirmed the exemption based on a different foundation: congressional inaction after *Federal Baseball* and the inequities of retroactively subjecting professional baseball to antitrust regulation.  The Court wrote that petitioners had asked it to overrule *Federal Baseball* and remove the antitrust exemption "with retrospective effect."  *Toolson*, 346 U.S. at 357.  But baseball had "been left for thirty years to develop, on the understanding that it was not subject to existing antitrust legislation."  *Id.*  And because Congress had not acted, the Supreme Court once again concluded that "Congress had no intention of

---

[5] *See Major League Baseball v. Butterworth*, 181 F. Supp. 2d 1316, 1324 (N.D. Fla. 2001); *McCoy v. Major League Baseball*, 911 F. Supp. 454, 457 (W.D. Wash. 1995); *New Orleans Pelicans Baseball, Inc. v. Nat'l Ass'n of Prof'l Baseball Leagues, Inc.*, No. 93-253, 1994 WL 631144, at *9 (E.D. La. Mar. 1, 1994); *cf. Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331, 1335 n.12 (M.D. Fla. 1999); *see also* Nathaniel Grow, "Defining the 'Business of Baseball,'" 44 U.C. Davis L. Rev. 557, 591–600 (2010) (describing errors committed in *Piazza*).

[6] Even the Florida Supreme Court, the **only** court to adopt the reasoning of *Piazza*, acknowledged that "*Piazza* is against the great weight of federal cases regarding the scope of the exemption." *Butterworth v. Nat'l League of Prof'l Baseball Clubs*, 644 So. 2d 1021, 1023–25 (Fla. 1994).

4

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787 RMW

781693

1   including the business of baseball within the scope of the federal antitrust laws." *Id.* So, while

2   the *Toolson* Court used different reasoning, it still upheld the broad antitrust exemption of

3   *Federal Baseball*.  In 1972, the *Flood* Court actually criticized the original interstate commerce

4   theory.  407 U.S. at 282.  At the same time, the Supreme Court reaffirmed *Toolson*'s reasoning:

5   Congress had declined the Supreme Court's invitation to regulate baseball and it would be

6   inequitable for the Supreme Court to reverse established precedent in light of Congress's

7   "positive inaction."  *Flood*, 407 U.S. at 283–84.  Thus, over fifty years, the Supreme Court's

8   reasoning evolved, but its holding remained rock solid: the "business of baseball" is exempt from

9   antitrust scrutiny.

10          The *Piazza* court erroneously thought that these Supreme Court cases had raised only

11   reserve clause issues.  831 F. Supp. at 435–36.  As explained above, these cases actually involved

12   much broader claims of monopolization and restraint of competition.  Additionally, the *Piazza*

13   court applied a distorted version of "precedent."  It apparently thought that it was only bound to

14   apply the "result" of the earlier Supreme Court opinions (and it incorrectly believed that the

15   "result" of those cases was dismissal of only reserve clause claims).  *Id.* at 437–38.  But as the

16   Supreme Court has repeatedly held, its opinions bind lower courts not simply to the Supreme

17   Court's "results," but also to the Supreme Court's reasoning and rules.  *See, e.g., Seminole Tribe*

18   *v. Florida*, 517 U.S. 44, 67 (1996).  This Court should reject *Piazza*'s impermissible departure

19   from controlling Supreme Court precedent.  Instead, this Court should recognize that the antitrust

20   exemption bars all of Plaintiffs' claims.[7]

21          **C.      Congress expressly preserved the antitrust exemption when it enacted the**
22          **Curt Flood Act**

23          Plaintiffs double down on their erroneous interpretation that the antitrust exemption is

24   limited to the reserve clause by asserting that Congress "overturned the *Federal Baseball* line of

---

[7] Plaintiffs also cite *Henderson Broadcasting Corp. v. Houston Sports Ass'n, Inc.*, 541 F. Supp. 263 (S.D. Tex. 1982) and *Postema v. Nat'l League of Prof'l Baseball Clubs*, 799 F. Supp. 1475 (S.D.N.Y. 1992).  Those decisions actually support MLB's position because they both acknowledge that the antitrust exemption is broader than the reserve clause, and that the exemption covers matters of "league structure."  *Henderson*, 541 F. Supp. at 269–70; *Postema*, 799 F. Supp. at 1488–89.  Club location and relocation clearly concern "league structure" and fall squarely within the scope of the antitrust exemption.  *See Postema*, 799 F. Supp. at 1488.

