KEKER & VAN NEST LLP
JOHN KEKER - # 49092
  jkeker@kvn.com
PAULA L. BLIZZARD - # 207920
  pblizzard@kvn.com
THOMAS E. GORMAN - # 279409
  tgorman@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

PROSKAUER ROSE LLP
BRADLEY I. RUSKIN (*pro hac vice*)
  bruskin@proskauer.com
Eleven Times Square
New York, NY 10036
Telephone:  212-969-3000
Facsimile:  212-969-2900

PROSKAUER ROSE LLP
SCOTT P. COOPER (SBN 96905)
  scooper@proskauer.com
SARAH KROLL-ROSENBAUM(SBN 272358)
  skroll-rosenbaum@proskauer.com
JENNIFER L. ROCHE (SBN 254538)
  jroche@proskauer.com
SHAWN S. LEDINGHAM, JR. (SBN 275268)
  sledingham@proskauer.com
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:  310-557-2900
Facsimile:  310-557-2193

Attorneys for Defendants
OFFICE OF THE COMMISSIONER OF BASEBALL,
an unincorporated association doing business as Major League
Baseball; and ALLAN HUBER "BUD" SELIG

COTCHETT, PITRE & MCCARTHY, LLP
JOSEPH W. COTCHETT (SBN 36324)
  jcotchett@cpmlegal.com
PHILIP L. GREGORY (SBN 95217)
  pgregory@cpmlegal.com
FRANK C. DAMRELL, JR (SBN 37126)
  fdamrell@cpmlegal.com
STEVEN N. WILLIAMS (SBN 175489)
  swilliams@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
  amurphy@cpmlegal.com
CAMILO ARTIGA-PURCELL (SBN 273229)
  cartigapurcell@cpmlegal.com
840 Malcolm Road
Burlingame, California  94010
Telephone:  (650) 697-6000
Facsimile:  (650) 692-3606

OFFICE OF THE CITY ATTORNEY
RICHARD DOYLE (SBN 88625)
         CITY ATTORNEY
NORA FRIMANN (SBN 93249)
200 East Santa Clara Street, 16th Floor
San Jose, CA 95113
Telephone: 408-535-1900
Facsimile: 212-998-3131

Attorneys for Plaintiffs
THE CITY OF SAN JOSE; THE CITY OF
JOSE, AS SUCCESSOR AGENCY TO THE
REDEVELOPMENT AGENCY OF THE
CITY OF SAN JOSE; and THE SAN JOSE
DIRIDON DEVELOPMENT AUTHORITY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA  /  SAN JOSE DIVISION

| | |
|---|---|
| CITY OF SAN JOSÉ; CITY OF SAN JOSÉ AS SUCCESSOR AGENCY TO THE REDEVELOPMENT AGENCY OF THE CITY OF SAN JOSÉ; and THE SAN JOSÉ DIRIDON DEVELOPMENT AUTHORITY,<br><br>Plaintiffs,<br>v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as Major League Baseball; and ALLAN HUBER "BUD" SELIG,<br><br>Defendants. | Case No. 13-CV-02787-RMW<br><br>**JOINT CASE MANAGEMENT STATEMENT& [PROPOSED] ORDER**<br><br>Judge:    Hon. Ronald M. Whyte<br><br>Date Filed: June 18, 2013<br><br>Trial Date:  None set |

The parties to the above-entitled action jointly submit this Joint Case Management Statement pursuant to the Standing Order for All Judges of the Northern District of California dated July 1, 2011 and Civil Local Rule 16-9.

### 1. Jurisdiction & Service

All Defendants have been served. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

### 2. Facts

<u>Plaintiffs</u>: This action arises from the conspiracy by Major League Baseball ("MLB") to control the location and relocation of major league professional baseball clubs under the guise of a broad "antitrust exemption" applied to every aspect of the business of baseball. Specifically, MLB has prevented the Athletics Baseball Club from moving to and building a stadium in San José. Defendants also violated California law and interfered with a contract between Plaintiffs and the Athletics Club.

