KEKER & VAN NEST LLP
JOHN KEKER - # 49092
   jkeker@kvn.com
PAULA L. BLIZZARD - # 207920
   pblizzard@kvn.com
THOMAS E. GORMAN - # 279409
   tgorman@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415-391-5400
Facsimile:   415-397-7188

PROSKAUER ROSE LLP
BRADLEY I. RUSKIN (*pro hac vice*)
   bruskin@proskauer.com
Eleven Times Square
New York, NY 10036
Telephone:   212-969-3000
Facsimile:   212-969-2900

PROSKAUER ROSE LLP
SCOTT P. COOPER (SBN 96905)
   scooper@proskauer.com
SARAH KROLL-ROSENBAUM (SBN 272358)
   skroll-rosenbaum@proskauer.com
JENNIFER L. ROCHE (SBN 254538)
   jroche@proskauer.com
SHAWN S. LEDINGHAM, JR. (SBN 275268)
   sledingham@proskauer.com
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:   310-557-2900
Facsimile:   310-557-2193

Attorneys for Defendants OFFICE OF THE COMMISSIONER
OF BASEBALL, an unincorporated association doing business as
Major League Baseball; and ALLAN HUBER "BUD" SELIG

COTCHETT, PITRE & McCARTHY, LLP
JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
PHILIP L. GREGORY (SBN 95217)
pgregory@cpmlegal.com
FRANK C. DAMRELL, JR  (SBN 37126)
fdamrell@cpmlegal.com
STEVEN N. WILLIAMS (SBN 175489)
swilliams@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
CAMILO ARTIGA-PURCELL (SBN 273229)
cartigapurcell@cpmlegal.com
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:   650-697-6000
Facsimile:   650-692-3606

OFFICE OF THE CITY ATTORNEY
RICHARD DOYLE (SBN 88625)
   CITY ATTORNEY
NORA FRIMANN (SBN 93249)
200 East Santa Clara Street, 16th Floor
San José, CA 95113
Telephone:   408-535-1900
Facsimile:   408-998-3131

Attorneys for Plaintiffs:
CITY OF SAN JOSE; CITY OF SAN JOSÉ,
AS SUCCESSOR AGENCY TO THE
REDEVELOPMENT AGENCY OF THE
CITY OF SAN JOSE; and THE SAN JOSÉ
DIRIDON DEVELOPMENT AUTHORITY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA / SAN JOSE DIVISION

| | |
|---|---|
| CITY OF SAN JOSE; CITY OF SAN JOSE AS SUCCESSOR AGENCY TO THE REDEVELOPMENT AGENCY OF THE CITY OF SAN JOSE; and THE SAN JOSE DIRIDON DEVELOPMENT AUTHORITY, <br><br>    Plaintiffs, <br><br>    v. <br><br> OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as Major League Baseball; and ALLAN HUBER "BUD" SELIG, <br><br>    Defendants. | Case Number: 13-CV-02787-RMW <br><br> **SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** |

The parties to the above-entitled action jointly submit this Joint Supplemental Case

Management Statement pursuant to the Standing Order for All Judges of the Northern District

of California dated July 1, 2011 and Civil Local Rule 16-9.

**A.     CIVIL LOCAL RULE 16-9 STATEMENT**

The following progress or changes have occurred since the last Case Management

Statement was filed on September 27, 2013:

       **1.     <u>Jurisdiction</u>**

All Defendants have been served.  Jurisdiction should be exercised on the basis

discussed in Section B(1).

       **2.     <u>Facts</u>**

<u>Plaintiffs</u>:  This action arises from the alleged conspiracy by Major League Baseball

("MLB") to control the location and relocation of major league professional baseball clubs

under the guise of a broad "antitrust exemption" applied to every aspect of the business of

baseball. Specifically, MLB has prevented the Athletics Baseball Club from moving to and

building a stadium in San José.  Defendants have violated California law and interfered with a

contract between Plaintiffs and the Athletics Club.

       1.     There are 30 MLB Clubs, all competing in regularly scheduled games.  Baseball

is big business with combined 2012 annual revenues of **$7.5 billion**.  Baseball may have started

as a local affair, but modern baseball squarely involves interstate commerce.  MLB Clubs ply

their wares nationwide; games are broadcast throughout the country on satellite TV and radio, as

well as cable channels; and MLB Clubs have fan bases that span from coast to coast.

       2.     Plaintiffs are the CITY OF SAN JOSÉ, both in its capacity as a California

municipal corporation and as the Successor Agency to the Redevelopment Agency of the City of

San José, and SAN JOSÉ DIRIDON DEVELOPMENT AUTHORITY, a joint powers

association comprised of the City of San José and the former Redevelopment

Agency.  Defendants are THE OFFICE OF THE COMMISSIONER OF BASEBALL d/b/a

MAJOR LEAGUE BASEBALL ("MLB"), an unincorporated association of the thirty Major

League Baseball Clubs (the "Clubs"), and  ALLAN HUBER "BUD" SELIG, the Commissioner of Major League Baseball.

3.     At issue in this case is Defendants' unlawful restraint of the move by the Athletics from Oakland to San José.  Through the alleged MLB Constitution, MLB and the Clubs have adopted agreements governing all aspects of major league men's professional baseball.  The rules in the MLB Constitution are vertical agreements between MLB and the Clubs and horizontal agreements between the Clubs. Each Club that is a member of MLB is a separate and independent business with a separate and independent owner, exercising significant autonomy in its business operations.  While the Clubs cooperate to schedule and produce baseball games and facilitate competition on the field, the Clubs compete off the field in the sale of tickets, sponsorships, merchandise, and concessions.  The Clubs also compete in the developing, licensing, and marketing of their respective trademarks for various purposes and set their own prices for the sale of tickets for attending games at their stadiums.