781693

cases" in 1998 by enacting the Curt Flood Act.  Opp. at 8:11–12, 9:12–13.  The text of the Act itself contradicts Plaintiffs' claim.  The Act eliminated the exemption as it related to the reserve clause, and then expressly declared that it "does ***not*** create, permit or imply a cause of action . . . under the antitrust laws [for] any conduct, acts, practices, or agreements of persons . . . in **the business of organized professional baseball** relating to or affecting **franchise expansion, location or relocation**. . . , [and] **the relationship between the Office of the Commissioner and franchise owners**. . . ."  15 U.S.C. § 26b(b)(3) (emphasis added).  If Congress understood, as Plaintiffs assert, that the antitrust exemption was limited to the reserve clause, then Congress would have simply eliminated the exemption.  To the contrary, "Congress's preservation of the broadest aspects of the antitrust exemption," including "explicitly preserv[ing] the exemption for all matters 'relating to or affecting franchise expansion, location or relocation'" confirms that Congress did not believe the exemption was limited to the reserve clause.[8]  *Morsani*, 79 F. Supp. 2d at 1335 n.12.  Tellingly, Plaintiffs cite no decisions in support of their statutory interpretation.  Under long-standing and binding law, the business of baseball is exempt from antitrust regulation, and Plaintiffs' antitrust claims should be dismissed.

> **D.**   **Plaintiffs' state law claims are preempted by the Supremacy Clause and precluded by the Commerce Clause**

In its Motion to Dismiss, MLB offered two distinct reasons why the antitrust exemption bars Plaintiffs' state law claims.  ***First***, the Supremacy Clause of the Constitution prohibits states from imposing regulation that directly conflicts with federal policy.  In response, Plaintiffs declare "that courts are reluctant to infer preemption."  Opp. at 10:11–12.  But no inference is necessary here because the Supreme Court has specifically held that applying "state antitrust regulation would conflict with federal policy and . . . national 'uniformity (is required) in any regulation of baseball.'"  *Flood*, 407 U.S. at 284 (quoting *Flood v. Kuhn*, 316 F. Supp. 271, 280

---

[8] In a last-ditch effort to distract the Court from the statutory language, Plaintiffs point to a House Subcommittee Report from 1952, which was 46 years before Congress enacted the Curt Flood Act, and before the Supreme Court reaffirmed that the exemption applies to the "business of baseball" in *Toolson* (1953) and *Flood* (1972).  Opp. at 8:22–9:2.  By contrast, the 1997 Senate Report that recommended passage of the Curt Flood Act described it as "retain[ing] **the antitrust exemption for** . . . **franchise location**."  RFJN Ex. C at 6 (emphasis added).

6

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787 RMW

781693

(S.D.N.Y. 1970)).  As the Eleventh Circuit held, "federal law establishes a universal exemption in the name of uniformity," and that exemption bars state antitrust claims.  *Crist*, 331 F.3d at 1186. Even if there is "tension" between the preemption holding in *Flood* and later-developed doctrine, the Supreme Court's holding is binding on all lower courts.  *Id.* at 1185.  "[P]recedent of [the Supreme] Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."  *Hutto v. Davis*, 454 U.S. 370, 375 (1982).

**Second**, the Commerce Clause bars plaintiffs from using state law to conduct antitrust regulation of baseball.  Plaintiffs do not even try to deny this.  As the Supreme Court held in *Flood*, a plaintiff cannot apply state antitrust law to MLB without creating an undue burden on interstate commerce.  *See* 407 U.S. at 284–85.  And the California Supreme Court has explained that professional sports leagues like "baseball" need a "nationally uniform set of rules governing the league structure," to avoid "[f]ragmentation . . . on the basis of state lines."  *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378, 384–85 (1983); *see also Wisconsin v. Milwaukee Braves, Inc.*, 31 Wis. 2d 699, 726–32 (1966).  Whether Plaintiffs invoke the Cartwright Act, the UCL, or something else, Plaintiffs' claims all attempt ***state*** antitrust regulation of a ***national*** sport and therefore they necessarily create an unconstitutional burden.  Both the United States and California Supreme Courts bar such actions.  Under both the Supremacy and Commerce Clause doctrines—only the former of which Plaintiffs challenge—Plaintiffs' state antitrust claims should be dismissed.