1. There are 30 MLB Clubs, all competing in regularly scheduled games. Baseball is big business with combined 2012 annual revenues of **$7.5 billion**. Baseball may have started as a local affair, but modern baseball squarely involves interstate commerce. MLB Clubs ply their wares nationwide; games are broadcast throughout the country on satellite TV and radio, as well as cable channels; and MLB Clubs have fan bases that span from coast to coast.

2. Plaintiffs are the CITY OF SAN JOSÉ, both in its capacity as a California municipal corporation and as the Successor Agency to the Redevelopment Agency of the City of San José, and SAN JOSÉ DIRIDON DEVELOPMENT AUTHORITY, a joint powers association comprised of the City of San José and the former Redevelopment Agency. Defendants are THE OFFICE OF THE COMMISSIONER OF BASEBALL d/b/a MAJOR LEAGUE BASEBALL ("MLB"), an unincorporated association of the thirty Major League Baseball Clubs (the "Clubs"), and ALLAN HUBER "BUD" SELIG, the Commissioner of Major League Baseball.

3. At issue in this case is Defendants' unlawful restraint of the move by the Athletics from Oakland to San José. Through the alleged MLB Constitution, MLB and the Clubs have adopted agreements governing all aspects of major league men's professional baseball. The rules

in the MLB Constitution are vertical agreements between MLB and the Clubs and horizontal agreements between the Clubs. Each Club that is a member of MLB is a separate and independent business with a separate and independent owner, exercising significant autonomy in its business operations. While the Clubs cooperate to schedule and produce baseball games and facilitate competition on the field, the Clubs compete off the field in the sale of tickets, sponsorships, merchandise, and concessions. The Clubs also compete in the developing, licensing, and marketing of their respective trademarks for various purposes and set their own prices for the sale of tickets for attending games at their stadiums.

4.  The relevant product market is the provision of major league men's professional baseball contests, including the sale of land for the construction of professional baseball stadiums. The relevant geographic market for the provision of major league men's professional baseball is the United States and Canada, where the MLB Clubs are located and where MLB Clubs play games. Various geographic submarkets also exist, defined as operating territories in Article VIII, Section 8 of the alleged MLB Constitution. A copy of the prior version of the MLB Constitution is attached to the Complaint as **Exhibit 4**. MLB exercises monopoly power (the ability to control prices and exclude competition) in these markets as it is the only provider of major league men's professional baseball in the United States and Canada.

5.  The Athletics are a Major League Baseball Club based in Oakland, CA. The Athletics, popularly known as "the A's," are a member of the Western Division of MLB's American League. The Athletics Club is one of the most economically disadvantaged MLB teams. The Athletics play their games in an old stadium, O.co Coliseum, also commonly known as the Oakland Coliseum.

6.  The San Francisco Giants are a Major League Baseball Club based in San Francisco, CA, playing in the National League West Division. The home of the Giants is AT&T Park, widely-acclaimed as one of the best ballparks in MLB.

7.  Ten years ago, the Athletics decided to build a new stadium. After failing in their efforts for a new ballpark in Oakland, the Athletics attempted to build CISCO Field in Fremont, CA, with the support of MLB. When the Fremont City Council would not approve the stadium,

1  Commissioner Selig wrote the A's managing partner, Lew Wolff, stating the Athletics had the
2  right to "discuss a ballpark with other communities," *e.g.,* San José. Plaintiffs then commenced
3  discussions for a stadium deal with the Athletics. The Giants immediately interceded to prevent
4  the Athletics from moving to San José. In March 2009, Commissioner Selig appointed a special
5  Relocation Committee to evaluate the Bay Area territorial issues. As the years have dragged on,
6  the MLB Relocation Committee's activities have remained shrouded in secrecy and the
7  Committee has issued no formal report.