4.     The relevant product market is the provision of major league men's professional baseball contests, including the sale of land for the construction of professional baseball stadiums.  The relevant geographic market for the provision of major league men's professional baseball is the United States and Canada, where the MLB Clubs are located and where MLB Clubs play games.  Various geographic submarkets also exist, defined as operating territories in Article VIII, Section 8 of the alleged MLB Constitution.  A copy of the prior version of the MLB Constitution is attached to the Complaint as **Exhibit 4**.  MLB exercises monopoly power (the ability to control prices and exclude competition) in these markets as it is the only provider of major league men's professional baseball in the United States and Canada.

5.     The Athletics are a Major League Baseball Club based in Oakland, CA.  The Athletics, popularly known as "the A's," are a member of the Western Division of MLB's American League. The Athletics Club is one of the most economically disadvantaged MLB teams.  The Athletics play their games in an old stadium, O.co Coliseum, also commonly known as the Oakland Coliseum.

3

6.      The San Francisco Giants are a Major League Baseball Club based in San Francisco, CA, playing in the National League West Division.  The home of the Giants is AT&T Park, widely-acclaimed as one of the best ballparks in MLB.

7.      Ten years ago, the Athletics decided to build a new stadium.  After failing in their efforts for a new ballpark in Oakland, the Athletics attempted to build CISCO Field in Fremont, CA, with the support of MLB.  When the Fremont City Council would not approve the stadium, Commissioner Selig wrote the A's managing partner, Lew Wolff, stating the Athletics had the right to "discuss a ballpark with other communities," *e.g.,* San José.  Plaintiffs then commenced discussions for a stadium deal with the Athletics.  The Giants immediately interceded to prevent the Athletics from moving to San José.  In March 2009, Commissioner Selig appointed a special Relocation Committee to evaluate the Bay Area territorial issues.  As the years have dragged on, the MLB Relocation Committee's activities have remained shrouded in secrecy and the Committee has issued no formal report.

8.      Article VIII, Section 8 of the prior MLB Constitution provides in part:  "No franchise shall be granted for an operating territory within the operating territory of a member without the written consent of such member."  The purpose and effect of this provision is to unreasonably restrain trade by granting *de facto* exclusive territories to the MLB Clubs and allowing MLB Clubs to protect their respective monopolies by preventing new team entry into operating territories previously assigned to an MLB Club.  Because of this provision in the prior MLB Constitution, relocation of the Athletics to San José would place the Club within the "operating territory" of the Giants Club and therefore subject to application of Article VIII, Section 8 of the MLB Constitution.

9.      The San José City Council reviewed and unanimously approved an environmental impact study ("EIS") for a stadium.  Upon approval of the EIS, San José Mayor Chuck Reed called for a public vote on whether the Athletics could purchase land and build the stadium. However, *at Commissioner Selig's request*, Mayor Reed delayed the vote pending the MLB Relocation Committee's determination of the A's–Giants territorial dispute.

4

10.     On November 8, 2011, Plaintiffs executed an option agreement with the Athletics Investment Group (the "Option Agreement").  A copy of the Option Agreement is attached to the Complaint as **Exhibit 3**.  The Option Agreement permits the Athletics to purchase six parcels located in Downtown San José to build a new stadium for $6,975,227 (the "San José Stadium Property").  In exchange for the option to purchase the San José Stadium Property, the Athletics agreed to pay $50,000, with the authority to extend the option term by one year for an additional $25,000.  Further, the Athletics agreed to negotiate in good faith for a Purchase Agreement for the San José Stadium Property.

11.     While the Athletics informed San José of their desire to exercise the option and move the Club to San José, MLB has said it will oppose and prevent the relocation.  MLB intends to effect this conspiracy by using various provisions in its Constitution that unlawfully restrict and constrain the transfer and relocation of Clubs.  Thus, Defendants are interfering with and preventing the Athletics from relocating to San José.  In addition to interfering with the existing Option Agreement, Defendants are interfering with negotiation of a Purchase Agreement (as provided for in the Option Agreement).

12.     Taken together, these provisions unduly and unlawfully restrict the ability of MLB Clubs to relocate.  Moreover, even if MLB could proffer pro-competitive justifications for these provisions, their application to block the Athletics proposed relocation to San José, California, is unreasonable and anticompetitive.

13.     Plaintiffs have suffered and will continue to suffer millions of dollars in harm due to Defendants' refusal to permit the Athletics to move to San José.  Specifically, Plaintiffs have suffered direct injury to their commercial interests in the area of the San José Stadium Property, all directly attributable to Defendants' conduct.

14.     Defendants assert that this Court should take action based on a June 17, 2013 letter from Defendant Bud Selig.  Defendants have failed to provide this letter to Plaintiffs or to this Court.  Therefore, this Court should refuse to take any steps based on the letter.

15.     In fact, Defendants' sections of this CMC Statement are filled with Assertions of fact. This Court should order immediate commencement of discovery so that these "facts" (and others) surrounding the Athletics proposed move to San Jose and their reasons for entering into (and then not exercising) the Option Agreement may be explored.

<u>Defendants</u>:  Plaintiffs' description above of purportedly relevant facts entirely ignores the Court's October 11, 2013 Order Granting-in-Part and Denying-in-Part Defendants' Motion to Dismiss ("MTD Order") dismissing all of the antitrust and Unfair Competition Law claims and eliminating all of the damages purportedly resulting from MLB's alleged refusal to allow the Athletics to relocate to San Jose.  In the MTD Order, the Court expressly held that "it is within MLB's authority to decide" whether to approve or deny the Athletics' relocation request. Dkt. 41 at 25:21–22.