## II.   PLAINTIFFS' UNFAIR COMPETITION AND TORTIOUS INTERFERENCE CLAIMS MUST BE DISMISSED

In response to MLB's argument for dismissal of Plaintiffs' state law claims, Plaintiffs have virtually abandoned the theories and facts alleged in their Complaint.  Now Plaintiffs allege that MLB somehow unfairly delayed resolving the Athletics' relocation request (which MLB denies) and that this delay is (1) "unfair" for its UCL claim, (2) "independently wrongful" for its interference with prospective economic advantage claim, and (3) "disruptive" for its tortious interference with contract claim.  Plaintiffs' new theory has hardly any foundation in the

7

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787 RMW

781693

Complaint,[9] and most importantly, cannot support their claims as a matter of law.[10]

### A. Plaintiffs' Unfair Competition claim fails because "delay" is not "unfair" under § 17200

In their Complaint, Plaintiffs alleged that Defendants violated California's Unfair Competition Law by violating the Cartwright Act. Compl. ¶ 170. Plaintiffs do not deny that this claim fails if this Court recognizes either the Supreme Court's rulings on the antitrust exemption or the California Supreme Court's ruling that professional sports leagues are exempt from the Cartwright Act. Instead, Plaintiffs now argue that they also pleaded "unfair" competition based on MLB's "intentional delay tactics." Opp. at 13:1. But, even if pleaded, this purported "delay" does not establish a claim under § 17200.

As Plaintiffs acknowledge, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Plaintiffs' new theory is that MLB "delayed" making a decision that it had every legal right to make. Plaintiffs do not, and could not, allege that any purported delay in MLB's relocation decision violated any public policy or legal duty owed to Plaintiffs—much less the letter or spirit of the antitrust laws. Unsurprisingly, Plaintiffs **do not cite a single decision** to support this theory.

Moreover, when a plaintiff alleges that conduct is "unlawful," but a court determines that the conduct is *not* unlawful, California law bars the plaintiff from converting those allegations

---

[9] The word "delay" appears only twice in the Complaint. In ¶ 73, Plaintiffs allege that Mayor Reed *voluntarily* "delayed" a referendum (to approve the sale of land and development of a stadium for the Athletics) because the Commissioner requested that his "Relocation Committee" should be permitted to make its determination first. And then in ¶ 162, Plaintiffs plead a conclusion that MLB "intentionally engaged in tactics delaying any decision of the MLB Relocation Committee." But Plaintiffs do not explain how this delay interfered with the Option Agreement, which requires no further performance. MTD at 16:14–17:17; below at 12:17–13:10.

[10] Plaintiffs misunderstand Defendants' citation to *Nat'l Credit Reporting Ass'n v. Experian Info Solutions, Inc.*, No. C 04–01661 WHA, 2004 WL 1888769, at *3 (N.D. Cal. July 21, 2004). Defendants cited that case to illustrate that this Court holds "arising under" jurisdiction over Plaintiffs' state claims because those claims depend on a significant question of federal law. Plaintiffs do not dispute this point.

8

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787 RMW

781693

into an "unfairness" claim.  As the Ninth Circuit explained, "[w]here . . . the same conduct is alleged to support both a plaintiff's federal antitrust claims and state law unfair competition claim, a finding that the conduct is not an antitrust violation precludes a finding of unfair competition." *LiveUniverse, Inc. v. MySpace, Inc.*, 304 Fed. Appx. 554, 557-558 (9th Cir. 2008) (citing *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1270 (C.D. Cal. 2000); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001)); *see also DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1146–47 (N.D. Cal. 2010).  In other words, Plaintiffs may not resurrect losing claims by repleading them under an "unfairness" theory.  Therefore, Plaintiffs' UCL claim must be dismissed.[11]