8.  Article VIII, Section 8 of the prior MLB Constitution provides in part: "No franchise shall be granted for an operating territory within the operating territory of a member without the written consent of such member." The purpose and effect of this provision is to unreasonably restrain trade by granting *de facto* exclusive territories to the MLB Clubs and allowing MLB Clubs to protect their respective monopolies by preventing new team entry into operating territories previously assigned to an MLB Club. Because of this provision in the prior MLB Constitution, relocation of the Athletics to San José would place the Club within the "operating territory" of the Giants Club and therefore subject to application of Article VIII, Section 8 of the MLB Constitution.

9.  The San José City Council reviewed and unanimously approved an environmental impact study ("EIS") for a stadium. Upon approval of the EIS, San José Mayor Chuck Reed called for a public vote on whether the Athletics could purchase land and build the stadium. However, *at Commissioner Selig's request*, Mayor Reed delayed the vote pending the MLB Relocation Committee's determination of the A's–Giants territorial dispute.

10. On November 8, 2011, Plaintiffs executed an option agreement with the Athletics Investment Group (the "Option Agreement"). A copy of the Option Agreement is attached to the Complaint as **Exhibit 3**. The Option Agreement permits the Athletics to purchase six parcels located in Downtown San José to build a new stadium for $6,975,227 (the "San José Stadium Property"). In exchange for the option to purchase the San José Stadium Property, the Athletics agreed to pay $50,000, with the authority to extend the option term by one year for an additional

$25,000. Further, the Athletics agreed to negotiate in good faith for a Purchase Agreement for the San José Stadium Property.

11. While the Athletics informed San José of their desire to exercise the option and move the Club to San José, MLB has said it will oppose and prevent the relocation. MLB intends to effect this conspiracy by using various provisions in its Constitution that unlawfully restrict and constrain the transfer and relocation of Clubs. Thus, Defendants are interfering with and preventing the Athletics from relocating to San José. In addition to interfering with the existing Option Agreement, Defendants are interfering with negotiation of a Purchase Agreement (as provided for in the Option Agreement).

12. Taken together, these provisions unduly and unlawfully restrict the ability of MLB Clubs to relocate. Moreover, even if MLB could proffer pro-competitive justifications for these provisions, their application to block the Athletics proposed relocation to San José, California, is unreasonable and anticompetitive.

13. Plaintiffs have suffered and will continue to suffer millions of dollars in harm due to Defendants' refusal to permit the Athletics to move to San José. Specifically, Plaintiffs have suffered direct injury to their commercial interests in the area of the San José Stadium Property, all directly attributable to Defendants' conduct.

<u>Defendants</u>: Plaintiffs' action challenges the legality of Major League Baseball's internal rules governing the relocation of any of its member Clubs. The Oakland Athletics baseball club is a member of Major League Baseball ("MLB"), whose thirty member Clubs have all agreed to be governed by the Major League Constitution and the rules adopted and promulgated by MLB and its Commissioner, Alan Huber "Bud" Selig ("Commissioner"). Each of the Clubs plays its home games in an operating territory identified in the Major League Constitution. The Athletics' operating territory consists of Alameda and Contra Costa Counties in California, and the Athletics currently play home games in the O.co Coliseum in Oakland.

For several years the Athletics have investigated possible alternative stadiums in which to play their home games. These potential alternatives have included construction of a new ballpark in several locations, including in Oakland, in other communities in Alameda and Contra Costa