In fact, **MLB denied the Athletics' relocation request on June 17, 2013**, one day before this lawsuit was filed.  On that date, Commissioner Selig formally notified the Athletics' ownership that he was not satisfied with the club's relocation proposal.[1]  The sole basis of Plaintiffs' only claims that remain after the MTD Order—the purported failure of MLB to render a decision within the initial two-year term of the Option Agreement—is therefore meritless.

Moreover, there was no time limit on MLB's decision-making process regarding the Athletics' relocation request.  The communication on which Plaintiffs rely for the assertion that the Commissioner impliedly promised to render a decision within the term of the Option Agreement was a letter dated February 16, 2010, almost two years before Plaintiffs entered into the Option Agreement.  Nothing in the Commissioner's letter made any representation about the timing of any decision.  Instead, it stated that a public referendum on the construction of a baseball stadium at that point would be "premature" and urged the City to "refrain from any public or official action that would suggest an endorsement by me or Major League Baseball of the relocation of the A's to San Jose" when no decision allowing the relocation had been made. Moreover, the City could not reasonably have relied on any purported statement in the February

---

[1] Defendants offered to provide Plaintiffs with a copy of the June 17, 2013 letter upon entry of an appropriate protective order in this action.

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

2010 letter for the proposition that a decision would soon be forthcoming.  It entered into the Option Agreement 21 months after the letter and no decision had been made or appeared imminent.  Plaintiffs did not rely on any express or implied representation that a decision would be rendered on the Athletics' relocation request in any particular time period, much less within two years of the City's entry into the Option Agreement.

Even assuming MLB were somehow obligated to make a decision in a set period of time, MLB's decision regarding the Athletics' relocation request was timely.  This Court's MTD Order suggested that it was "reasonable to infer that the A's and the City entered into the Option Agreement with the understanding that MLB would return a relocation decision within the two year term of the contract."  As discussed above, the Commissioner issued his final decision 19 months after San Jose entered into the Option Agreement.

Plaintiffs' interference claims also fail because the Option Agreement is legally invalid for multiple reasons and is not a valid predicate for an interference claim.  First, the land that is the subject of the Option Agreement was improperly transferred and encumbered in violation of Cal. Health and Safety Code Section 34161 *et seq*., which mandated the dissolution of California RDAs, prohibited the sale or encumbrance of RDA assets, and declared "unauthorized" any transfer of assets from an RDA to a government agency after January 1, 2011.  One such unauthorized transfer was the March 8, 2011 transfer of almost $30 million in RDA assets, including the Ballpark Parcels, from the San Jose RDA to a newly created joint-powers authority, the Diridon JPA.  The purported encumbrance of the Ballpark Parcels by the City and the RDA in entering into the Option Agreement is declared "void from the outset" by the statute.

In March 2013, the State Controller's Office issued its Asset Transfer Review Report of the San Jose RDA, finding that the San Jose RDA made "unallowable asset transfers" to the Diridon JPA on March 8, 2011, including the transfer of the Ballpark Parcels.  The Controller ordered the City to reverse the transfer of those assets and return them to the Successor Agency to be disposed of expeditiously and in a manner aimed at maximizing value.

Two other grounds on which the Option Agreement may be legally invalid are alleged by the petitioner in the action entitled *Stand for San Jose, et al., v. City of San Jose*, Case Nos. 111-

7

cv-214196 and 113-cv-250372, two consolidated cases pending before Judge Huber in the California Superior Court for Santa Clara County: (1) the Option Agreement was predicated upon a defective Environmental Impact Report that failed to comply with the requirements of the California Environmental Quality Act; and, (2) the City's failure to conduct a public vote prior to entering into the Option Agreement violated San Jose Municipal Code 4.95.010.

If the Option Agreement is legally invalid under any of the three grounds described above, it may not be the basis of any claim against Defendants, and the remaining state law claims must be dismissed.

**3.   Legal Issues**

Plaintiffs:  Plaintiffs are governmental entities suffering cognizable injuries under the Sherman Act and the Cartwright Act, as well as violations of California law.  MLB's actions have placed restraints on the purchase, sale, transfer, and relocation of Major League Baseball Clubs generally, and of the Athletics, specifically, including the sale of land for the construction of baseball stadiums. This action was originally filed alleging the following: violation of California's Unfair Competition Law, Tortious Interference with Contractual Advantage, Tortious Interference with Prospective Economic Advantage, violations of the Sherman Act, and violations of California's Cartwright Act.  By Order dated **October 11, 2013** the Court dismissed the claims for violations of the Sherman and Cartwright Acts and the unfair competition claim. The following legal issues are presented:

1.   Plaintiffs have entered into an Option Agreement with the Athletics Investment Group, LLC, the California limited partnership that owns and operates the Athletics Club. Whether Defendants have interfered with this contract by refusing to allow the Athletics to relocate to San José?

2.   Whether Defendants were aware of the existence of the Option Agreement and were also aware that, through the Option Agreement, Plaintiffs were the direct and principal beneficiaries of significant rights with respect to relocating the Oakland Athletics Club to San José.

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

3.   Whether Defendants knew Plaintiffs had an existing economic relationship with the Oakland Athletics Club and that the relationship included future economic benefits for Plaintiffs.

4.   Whether Defendants intentionally and wrongfully interfered with Plaintiffs' economic relationship with the Athletics by blocking relocation of the Athletics to San José.

5.   Whether, Defendants created the MLB Relocation Committee and intentionally engaged in tactics delaying any decision of the MLB Relocation Committee for over four years, all the while knowing that such activity would interfere or was substantially certain to interfere with the Option Agreement.