### B.   Plaintiffs' tortious interference claims fail as a matter of law

#### 1.   Plaintiffs have pled no independently wrongful act to support their claim for tortious interference with prospective economic advantage

Plaintiffs do not deny that the California Supreme Court requires plaintiffs to plead an "independently wrongful" act in order to make a claim for interference with prospective economic advantage.  Instead, Plaintiffs argue that "independently wrongful" can be broadly defined because the California Supreme Court declined to define the term in 1995.  Opp. at 15:3–11.  But in 2003, the California Supreme Court *did* define "independently wrongful" as "illegal" or "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal 4th 1134, 1159 (2003).  Plaintiffs cannot rely on alleged antitrust violations because MLB is exempt from antitrust scrutiny.  And Plaintiffs cannot rely on their new "intentional delay" theory because "delay" is not "proscribed by [a] . . . determinable legal standard."  *Id.*

---

[11] Plaintiffs misconstrue § 17204 and cannot prove standing under the UCL.  First, as Plaintiffs concede, they are bringing this action solely in their role as owners of real property and not on behalf of injured San José citizens.  Opp. at 19:23–20:1.  Second, a city attorney is authorized by statute to bring public prosecutor actions on behalf of "the people of the State of California," *not* on behalf of the people of San José, whose interests, as Plaintiffs allege, actually *compete* with those of other state citizens, like the people of Oakland.  Compl. ¶ 6.  Cal. Bus. & Prof. Code § 17204; *see also California v. Steelcase, Inc.*, 792 F. Supp. 84, 85-86 (C.D. Cal. 1992) (concluding that the UCL "expressly authorizes this action to be prosecuted in the name of the People," and "[t]he People are the same party as the State of California"), *overruled on other grounds by California v. Dynergy, Inc.*, 375 F.3d 831, 849 (9th Cir. 2004).

9

781693

Plaintiffs flatly misstate the law when they claim that they can avoid dismissal merely by claiming "'wrongful' economic pressure" or a violation of "business ethics and customs." Opp. at 15:14–17 (citing Rest. (2d) of Torts § 767). The California Supreme Court explicitly rejected the view, held by the Restatement of Torts, which only requires a plaintiff "to plead that the defendant's interference was improper." *Korea Supply*, 29 Cal 4th at 1160. Plaintiffs cannot survive a motion to dismiss simply by arguing that MLB was "'unethical' or violated 'industry standards.'" *Gemini Aluminum Corp. v. Cal. Custom Shapes*, 95 Cal. App. 4th 1249, 1259 (2002). In short, Plaintiffs have pleaded no independently wrongful act and this Court should dismiss Plaintiffs' claim for tortious interference with prospective economic advantage.

### 2.  Defendants are not strangers to the economic relationship between the Athletics and Plaintiffs and thus cannot be liable for interference

MLB's Motion to Dismiss explained that both of Plaintiffs' tortious interference claims must be dismissed because MLB is not a "stranger" to the economic relationship between San José and the Athletics—the relationship that Defendants allegedly interfered with.[12] MTD at 14–16. But Plaintiffs argue that MLB's contractual and economic relationship with the Athletics is irrelevant, because MLB is not a party to the Option Agreement and California law immunizes only contract parties from tortious interference. Opp. at 15:21. Plaintiffs misstate the law.

The California Supreme Court allows plaintiffs to bring claims for economic interference torts only if the defendants are "***outsiders*** who have no legitimate social or economic interest in the contractual relationship." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) (emphasis in original). The Ninth Circuit agrees, holding that "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party ***stranger*** to that relationship." *Marin Tug & Barge, Inc. v.*

---

[12] As Defendants' opening brief explained (MTD at 16 n.17), the Option Agreement is void as a matter of law. Plaintiffs do not deny the legal invalidity of the Option Agreement. Instead, they claim that considering the contract's invalidity is "improper at the motion to dismiss stage." Opp. at 18 n.12. But the validity of the Option Agreement is a question of law that can be decided on a motion to dismiss. *See, e.g., Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998); *Hemlani v. Guerrero*, 902 F.2d 1412, 1415 (9th Cir. 1990); *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 184 (2000) (citing *Bovard v. Am. Horse Enters., Inc.*, 201 Cal. App. 3d 832, 838 (1988)); *Jackson v. Rogers & Wells*, 210 Cal. App. 3d 336, 349-50 (1989). Because the Option Agreement is void as a matter of law, the Court should reject Plaintiffs' claims that rely on it.