1  Counties, and, most recently, in San José.  Because the City of San José is not within the
2  Athletics' operating territory, a move to San José (and a change in the Athletics' operating
3  territory) would be a relocation requiring, among other things, approval by three-quarters of the
4  Clubs.  Under the Major League Constitution and Rules, there is a process that governs the
5  potential relocation of any MLB Club.  Those provisions take into account an array of legitimate
6  factors and are designed to ensure that relocation decisions are made in accordance with the best
7  interests of Baseball, the interests of MLB's fans, and applicable law.
8      Plaintiffs continue to knowingly misrepresent that the Major League Constitution grants
9  some sort of "veto" power to one Club over another.  This is false, as is easily demonstrated by a
10 simple reading of the document.  Plaintiffs' statement in their Complaint that "Article VIII,
11 Section 8 of the prior Major League Constitution provides in part:  'No franchise shall be granted
12 for an operating territory within the operating territory of a member without the written consent of
13 such member,'" does not exist in any section of the Major League Constitution.   Plaintiffs attach
14 to their Complaint the version of the Major League Constitution in effect until December 31,
15 2012, when the current version of the Major League Constitution became effective.  Both
16 versions are identical in respects relevant to this action.   Defendants promptly provided to
17 Plaintiffs a copy of the current Major League Constitution when it was requested by counsel for
18 the Plaintiffs, and also pointed out the falsity of this statement in their Motion to
19 Dismiss.  Despite the fact that neither version of the Major League Constitution contains, or ever
20 has contained, such a provision, Plaintiffs continue to refer to this supposed "veto" power.
21      Plaintiffs' legal challenge to the League's relocation rules is without merit.
22   **3.   Legal Issues**
23 Plaintiffs:
24   1.   Plaintiffs are governmental entities suffering cognizable injuries under the
25 Sherman Act and the Cartwright Act, as well as violations of California law.  MLB's actions have
26 placed restraints on the purchase, sale, transfer, and relocation of Major League Baseball Clubs
27 generally, and of the Athletics, specifically, including the sale of land for the construction of
28 baseball stadiums. This action is for violation of California's Unfair Competition Law, Tortious

Interference with Contractual Advantage, Tortious Interference with Prospective Economic Advantage, violations of the Sherman Act, and violations of California's Cartwright Act.  The following legal issues are presented:

2. Plaintiffs have entered into an Option Agreement with the Athletics Investment Group, LLC, the California limited partnership that owns and operates the Athletics Club. Whether Defendants have interfered with this contract by refusing to allow the Athletics to relocate to San José.

3. Whether Defendants intentionally and wrongfully interfered with Plaintiffs' economic relationship with the Athletics by blocking relocation of the Athletics to San José.

4. Whether the actions of Defendants constitutes unlawful, unfair, and/or fraudulent business practices in violation of California Business and Professions Code § 17200 *et seq*.

5. Whether Plaintiffs are entitled to restitution and other equitable relief pursuant to Sections 17203 and 17204 of the California Business and Professions Code from Defendants for acts that violates Section 17200 of the California Business and Professions Code.

6. Whether Defendants created, operated, aided, or abetted a trust, combine, or monopoly for the purpose of creating and carrying out restrictions on trade or commerce with the purpose, intent, and effect of restraining horizontal competition among the MLB Clubs and the MLB for the distribution of major league professional baseball games, including the sale of land for the construction of baseball stadiums.

7. Whether by virtue of exclusionary and anticompetitive agreements, such as the veto power under Article VIII, Section 8 of the MLB Constitution, Defendants have willfully acquired and maintained monopoly power in the relevant geographic market and each submarket by blocking the relocation of Clubs, including the relocation of a competitive team to San José, thereby preventing competition in the relevant geographic market and each submarket.

8. Whether Defendants have acted with an intent to illegally acquire and maintain that monopoly power in the relevant product market, and whether their illegal conduct has enabled them to do so, in violation of the Cartwright Act, Cal. Bus. & Prof. Code§ 16700 *et seq*.

9. Whether Plaintiffs are entitled to damages, injunctive relief, attorneys' fees, costs, and other expenses pursuant to Cal. Bus. & Prof. Code Section 16750.

10. Whether the MLB Clubs are competitors, capable of conspiring under Section 1 of the Sherman Act. *See Los Angeles Memorial Coliseum Comm'n v. National Football League* 726 F.2d 1381 (9th Cir. 1984).

11. Whether Defendants have acted to illegally acquire and maintain monopoly power in the relevant market, and whether their illegal conduct has enabled them to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

12. Whether Defendants entered into a continuing agreement, combination, or conspiracy in restraint of trade with the purpose and effect of (a) restraining horizontal competition among the MLB Clubs and the MLB, and (b) restraining trade and commerce in the distribution of major league professional baseball games, including the sale of land for the construction of baseball stadiums, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

13. Whether, under the Sherman Act, Defendants should be treated like other sports leagues and are subject to the antitrust laws such that league owners must refrain from agreements that unreasonably restrain trade. *See Silverman v. Major League Baseball Relations Inc.* 880 F. Supp. 246, 261 (S.D.N.Y. 1995).