6.   Whether, were it not for Defendants' wrongful scheme to block relocation of the Oakland Athletics Club to San José, Plaintiffs' economic relationship with the Oakland Athletics Club would have continued forward for the duration of the Option Agreement and for the foreseeable future.

7.   Whether, as a direct and proximate result of Defendants' actions, the economic relationship between the Oakland Athletics Club and Plaintiffs was in fact disrupted.

8.   Whether as a direct and proximate result of Defendants' wrongful actions, the contractual relationship between the Oakland Athletics Club and Plaintiffs was disrupted.

9.   Whether as a direct and proximate result of Defendants' wrongful actions, performance under the Option Agreement and negotiation of a Purchase Agreement pursuant to the Option Agreement were in fact disrupted.

10. Whether Defendants' actions in interfering with Plaintiffs' economic relationship with the Oakland Athletics Club were wrongful.

11. Whether Plaintiffs' state law claims are preempted by a purported "antitrust exemption."

12. Whether, as a result of the wrongful actions of Defendants, Plaintiffs have been damaged.

13. Whether the aforementioned acts of Defendants were willful, oppressive, and/or

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

793801.02

1   malicious, entitling Plaintiffs to punitive damages under California law.

2       14. Defendants assert that this Court should take action based on a June 17, 2013

3   letter from Defendant Bud Selig.  Defendants have failed to provide this letter to Plaintiffs or

4   to this Court.  Therefore, this Court should refuse to take any steps based on the letter.

5       15. In fact, Defendants' sections of this CMC Statement are filled with Assertions of

6   fact.  This Court should order immediate commencement of discovery so that these "facts"

7   (and others) surrounding the Athletics proposed move to San Jose and their reasons for

8   entering into (and then not exercising) the Option Agreement may be explored.

9      <u>Defendants</u>:   Plaintiffs' list of purported legal issues, like their factual issues, ignores the

10   Court's MTD Order and its determination that MLB was entitled to accept or deny the Athletics'

11   relocation request.  Dkt. 41 at 25:21–22.  All of Plaintiffs' purported legal issues related to

12   MLB's alleged refusal to allow the relocation are resolved by the MTD Order.

13      Plaintiffs' remaining state law interference claims fail for at least the following legal

14   reasons:

15      The Option Agreement is invalid as a matter of law and therefore it cannot form the basis

16   of Plaintiffs' remaining claims.  *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d

17   1118, 1126 (1990) ("[A] plaintiff must plead … a valid contract between plaintiff and a third

18   party.").

19      No legal basis exists for San Jose to assume that MLB would return a decision regarding

20   the Athletics' relocation within two years of the A's and San Jose entering the Option

21   Agreement.  MLB had no duty or obligation to do so.

22      Plaintiffs' interference claims also cannot be predicated on the purported breach of an

23   alleged representation by the Defendants that they would make a relocation decision "within two

24   years" because, if such a representation had been made, any legal duty to the City it theoretically

25   could have created would have been direct by the Defendants to the City.  A direct duty between

26   the Defendants and San Jose would make the Defendants not a legal stranger to the Option

27   Agreement, and therefore render them legally incapable of interfering with it.

28

Plaintiffs' claim of interference with contract cannot be the predicate for a claim for interference with prospective economic advantage because it does not constitute wrongful conduct "by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, USA, Inc.,* 11 Cal. 4th 376, 393 (1995).

Plaintiffs' claims fail because Plaintiffs have suffered no injury as a result of any wrongful conduct by MLB.

### 4.    <u>Motions/ Scheduling</u>

<u>Plaintiffs</u>:  Provided the Court agrees with Plaintiffs' arguments stated above in Section A (2) (no reason to delay final judgment), Plaintiffs intend to pursue appellate review of the dismissal of the antitrust and unfair competition claims.  As previously stated, this case presents significant legal issues, including antitrust questions that are ripe for consideration by the U.S. Supreme Court.

Defendants assert that this Court should take action based on a June 17, 2013 letter from Defendant Bud Selig.  Defendants have failed to provide this letter to Plaintiffs or to this Court. Therefore, this Court should refuse to take any steps based on the letter.

In fact, Defendants' sections of this CMC Statement are filled with Assertions of fact. This Court should order immediate commencement of discovery so that these "facts" (and others) surrounding the Athletics proposed move to San Jose and their reasons for entering into (and then not exercising) the Option Agreement may be explored.

<u>Defendants</u>:  Defendants believe it is appropriate for the Court to temporarily stay this action to allow time for the legal invalidity and unenforceability of the Option Agreement to be decided in connection with the *Stand for San Jose* cases in the California State Court and before the California Department of Finance.  More specifically, Petitioners in *Stand for San Jose* challenge, among other things, the transfer of certain real property, including the Ballpark Parcels, to the Diridon JPA and the City's approval of the Option Agreement which purports to encumber that land.  The Option Agreement is also the subject of a long-range property management plan which requires approval by the California Department of Finance.  Petitioners

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

in the *Stand for San Jose* litigation contend that the Option Agreement must be rejected because it is not a legally enforceable obligation.

In the *Stand for San Jose* cases, San Jose recently sought and obtained a stay pending a determination by the California Department of Finance regarding the Option Agreement's validity and enforceability.  The first of the *Stand for San Jose* cases was scheduled for a November 8, 2013 trial.  However, San Jose itself successfully argued there that those cases should be stayed pending a California Department of Finance review of the City's property management plan, because the Department could determine that the Option Agreement is in violation of Cal. Health and Safety Code Section 31463.  Such a ruling would render the Option Agreement legally invalid and unenforceable, thereby mooting the *Stand for San Jose* litigation. Judge Huber was persuaded by San Jose's argument and temporarily stayed the consolidated action, setting another CMC for December 20, 2013 to obtain a status report on the Oversight Board's review of the property management plan.  A determination in the *Stand for San Jose* actions that the Option Agreement is legally invalid and unenforceable would be binding on Plaintiffs here under the doctrine of collateral estoppel, thereby requiring dismissal of the remaining claims in this action.