781693

*Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001) (emphasis in original).

This "not a stranger" principle is grounded in sound policy and economic common sense: individuals and entities with ongoing relationships need to be able to exercise their rights arising from those relationships even if they affect contracts with third parties. A defendant therefore cannot be liable for interference with a third party business relationship if the defendant has an "inextricable economic interest" or a "preexisting contractual right to interfere." *Fresno Motors, LLC v. Mercedes-Benz USA, LLC*, 852 F. Supp. 2d 1280, 1299 (E.D. Cal. 2012). So, if Exxon's franchise agreement states that franchisee gas stations must buy gasoline from Exxon, then Exxon is privileged to interfere with a gas station's attempt to buy gasoline from a third party. *Exxon Corp. v. Sup. Ct.*, 51 Cal. App. 4th 1672, 1688 (1997). Likewise, if Shell has conflicts with a particular refueling company, it may refuse to load oil onto that company's boats, even if this would prevent the company from fulfilling its contracts to third parties. *Marin Tug*, 271 F.3d at 834. And if Mercedes Benz has a contractual right of first refusal—which permits it to "interfere" with the purchase of one of its dealers—then Mercedes Benz is privileged to exercise that right. *Fresno Motors*, 852 F. Supp. 2d at 1299.

Plaintiffs do not seriously question MLB's inextricable interest in the affairs of its Clubs, including the Athletics, or its contractual right to participate in those affairs.[13] In fact, Plaintiffs' Complaint alleges that MLB holds a contractual right to disapprove of relocation proposals (*see* ML Const. Art. V § 2(b)(3); Art. VIII § 8), and that MLB shares substantial local and national revenue across all thirty Clubs, which materially affects the financial interests of all Clubs. *See* Compl. ¶¶ 49, 96, 103, 108; Economic Impact Analysis at Appendix II-3 (Compl. Ex. 1). The Athletics also expressly agreed to be bound by the Major League Constitution and rules

---

[13] Plaintiffs actually argue that as an unincorporated association of member clubs, MLB "is not a separate entity and there is no allegation that MLB has any vested economic interest in the Athletics." Opp. at 16:6–9. Of course, Plaintiffs chose MLB as their primary defendant, and unincorporated associations are "entitled to general recognition as separate legal entities." *See White v. Cox*, 17 Cal. App. 3d 824, 828 (1971); *see also Coscarart v. Major League Baseball*, No. C 96-1426 FMS, 1996 WL 400988, at *2–3, *3 n.2 (N.D. Cal. July 11, 1996). Plaintiffs also try to manufacture a factual dispute over MLB's contractual rights by arguing that the Constitution that they submitted has expired. Opp. at 9:9–12. The fact that Plaintiffs did not have a copy of the current Major League Constitution does not mean that one does not exist. Indeed, MLB's counsel provided the current version to Plaintiffs' counsel upon request. MLB now submits a copy for the Court as Keker Decl., Ex. A.

11

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787 RMW

781693

promulgated thereunder.  *See* ML Const. Art. I, Art. IV, Art. XI § 3.  In fact, Plaintiffs' own "expert" stated that "because the success of a league depends on the financial success of each team, ***leagues have a valid interest*** in assuring that each team will enjoy popularity in its home territory to be financially viable."[14]  Noll Decl. ¶ 12 (emphasis added).

Plaintiffs are therefore forced to rely on *Woods v. Fox Broadcasting Sub., Inc.,* 129 Cal. App. 4th 344, 352 (2005), which deviated from the long-established rule that claims for tortious interference with contract may be brought ***only if*** defendants are "***outsiders*** who have no legitimate social or economic interest in the contractual relationship."  *Applied Equip.*, 7 Cal. 4th at 514 (emphasis in original).  Plaintiffs argue that the Court should follow *Woods* over the "not a stranger" rule recognized by the California Supreme Court in *Applied Equipment* and the Ninth Circuit in *Marin Tug*.  Instead, this Court should join the district courts that have rejected *Woods* because it incorrectly dismisses key California law as mere dicta.  For example, Judge Carney conducted a thorough analysis of both *Woods* and a Northern District opinion that followed *Woods* before rejecting them as inconsistent with decisions of the California Supreme Court. *Fresno Motors*, 852 F. Supp. 2d at 1300.  Other district courts have also declined to adopt *Woods*.[15]  This Court should do so as well and dismiss Plaintiffs' tortious interference claims.