14. Whether Plaintiffs' state law claims are preempted by a purported "antitrust exemption."

15. Whether, as a result of the wrongful actions of Defendants, Plaintiffs have been damaged.

16. Whether the aforementioned acts of Defendants were willful, oppressive, and/or malicious, entitling Plaintiffs to punitive damages under California law.

Defendants: Plaintiffs' antitrust claims are barred by the exemption from state and federal antitrust laws established by the United States Supreme Court for the business of baseball. That exemption originally was created by the Supreme Court in 1922 in *Fed. Baseball Club, Inc. v. Nat'l League of Prof'l Baseball Clubs*, 259 U.S. 200 (1922) and has been reaffirmed repeatedly since then, including in *Flood v. Kuhn*, 407 U.S. 258 (1972). In *Flood*, the Supreme Court also

extended the exemption to state antitrust laws, which are preempted by the national policy embodied in the exemption. Even if the business of baseball were subject to antitrust scrutiny, Major League Baseball's relocation and territorial rules and procedures are procompetitive under the rule of reason and do not violate federal or state antitrust laws as a matter of law. Further, Plaintiffs do not have antitrust standing to pursue their claims because none of the Plaintiffs has been "injured in [any] business or property" by reason of any alleged conduct by the Defendants as required for standing under the Clayton Act; Plaintiffs were neither actual or potential competitors or consumers in the allegedly restrained market, do not allege they were injured by harm to competition in the relevant market; and the only injuries they do allege are derivative and far too speculative to confer antitrust standing. Plaintiffs' attempt to stretch the relevant market alleged in their Complaint, "the provision of major league men's professional baseball contests" (Compl. ¶ 32), to include the "sale of land for the construction of professional baseball stadiums," does not cure the deficiencies in their standing. Plaintiffs have not alleged a cognizable market, nor could they establish any anticompetitive effects in any purported market. Plaintiffs' state antitrust claims are also precluded by the Commerce Clause, which prohibits state antitrust regulation of professional sports.

Plaintiffs' other state-law claims are also legally defective. Plaintiffs' causes of action for unfair competition and tortious interference with prospective economic advantage are premised on the legally unsupportable allegation that Defendants committed some antitrust violation and the equally unsupportable argument that Defendants inappropriately delayed resolution of the Athletics' relocation request. Further, Plaintiffs' tortious interference causes of action fail because Defendants are not strangers to the relationship between Plaintiffs and the Oakland Athletics and are therefore incapable of interfering with that relationship. Plaintiffs' tortious interference with contract claim fails for the additional reason that the option agreement on which the claim is based was neither legally valid nor breached. Plaintiffs' unfair competition claim also fails because Plaintiffs do not have standing to assert such a claim.

///

///

**4.    Motions**

<u>Plaintiffs</u>:  Upon resolution of any Motion to Dismiss, Plaintiffs intend to propound discovery and will then file a Motion for Preliminary Injunction, seeking to enjoin (a) Defendants from enforcing Article VIII, Section 8 of the MLB Constitution and from preventing the relocation of the Athletics Club to San José, California; and (b) Defendants and their co-conspirators from further violations of the antitrust laws.

<u>Defendants</u>:   Defendants believe that their Motion to Dismiss is meritorious and provides a basis for the action to be dismissed in its entirety.  If any of Plaintiffs' claims were to survive Defendants' Motion to Dismiss, Defendants would expect to file a motion for summary judgment and/or such other appropriate motions required to eliminate any remaining claims.

**5.    Amendment of Pleadings**

<u>Plaintiffs</u>:  Plaintiffs have no plans to amend their Complaint.

<u>Defendants</u>:    Defendants do not believe any amended pleadings will be necessary or appropriate.