As a result, Defendants recommend that this action be stayed temporarily and that the Court set a Case Management Conference for March 2014, at which time the parties will report on the status of the *Stand for San Jose* litigation.  If the Option Agreement is held to be legally invalid and unenforceable, the remaining state law claims in this action must be dismissed.

If the Option Agreement is not promptly determined to be legally invalid and unenforceable by the Department of Finance and/or the Superior Court in the *Stand for San Jose* litigation, Defendants expect to file an early motion for summary judgment to eliminate Plaintiffs' remaining claims.  The motion will be made on at least the grounds that: 1. Plaintiffs' interference claims fail because the Commissioner made a determination on the Athletics' request to relocate to San Jose within the initial two-year term of the Option Agreement; 2. the Option Agreement on which the claims are based is legally invalid and unenforceable; and, 3. in

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

any event, Plaintiffs are unable to identify any damages purportedly caused by MLB's alleged delay in rendering its relocation decision.  This motion can be made without any need for discovery since all facts relevant to the motion are already known to all of the parties.

**7.    Disclosures**

The parties previously agreed by stipulation that they would serve their respective initial disclosures under Fed. R. Civ. P. 26(a)(1) thirty days after final determination of any motion to dismiss.  Pursuant to the stipulation, Defendants served initial disclosures under Fed. R. Civ. P. 26(a)(1) on November 12, 2013.  Plaintiffs have failed to serve their initial disclosures in violation of the Parties' stipulation and Rule 26.

**8.    Discovery**

The parties have agreed to stay formal discovery until a case management conference is held.

<u>Plaintiffs</u>:  Plaintiffs intend to proceed promptly with discovery now that the Motion to Dismiss has been decided and Defendants have filed their answer.  Defendants assert that this Court should take action based on a June 17, 2013 letter from Defendant Bud Selig.  Defendants have failed to provide this letter to Plaintiffs or to this Court.  Therefore, this Court should refuse to take any steps based on the letter.  In fact, Defendants' sections of this CMC Statement are filled with Assertions of fact.  This Court should order immediate commencement of discovery so that these "facts" (and others) surrounding the Athletics proposed move to San Jose and their reasons for entering into (and then not exercising) the Option Agreement may be explored.  On October 22, 2013, Plaintiffs informed Defendants they would not agree to a Protective Order.

<u>Defendants</u>: As stated above, Defendants believe proceedings in this action, including discovery, should be stayed (consistent with the position taken by the City itself) to give the Department of Finance and/or the Superior Court in the *Stand for San Jose* litigation a reasonable amount of time to determine whether the Option Agreement is legally invalid and unenforceable.

13

In the meantime, Defendants believe that entry of a protective order governing the use of confidential information is appropriate in this case.  On October 22, 2013, Defendants told Plaintiffs they would provide them with a copy of the June 17, 2013 letter upon entry of a protective order.  Plaintiffs agreed to provide comments on a draft protective order stipulation, which Defendants provided to Plaintiffs on November 14, 2013.  Plaintiffs informed Defendants that they would respond to the draft protective order, but have not yet done so.

**11.    Relief**

Plaintiffs:  By their Complaint, Plaintiffs seek the following relief:

A.    Plaintiffs be awarded actual damages on pendent claims;

B.    Plaintiffs be awarded punitive damages on pendent claims; and,

C.    Plaintiffs be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law.

Defendants:  Plaintiffs are not entitled to any relief.  Without waiving their right to seek relief at a later date, Defendants do not currently anticipate filing any counterclaims.

**12.    Settlement and ADR**

Plaintiffs: On September 18, 2013, the Court approved the parties' stipulation agreeing to extend the deadline to file a Stipulation to ADR Process or Notice of Need for ADR Telephone Conference until 30 days after the Court rules on any Motion to Dismiss.

Defendants:  The parties filed a joint stipulation on November 12, 2013 regarding a further extension of the ADR deadline.  Given the nature of the claims in this action, Defendants believe that settlement is unlikely and any settlement procedure should be deferred. If and when any settlement procedure occurs, Defendants believe that a settlement conference with one of the District Court's judicial officers would be appropriate.

**16.    Expedited Trial Procedure**

Plaintiffs:    Plaintiffs believe there will be sufficient time for discovery if trial is scheduled for June 2014.

Defendants:  Defendants do not believe this is the type of case that can or should be

14

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

1  handled pursuant to expedited trial procedures.

2      **17.    Scheduling**

3      Plaintiffs:  Plaintiffs have waited more than four years for Defendants to approve

4  relocation of the Athletics Club to San José.  Defendants have failed to take any steps to permit

5  relocation of the Athletics.  Because Defendants have failed to act, Plaintiffs were forced to file

6  this Complaint.  Plaintiffs believe there will be sufficient time for discovery if trial is scheduled

7  for June 2014.

8          Defendants assert that this Court should take action based on a June 17, 2013 letter from

9  Defendant Bud Selig.  Defendants have failed to provide this letter to Plaintiffs or to this Court.

10  Therefore, this Court should refuse to take any steps based on the letter.  In fact, Defendants'

11  sections of this CMC Statement are filled with Assertions of fact.  This Court should order

12  immediate commencement of discovery so that these "facts" (and others) surrounding the

13  Athletics proposed move to San Jose and their reasons for entering into (and then not

14  exercising) the Option Agreement may be explored.