### 3.    Plaintiffs claim for interference with contract fails because the Option Agreement was not breached or disrupted

As explained in the Motion to Dismiss, Plaintiffs cannot show that the Option Agreement was "breached" or that performance was "disrupted" because the Athletics have no obligation to exercise the option.  In response, Plaintiffs now feebly claim that the Athletics have an obligation

---

[14] Plaintiffs' submission of Dr. Noll's declaration is improper and Defendants hereby move to strike it.  The Court may not consider Dr. Noll's opinions offered in support of Plaintiffs' arguments.  *See United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).  Because Plaintiffs proffered the declaration, however, its statements can be held against them as admissions even if they otherwise are inadmissible.  *Jackson v. City of Inglewood*, No. CV 07-05311 TJH(AJW), 2009 WL 699948, at *2 n.4 (C.D. Cal. Mar. 12, 2009) (treating declaration filed in opposition to motion to dismiss as judicial admissions) (citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988)).

[15] *See Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2013 WL 368 365, at *12–13 (N.D. Cal. Jan. 29, 2013); *United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp.*, No. O7CV2172 AJB, 2012 WL 3861695, at *7 (S.D. Cal. Sept. 5, 2012); *Warwick v. Univ. of the Pac.*, No. C 08-03904 CV, 2010 WL 2680817, at *7 (N.D. Cal. July 6, 2010).

781693

to negotiate a purchase agreement even if they do not exercise the option.  Opp. at 18:16–18.  The text of the Option Agreement contradicts Plaintiffs' unpleaded theory, because the agreement gives the Athletics complete discretion to decline the option.  Opt. Agmt. § 3.  Plaintiffs misconstrue the provision of the agreement labeled "OPTION CONDITIONS . . . Purchase and Sale Agreement."  Opt. Agmt. § 4(B).  As the heading states, this is an "OPTION CONDITION" related to the purchase and sale agreement—an agreement that would be executed only if the option is exercised.  The "condition" is ***not*** an independent material obligation.  Strikingly, Plaintiffs do not allege that the city provided the Athletics with a draft purchase agreement (as this provision requires), that the Athletics refused to negotiate it, or that Defendants caused that refusal.  The option is just that—an option—and the Athletics have no obligation to exercise it.

## III.     PLAINTIFFS DO NOT HAVE CLAYTON ACT OR ANTITRUST STANDING

Effectively conceding that it does not support standing, Plaintiffs abandon their ripple effects damages theory, the central damage theory in the Complaint, for a new, unpleaded theory based solely on the purported diminution in value of the land subject to the Option Agreement.  Plaintiffs also abandon the allegation that they are bringing their antitrust claims in *parens patriae*, on behalf of the citizens of San José (Compl. ¶¶ 24–25), and now assert that "Plaintiffs here sue in their proprietary capacity for direct injury to their property."[16]  Opp. at 19:23–20:1.  Like the allegations in the Complaint, Plaintiffs' newly asserted injury fails to meet the requirements for Clayton Act standing and antitrust standing.[17]

Plaintiffs now assert that they have standing because they were injured by a purported loss in the value of the Diridon land because it is not being sold to the Athletics under the Option Agreement.  Opp. at 19:15–19, 20:18–21.  Plaintiffs' theory gets them nowhere.  Plaintiffs bargained for and entered into an option agreement.  They are not entitled to the exercise of that option.  *See* MTD at 17.  And, even if Plaintiffs were owed something further under that

---

[16] Confusingly, Plaintiffs still assert, without argument, that they "also have standing to vindicate the interests of their constituents, the citizens of San José…," citing *Rohnert Park*.  Opp. at 21 n. 15.  But the *Rohnert Park* court explicitly held that the city "cannot assert the interests of its citizens."  *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1044–45 (9th Cir. 1979).