**6.    Evidence Preservation**

The parties certify that they have reviewed the Northern District's Guidelines relating to Discovery of Electronically Stored Information. The parties have agreed to defer their discussion about the specific exchange of electronically stored information until after final determination of any motion to dismiss.

The Parties distributed litigation hold notices at the commencement of this case and instructed relevant personnel to preserve documents, emails, and other electronic data that may be relevant to this action and that may be used as evidence during trial.

**7.    Disclosures**

The parties have stipulated that they shall be relieved of any obligation to serve initial disclosures under Fed. R. Civ. P. 26(a)(1) until thirty days after final determination of any motion to dismiss.

///

///

**8.     Discovery**

The parties have agreed to stay formal discovery until a case management conference to be held after final determination of any motion to dismiss.

**9.     Class Actions**

This is not a class action.

**10.    Related Cases**

There are no related cases.

**11.    Relief**

<u>Plaintiffs</u>:  By their Complaint, Plaintiffs seek the following relief:

A.     This Court declare the conduct of Defendants constitutes a conspiracy and that Defendants are liable for the conduct of or damage inflicted by any other co-conspirator;

B.     Defendants be permanently enjoined from enforcing Article VIII, Section 8 of the prior MLB Constitution (or the equivalent provision in the operative MLB Constitution) and prohibited from preventing the relocation of the Athletics Club to San José, California;

C.     The contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators be adjudged to have been a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

D.     The actions of Defendants and their co-conspirators to illegally acquire and maintain monopoly power in the relevant product market be adjudged to have been in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

E.     Judgment be entered for Plaintiffs and against Defendants for three times the amount of damages sustained by Plaintiffs as allowed by law, together with the costs of this action, including reasonable attorneys' fees, pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and Section 16700 *et seq.* of the Cartwright Act;

F.     Plaintiffs be awarded actual damages on pendent claims;

G.     Plaintiffs be awarded punitive damages on pendent claims;

H.     Plaintiffs be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law; and

I.  Defendants and their co-conspirators be enjoined from further violations of the antitrust laws.

Defendants:  Defendants do not believe that Plaintiffs are entitled to any relief.  Without waiving their right to seek relief at a later date, Defendants do not currently anticipate filing any counterclaims.

**12.  Settlement and ADR**

On September 18, 2013, the Court approved the parties' stipulation agreeing to extend the deadline to file a Stipulation to ADR Process or Notice of Need for ADR Telephone Conference until 30 days after the Court rules on any Motion to Dismiss.

**13.  Consent to Magistrate Judge For All Purposes**

The parties do not consent to proceed before a Magistrate Judge for all purposes.

**14.  Other References**

The Parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.  Narrowing of Issues**

The parties have not agreed on issues that can be narrowed for trial.

**16.  Expedited Trial Procedure**

Plaintiffs:  Plaintiffs believe there will be sufficient time for discovery if trial is scheduled for March 2014.

Defendants:  Defendants do not believe this is the type of case that can be handled on an expedited basis.

**17.  Scheduling**

Plaintiffs:  Plaintiffs have waited four years for Defendants to approve relocation of the Athletics Club to San José.  Defendants have failed to take any steps to permit relocation of the Athletics.  Because Defendants have failed to act, Plaintiffs were forced to file this complaint, seeking damages and injunctive relief.  Plaintiffs believe there will be sufficient time for discovery if trial is scheduled for March 2014.

Defendants:  Defendants believe that it is premature to set a trial date and associated pre-

trial dates until after final determination of any motion to dismiss. Defendants request that a case management conference to address scheduling issues be scheduled 45-60 days after final determination of any motion to dismiss.

### 18. Trial

<u>Plaintiffs</u>: Plaintiffs believe there will be sufficient time for discovery to be ready for trial in March 2014. Trial should take ten (10) days.

<u>Defendants</u>: Defendants believe that it is premature to estimate the length of trial, if one becomes necessary.