15      Defendants:  MLB denied the Athletics' relocation request on June 17, 2013.  The sole

16  remedy to which Plaintiffs could legally be entitled if their remaining claims had merit, and if

17  they had suffered any damages—neither of which is the case—would be money damages.

18  There is no basis for this action to be handled on an expedited schedule.

19          Also, as discussed in Section A(4), Defendants believe it is appropriate for the Court to

20  temporarily stay this action to allow time for the legal invalidity and unenforceability of the

21  Option Agreement to be decided in connection with the *Stand for San Jose* cases in the

22  California State Court and before the California Department of Finance.  Defendants therefore

23  believe that it is premature to set a trial date.

24      **18.    Trial**

25      Plaintiffs:  Plaintiffs believe there will be sufficient time for discovery to be ready for

26  trial in June 2014.  Trial should take ten (10) days.

27      Defendants:  Defendants believe that it is premature to estimate the length of trial, if one

28

15

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

1  becomes necessary.

2  **B.    QUESTIONS POSED BY NOVEMBER 8, 2013 ORDER**

3          For ease of reference the Parties have included each of the three questions posed by the

4  November 8, 2013 Order, followed by a summary of their respective positions:

5          **(1)  Since the federal claim has been dismissed, should the court retain supplemental**

6  **jurisdiction of the two surviving state law claims?**

7          <u>Plaintiffs</u>:  **Yes**.  This Court has wide discretion to retain supplemental jurisdiction of the

8  two surviving state law claims.  As stated in *United Mine Workers of America v. Gibbs*, the

9  seminal case on pendent jurisdiction, federal courts have "a wide ranging power" to decide state

10  law claims in cases that also present federal questions." 383 U.S. 715, 726 (1966). The power to

11  hear pendent state law claims is discretionary.  *Id*.  The Court in *Gibbs* articulated the following

12  circumstances under which state claims may be dismissed:

13          1.      If the federal claims are dismissed prior to trial;

14          2.      If it appears that the state issues substantially predominate, whether in terms of

15                  proof, of the scope of the issues raised, or of the comprehensiveness of the

16                  remedies sought; and

17          3.      If separation of the state and federal claims is justified by reasons independent of

18                  jurisdictional considerations, such as the likelihood of jury confusion.

19  *Id.*  With respect to the first factor (dismissal of the federal claims before trial), **dismissal of**

20  **supplemental claims is not required on dismissal of federal claims**.  The Supreme Court has

21  made clear that the three situations noted in *Gibbs* "do [] not establish a mandatory rule to be

22  applied inflexibly in all cases.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

23  To the contrary, a federal court "does have the power to hear [state] claims … even after the

24  basis for … jurisdiction is dropped from the proceedings."  *Harrell v. 20th Century Ins. Co.*, 934

25  F.2d 203, 205 (9th Cir. 1991).  *Harrell* dealt with removal jurisdiction, and not original

26  jurisdiction; however, the applicable principal is the same.

27          Regardless of when federal claims are dismissed, leaving only state law causes of action,

28

                                        16

1   it must be emphasized that there is no single factor that is dispositive to the issue of whether to

2   exercise jurisdiction.  A district court must consider all the factors under the circumstances of a

3   given case.  *Carnegie-Mellon*, 484 U.S. at 350; *Parker & Parsley Petroleum Co. v. Dresser*

4   *Indus.*, 972 F.2d 580 (5th Cir. 1992).

5         In its discretion, "a federal court should consider and weigh in each case, and at every

6   stage in the litigation, the values of **judicial economy, convenience, fairness, and comity** in

7   order to decide whether to exercise jurisdiction over a case brought in that court involving

8   pendent state law claims." *Gibbs*, 383 U.S. at 726.  (Emphasis added.)

9         Here, this Court has already expended significant resources on the case in connection

10  with a thoroughly briefed Motion to Dismiss proceeding.  This Court is familiar with the facts of

11  the case. The Court has issued a detailed ruling.  Further, if this Court were not to retain

12  jurisdiction, it would inevitably result in parallel state and federal court proceedings, as the

13  antitrust issues would wend their way through the appellate process while a new state proceeding

14  was initiated to deal with the state law claims.  Such parallel proceedings could result in

15  conflicting rulings and would amount to an enormous waste of judicial resources.

16       <u>Defendants</u>:  **Yes**.  Defendants agree with Plaintiffs that the Court should retain

17  supplemental jurisdiction.  Defendants provide the following additional information expanding

18  on the points addressed by the Plaintiffs above.

19       First, dismissing Plaintiffs' state law claims would waste judicial resources by requiring

20  the re-filing of the claims in a new venue unfamiliar with the facts of the case.  *See Munger v.*

21  *City of Glasgow Police Dep't*, 227 F. 3d 1082, 1089 n.4 (9th Cir. 2000) (holding that court did

22  not abuse discretion in declining to dismiss state law claims "based on the same factual

23  allegations as the federal claims" because "the district court was fully familiar with the record").

24  A re-filed case concerning the remaining interference claims in this action would not proceed

25  before the same judge presiding over the *Stand for San Jose* action, or even in Santa Clara

26  County, because the California Code of Civil Procedure provides for transfer of any state court

27  litigation brought by San Jose to a venue outside of Santa Clara County.  *See* Cal. Civ. Pro. Code

28

1   § 394(a) (requiring transfer of case brought by a city or county to a city or county other than the

2   plaintiff's home county upon defendant's motion).[2]   The end result of dismissing Plaintiffs'

3   remaining state law claims will be the simultaneous litigation of related (and potentially

4   identical) factual issues in *three* separate forums:  (1) Plaintiffs' appeal of the Court's antitrust

5   claims decision in the Ninth Circuit, (2) the *Stand for San Jose* claims in Santa Clara county, and

6   (3) Plaintiffs' remaining state law claims in some county other than Santa Clara.  That would be

7   wasteful and inefficient.