[17] Of the Complaint allegations cited in support of their new theory, only ¶ 136 touches on antitrust injury, and there Plaintiffs allege only that "Defendants are interfering with and preventing the operation of the contract between the Athletics and San José."

agreement, they would have suffered no compensable damages as a result of their failure to complete the below-market value sale of the property identified in the contract. *See* MTD 18 n.19. Plaintiffs have not alleged, or even argued, that they cannot sell the land for at least as much as was agreed to in the Option Agreement, and have therefore identified no cognizable injury to establish standing.

Even if the claimed diminution in value actually constituted injury, Plaintiffs would still lack Clayton Act standing because the purported harm is not the result of any antitrust violation.[18] *See* 15 U.S.C. § 15(a) (injury must be "by reason of anything forbidden in the antitrust laws"); 15 U.S.C. § 26 (same). Nor does their purported injury constitute "antitrust injury"—that is, a loss stemming from a competition-reducing effect of the alleged violation. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). Plaintiffs have made no attempt to connect their new theory—that the Defendants' purported interference diminished the value of the Diridon land—to any alleged harm to competition. The value of the land is not dependent on the construction of a baseball stadium—in fact, the land's value for purposes of the interference theory is the below-market option price set in the Option Agreement.

Plaintiffs also lack antitrust standing because their purported injury is too attenuated from any alleged conduct by Defendants. Plaintiffs are not participants in, nor have they suffered injury in, the relevant market. MTD at 21–23. "Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained. Parties whose injuries . . . are experienced in another market do not suffer antitrust injury." *Am. Ad. Mgmt., Inc., v . Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999). Plaintiffs first try to argue around these deficiencies by stretching the relevant market definition to "includ[e] the sale of land for the construction of a major league men's professional baseball stadium." Opp. at 23:4–6 (citing Compl. ¶ 32). But the only relevant market identified in the Complaint is the market for "the provision of major league men's professional baseball contests." Compl. ¶ 6, *see also* ¶¶ 7, 32, 33, 34, 43. Stretching the market for "baseball contests" to include "the sale of land" is absurd.

---

[18] Plaintiffs wrongly contend that Defendants do not challenge "prong two" of the Clayton Act standing requirements, that is, whether there was an antitrust violation. Opp. at 20:3–4. Defendants' Motion to Dismiss is based on the absence of an antitrust violation. MTD at 5–11.

781693

"The outer boundaries of a product market are determined by the reasonable interchangeability of use . . . between the product itself and substitutes for it." *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008) (internal quotation omitted). The provision of major league professional baseball contests and the sale of real estate are *not* reasonably interchangeable. Plaintiffs have suffered no antitrust injury in any cognizable relevant market.

Plaintiffs' final argument, that their purported injuries are "inextricably intertwined" with injuries purportedly sustained by the Athletics, fares no better. Under this narrow doctrine, injuries may be "inextricably intertwined" with those of a market participant only when they are the "very means by which [a defendant] sought to achieve its illegal ends." *Blue Shield of Va. v. McCready*, 457 U.S. 465, 479 (1982) (holding that plaintiffs had standing because their harm "was a necessary step" in, and an "integral" aspect of the defendants' conspiracy). Plaintiffs do not allege that preventing them from entering into the land sale agreement was necessary, or the very means used, to keep the Athletics from relocating. For all these reasons, Plaintiffs lack standing to bring their antitrust claims.

## CONCLUSION

For these reasons, and those set forth in Defendants' Motion to Dismiss, Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

Dated:  September 20, 2013 **KEKER & VAN NEST LLP**

By:  */s/ John Keker*
JOHN KEKER
PAULA L. BLIZZARD
THOMAS E. GORMAN

**PROSKAUER ROSE LLP**
BRADLEY I. RUSKIN
SCOTT P. COOPER
SARAH KROLL-ROSENBAUM
JENNIFER L. ROCHE
SHAWN S. LEDINGHAM JR.

Attorneys for Defendants
OFFICE OF THE COMMISSIONER OF
BASEBALL an unincorporated association
doing business as Major League Baseball;
and ALLAN HUBER "BUD" SELIG

15

Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6)
Case No. 13-CV-02787 RMW

781693