### 19. Disclosure of Non-party Interested Entities or Persons

<u>Plaintiffs</u>: Pursuant to Civil Local Rule 3-16, there are no non-party interested entities or persons.

<u>Defendants</u>: Pursuant to Civil Local Rule 3-16, Defendant Office of the Commissioner of Baseball filed its "Certification of Interested Entities or Persons" and restates that Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB") is an unincorporated association and, as such, has no corporate parent. There is no publicly held corporation that owns 10% or more of MLB. The following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Athletics Investment Group LLC – party to the Option Agreement alleged in the complaint; and Major League Baseball Clubs – The Office of the Commissioner of Baseball is an unincorporated association and has as its members the Major League Baseball Clubs.

These Clubs are: (1) Arizona Diamondbacks; (2) Atlanta Braves; (3) Baltimore Orioles; (4) Boston Red Sox; (5) Chicago Cubs; (6) Chicago White Sox; (7) Cincinnati Reds; (8) Cleveland Indians; (9) Colorado Rockies; (10) Detroit Tigers; (11) Florida Marlins; (12) Houston Astros; (13) Kansas City Royals; (14) Los Angeles Angels of Anaheim; (15) Los Angeles Dodgers; (16) Milwaukee Brewers; (17) Minnesota Twins; (18) New York Mets; (19) New York

1  Yankees; (20) Oakland Athletics; (21) Philadelphia Phillies; (22) Pittsburgh Pirates; (23) St. Louis Cardinals; (24) San Diego Padres; (25) San Francisco Giants; (26) Seattle Mariners; (27) Tampa Bay Rays; (28) Texas Rangers; (29) Toronto Blue Jays; and (30) Washington Nationals.

**20.     Other**

<u>Plaintiffs</u>:  Upon resolution of any Motion to Dismiss, Plaintiffs intend to seek discovery and will then file a Motion for Preliminary Injunction, seeking to enjoin (a) Defendants from enforcing Article VIII, Section 8 of the prior MLB Constitution (or the equivalent provision in the operative MLB Constitution) and from preventing the relocation of the Athletics Club to San José, California; and (b) Defendants and their co-conspirators from further violations of the antitrust laws.

<u>Defendants</u>:  Defendants believe their Motion to Dismiss will result in the just, speedy and inexpensive disposition of this matter.

Dated:  September 27, 2013                                  COTCHETT, PITRE & MCCARTHY, LLP

By:   */s/ Joseph W. Cotchett*
JOSEPH W. COTCHETT
PHILIP L. GREGORY
FRANK C. DAMRELL, JR.
STEVEN N. WILLIAMS
ANNE MARIE MURPHY
CAMILO ARTIGA-PURCELL

Attorneys for Plaintiffs
CITY OF SAN JOSE; CITY OF SAN JOSE AS SUCCESSOR AGENCY TO THE REDEVELOPMENT AGENCY OF THE CITY OF SAN JOSE; and THE SAN JOSE DIRIDON DEVELOPMENT AUTHORITY

Dated:  September 27, 2013                                KEKER & VAN NEST LLP

                                              By:  */s/ John Keker*
                                                   JOHN KEKER
                                                   PAULA L. BLIZZARD
                                                   THOMAS E. GORMAN

                                                   Attorneys for Defendants
                                                   OFFICE OF THE COMMISSIONER OF BASEBALL,
                                                   an unincorporated association doing business as Major League Baseball; and ALLAN HUBER "BUD" SELIG

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

DATED: _____        _____
                                       The Honorable Ronald M. Whyte
                                       Judge of the Northern District of California

14
JOINT CASE MANAGEMENT STATEMENT& [PROPOSED] ORDER
Case No. 13-CV-02787 RMW

783438

**CERTIFICATION OF CONCURRENCE FROM ALL SIGNATORIES**

    I, John Keker, am the ECF user whose ID and password are being used to file this Joint Case Management Statement.  In compliance with N.D. Cal. Civ. L.R. 5-1(i)(3), I hereby attest that I have obtained the concurrence of each signatory to this document.

                                          */s/ John Keker*  
                                          JOHN KEKER