8          Second, as Plaintiffs agree, simultaneous litigation across different forums threatens

9   fairness by increasing the risk of inconsistent rulings.  *Cf. Montes v. Rafalowski*, C-09-00976

10  RMW, 2012 WL 5292290, at *2 (N.D. Cal. Nov. 2, 2012) (declining to dismiss state law claims

11  due to the risk of unnecessary, duplicative expenditure of judicial resources and the risk of

12  inconsistent rulings).  This Court is best situated to determine Plaintiffs' claims in a consistent

13  manner.

14         Third, under MLB's proposed stay pending a decision on the legal invalidity and

15  unenforceability of the Option Agreement in *Stand for San Jose* or by the Department of

16  Finance, this Court may never need to reach the merits of Plaintiffs' state law claims if the

17  underlying Option Agreement is held to be invalid.  Regardless, San Jose has not identified any

18  novel or complex issues of state law that would raise comity concerns regarding this Court's

19  adjudication of its tort claims.  *See Montes*, 2012 WL 5292290, at *3 (holding that state court

20  interest in developing case law regarding claims brought against state employees does not raise

21  comity concerns sufficient to justify dismissal).

22         Fourth, litigating the case outside of Santa Clara County will be less convenient for

23  Plaintiffs and potentially MLB, depending upon where the case is assigned.

24

25  [2] California Code of Civil Procedure Section 394(a) is designed to prevent local bias in actions by government
    plaintiffs against out-of-county defendants.  *Westinghouse v. Super. Ct.*, 17 Cal. 3d 259, 271 (1976).  MLB is
26  entitled to Section 394's protection from litigation in a county where there may be a "substantial risk of prejudice in
    favor of a local government entity."  *Id.*  The statute's mandatory transfer provisions do not apply where, as in the
27  *Stand for San Jose* litigation, the city is the defendant—not the plaintiff—in the action.  *See* Cal. Civ. Proc. Code §
    394(a).

28

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

**(2)  If the Court retains jurisdiction of the state law claims, should the court "expressly determine[] that there is no just reason to delay" entry of final judgment on the federal claim and state law claims that have been dismissed and enter final judgment on those claims pursuant to Federal Rule of Civil Procedure 54(b)?**

Plaintiffs:  **Yes**.  At issue in this case is the scope of MLB's exemption from antitrust laws.  The scope of baseball's exemption is the single most closely watched and debated issue in the field of antitrust law.  Plaintiffs believe it is an issue ripe for consideration by the U.S. Supreme Court.  There is no compelling reason for the Court to delay entry of final judgment on the dismissed claims.

The U.S. Supreme Court has outlined a two-step analysis to be conducted in deciding Rule 54(b) matters.  First, a district court must "determine that it is dealing with a 'final judgment,'" i.e., "a decision upon a cognizable claim for relief" that is "'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. General Elec. Co*., 446 U.S. 1 (1980)(*quoting*, *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956).

Second, a district court, in its "sound judicial discretion," must determine whether there is any just reason for delay in entering judgment.  *Id.*  In deciding whether there are just reasons for delay, a district court "must take into account judicial administrative interests as well as the equities involved," and **may consider "such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals**." *Id.*

Here, the equities dictate that consideration of Plaintiffs' dismissed antitrust (and other claims) should proceed through the appellate process without delay.

Defendants:  **No**.  Rule 54(b) certification is inappropriate when it "effectively severs trial on different theories of adverse treatment arising out of the same factual relationship. . . . The greater the overlap the greater the chance that this court will have to revisit the same facts—spun

19

1    only slightly differently—in a successive appeal." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 880-

2    81 (9th Cir. 2005).

3            Here, no justification exists for entering judgment pursuant to Rule 54(b), and Plaintiffs

4    have failed to make the required specific showing that there is a pressing need for an early and

5    separate judgment.  Far from it, Plaintiffs' incorrect and conclusory statement that "the equities

6    dictate" that their dismissed claims "should proceed through the appellate process without

7    delay" is no more than an empty assertion.  And, it is contradicted by the position they

8    (correctly) take in response to the Court's first question that allowing simultaneous appellate

9    and trial court proceedings on the dismissed and remaining claims "could result in conflicting

10   rulings and would amount to an enormous waste of judicial resources."  Plaintiffs' tactical

11   desire for a Rule 54(b) appeal of the antitrust claims does not justify burdening the justice

12   system or the parties with wasteful and potentially conflicting parallel proceedings.

13           The Court should not certify the dismissed claims for immediate appeal for the

14   following reasons.  First, Rule 54(b) certification would not streamline the case or promote

15   judicial economy for the trial court.  One of Plaintiffs' remaining two claims, tortious

16   interference with prospective economic advantage, is predicated upon two purported wrongful

17   acts—alleged antitrust violations and alleged interference with contract.  Entering judgment on

18   the antitrust predicate and allowing that issue to proceed on appeal while the other potential

19   predicate for that cause of action proceeds in this court would be an inefficient use of the

20   resources of the Court and the parties.  Dismissing the state law claims would not cure these

21   inefficiencies.  As discussed above, it would only shift the burden to another court and risk

22   inconsistent results.

23           Second, Rule 54(b) certification would be inefficient for the Ninth Circuit.  Plaintiffs'

24   antitrust claims are simply "different theories of adverse treatment arising out of the same

25   factual relationship" as the remaining state law claims among the same parties.  *Wood*, 422 F.3d

26   at 880-81.  For example, the question of whether Plaintiffs have been damaged by MLB's

27   alleged conduct could be litigated as part of both an antitrust appeal and the remaining state law

28

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

1   claims.  Piecemeal appeals would force the Ninth Circuit to litigate the same issues, "spun only

2   slightly differently," on successive appeals.  *Id.*

3     Finally, subsequent findings could eliminate the need to reach the antitrust issues,

4   rendering a separate Rule 54(b) appeal unnecessary.  For example, if no valid Option

5   Agreement exists, San Jose lacks antitrust standing and also loses the contract or economic

6   relationship that is a prerequisite to its remaining state law claims.

7     **Question 3: If plaintiff were to prevail on either of its two remaining state**

8   **interference claims, how would damages be computed? The court is not looking for a**

9   **specific figure but rather the methodology that would be used to calculate damages.**

10    <u>Plaintiffs</u>:  Attached to Plaintiffs' Complaint is a 2009 Economic Impact Analysis

11  prepared by Conventions Sports and Leisure International ("CSL") for the San José

12  Redevelopment Agency, which detailed the economic benefits of the proposed Athletics

13  stadium in San José ("CSL Study") (*See*, <u>Exhibit 1</u> to the Complaint). The CSL Study provided

14  independent and conservative estimates of the quantifiable impacts that would be generated by

15  an Athletics stadium in San José.

16    Plaintiffs have recently retained Roger G. Noll, Professor Emeritus of Economics at

17  Stanford University and a Senior Fellow at the Stanford Institute for Economic Policy Research,

18  who has done an analysis.  Plaintiff's expert has not finalized his analysis of the damages at this

19  point; however, without waiving Plaintiffs' ability to present expert opinion testimony at a later

20  date, Plaintiffs suggest that the following are appropriate measures of damages:

21    1. Lost tax revenue from ticket taxes, which is composed of the following:

22     (a) Revenue from residents derived from the incremental tax rate on the

23      amount spent on tickets over other spending;

24     (b) Revenue from non-residents based on the full amount spent;

25    2. Lost tax revenue from taxes related to baseball expenditures by non-residents;

26    3. Revenue directly from the Athletics;

27    4. Multiplier effects on (1)-(3).  A sports team generates economic growth that the

28

21

city will benefit from in higher tax revenues from increased business activity and rising property values; and,

5.     Payment of the purchase price under the Option Agreement (<u>Exhibit 3</u> to Plaintiffs' Complaint).

This is a preliminary structure for analyzing damages to the Plaintiffs.  Plaintiffs intend to offer expert testimony on these damages issues.

<u>Defendants</u>:   Plaintiffs have no credible methodology to compute damages.  San Jose alleged almost a dozen different damages theories in its Complaint, but all of them fail in light of this Court's MTD Order and the undisputed facts.

San Jose's Complaint recited 11 different damages theories (see ¶¶ 140–150), but every single one was based on the false premise that San Jose is entitled to a Major League Baseball club (for example, San Jose claimed damages from lost stadium-construction jobs).  San Jose repeats many of these claims in its statement above, arguing that it will seek speculative damages based on lost ticket taxes, "baseball expenditures," and "economic growth" from a "sports team."  But this Court expressly held that "it is within MLB's authority to decide" whether to approve or deny the Athletics' relocation request.  Dkt. 41 at 25:21–22.  Since MLB has discretion to deny the relocation request, and since MLB **did** deny the relocation request, San Jose cannot bring a claim based on any of those speculative damages theories.  Even San Jose's claim for the "purchase price under the Option Agreement" must fail.  The Option Agreement expressly states that the land can only be purchased "provided the use of the Property is restricted . . . for use as a Major League Baseball park."  Op. Agmt. § 3.B.  Since MLB has denied the Athletics' relocation request—and since this Court has held that MLB has the right to deny the relocation request—no damages can result from the fact that the Property cannot be used by the Athletics to build a "Major League Baseball park."

Significantly, Plaintiffs have not identified any damages that they claim to have suffered in connection with the one remaining theory on which their interference claims are premised— MLB's supposed delay in rendering its relocation decision.

DATED: December 6, 2013                 **COTCHETT, PITRE & McCARTHY, LLP**


                                        By:    /s/ Joseph W. Cotchett

                                               JOSEPH W. COTCHETT
                                               PHILIP L. GREGORY
                                               FRANK C. DAMRELL, JR.
                                               STEVEN N. WILLIAMS
                                               ANNE MARIE MURPHY
                                               CAMILO ARTIGA-PURCELL

                                        Attorneys for Plaintiffs
                                        CITY OF SAN JOSE; CITY OF SAN JOSE AS
                                        SUCCESSOR AGENCY TO THE
                                        REDEVELOPMENT AGENCY OF THE CITY OF
                                        SAN JOSE; and THE SAN JOSE DIRIDON
                                        DEVELOPMENT AUTHORITY




DATED: December 6, 2013                 **KEKER & VAN NEST LLP**


                                        By:    /s/ John Keker

                                               JOHN KEKER
                                               PAULA L. BLIZZARD
                                               THOMAS E. GORMAN

                                               **PROSKAUER ROSE LLP**
                                               BRADLEY I. RUSKIN
                                               SCOTT P. COOPER
                                               SARAH KROLL-ROSENBAUM
                                               JENNIFER L. ROCHE
                                               SHAWN S. LEDINGHAM, JR.

                                        Attorneys for Defendants
                                        OFFICE OF THE COMMISSIONER OF
                                        BASEBALL, an unincorporated association doing
                                        business as Major League Baseball; and ALLAN
                                        HUBER "BUD" SELIG

## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____

_____
Hon. Ronald M. Whyte
UNITED STATES DISTRICT JUDGE

SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER
Case No. 13-cv-02787-RMW

793801.02